# UNITED STATES DISTRICT COURT

for the
Western District of Washington

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.    MJ25-140
Multiple Residences, a Business, Safe Deposit Boxes, )
Persons, and Vehicles )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Multiple Residences, a Business, Safe Deposit Boxes, Persons, and Vehicles, as further described in Attachment A, incorporated herein by reference

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 924(c) and 1956; 21 U.S.C. §§ 841(a) (1), 843(b), and 846 | Distribution and Manufacturing of Controlled Substances, Unlawful Use of a Communication Facility to Facilitate the Distribution of Controlled Substances, Conspiracy to commit these offenses, Money Laundering, and, Possession of a Firearm in Furtherance of a Drug Trafficking Crime. |

The application is based on these facts:
✓ See Affidavit of Terry D. Stinson, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Terry D. Stinson, US Postal Inspector
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____03/17/2025_____

_____
*Judge's signature*

City and state: Seattle, Washington        S. Kate Vaughan, United States Magistrate Judge
*Printed name and title*

Attachment A
Premises, Locations, Persons and Vehicles to Be Searched

The residence located at **2004 Columbia Ave Unit A, Everett, Washington 98203** is as a two story, town home, painted a blue color with white trim, and a white door. "2004" appears to the left of the front door;

The residence located at **14622 28th Ave West, Lynnwood, Washington 98087** is a two-story, single-family home, painted two toned dark gray over light gray paint scheme. The front door is a dark gray and glass, "14622" is affixed to the house above the garage door;

The business CLOUDZ VAPE located at **4540 University Way NE, Seattle, Washington 98105** and is further described as a storefront, located at 4540 University Way NE, Seattle, Washington 98105, storefront has large glass windows with gray and black trim, "4540" is affixed to the front entryway glass over the front door;

**Guardian Vault safe deposit box number 188** located at **23515 NE Novelty Hill Rd Suite B215, Redmond, Washington**;

**Alderwood Safe Storage unit number 49** located at **16902 Alderwood Mall Pkwy, Lynnwood, Washington**;

The person of **Joshua YOUNG**;

The person of **Mu YUAN**;

The person of **Stephany DIAZ**;

The person of **Brielle DEGEUS;**

A **2021 gray BMW M3** Sedan bearing Washington license plate CMA9847 and VIN: WBS33AY06MFK89525;

Attachment A
Premises, Locations, Persons and Vehicles to Be Searched

A **2016 white Toyota 4Runner** bearing Washington license plate BYK8000 and VIN: JTEBU5JR0G5346193;

A **2023 white Mercedes-Benz C Sedan** bearing Washington license plate CFV7714 and VIN: W1KAF4HB6PR077080;

A **2023 red Ferrari Roma** bearing Washington license plate CHM9451 and VIN: ZFF98RNA4P0292933; and,

A **2023 white Tesla Model X** bearing Washington license plate CKH7066 and VIN: 7SAXCDE53PF415698.

Attachment B

List of Items to be Searched for and Seized

This warrant authorizes the government to search for the following items:

Evidence and/or fruits of the commission of the following crimes: Distribution and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1); Use of a communications facility in furtherance of a felony drug offense in violation of 21 U.S.C. § 843(b); Conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846; Laundering of monetary instruments in violation of 18 U.S.C. § 1956; and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c); including but not limited to the following:

1. Controlled Substances: Including but not limited to marijuana and marijuana concentrates.

2. Drug Paraphernalia: Items used, or to be used, to store, process, package, use, and/or distribute controlled substances, such as plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances, and similar items.

3. Drug Transaction Records: Documents such as ledgers, receipts, notes, and similar items relating to the acquisition, transportation, and distribution of controlled substances.

4. Customer and Supplier Information: Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, maps or directions, and similar items.

5. Cash and Financial Records: Currency and financial records, including bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, vehicle documents, and similar items; and other records that show income and expenditures, net worth,

money transfers, wire transmittals, negotiable instruments, bank drafts, cashiers checks, cryptocurrency, money orders, gift cards, and similar items, and money counters.

6.      Photographs/Surveillance:  Photographs, video tapes, digital cameras, surveillance cameras and associated hardware/storage devices, and similar items, depicting property occupants, friends and relatives of the property occupants, or suspected buyers or sellers of controlled substances, controlled substances or other contraband, weapons, and assets derived from the distribution of controlled substances.

7.      Weapons:  Including but not limited to firearms, magazines, firearms parts and components, ammunition, and body armor.

8.      Codes:  Evidence of codes used in the distribution of controlled substances, including but not limited to passwords, code books, cypher or decryption keys, and similar information.

9.      Property Records:  Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the purchase, ownership, rental, income, expenses, or control of the premises, and similar records of other property owned or rented.

10.      Indicia of occupancy, residency, and/or ownership of assets including, but not limited to, utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, mortgage statements, and other documents.

11.      Evidence of Storage Unit and Safe Deposit Box Rental or Access:  rental and payment records, keys and codes, pamphlets, contracts, contact information, directions, passwords or other documents relating to storage units.

12.      Evidence of Personal Property Ownership:  Registration information, ownership documents, or other evidence of ownership of property including, but not limited to vehicles, vessels, boats, airplanes, jet skis, all terrain vehicles, RVs, and personal property; evidence of international or domestic travel, hotel/motel stays, and any other evidence of unexplained wealth,

13.     Individual and business financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, such as:

a.     Employment records:  paychecks or stubs, lists and accounts of employee payrolls, records of employment tax withholdings and contributions, dividends, stock certificates, and compensation to officers.

b.     Savings accounts:  statements, ledger cards, deposit tickets, register records, wire transfer records, correspondence, and withdrawal slips.

c.     Checking accounts:  statements, canceled checks, deposit tickets, credit/debit documents, wire transfer documents, correspondence, and register records.

d.     Loan Accounts:  financial statements and loan applications for all loans applied for, notes, loan repayment records, and mortgage loan records.

e.     Collection accounts:  statements and other records.

f.     Certificates of deposit:  applications, purchase documents, and statements of accounts.

g.     Credit card accounts:  credit cards, monthly statements, and receipts of use.

h.     Receipts and records related to gambling wins and losses, or any other contest winnings.

i.     Insurance:  policies, statements, bills, and claim-related documents.

j.     Financial records:  profit and loss statements, financial statements, receipts, balance sheets, accounting work papers, any receipts showing purchases made, both business and personal, receipts showing charitable contributions, and income and expense ledgers.

14.     All bearer bonds, letters of credit, money drafts, money orders, cashier's checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money wrappers, stored value cards, and other forms of financial remuneration evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.

15.     All Western Union, Post Office Money Orders, Money Gram documents and other documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash,  These documents are to include applications, payment records, money orders, frequent customer cards, etc.

16.     Negotiable instruments, jewelry, precious metals, financial instruments, and other negotiable instruments.

17.     Documents reflecting the source, receipt, transfer, control, ownership, and disposition of United States and/or foreign currency.

18.     Correspondence, papers, records, and any other items showing employment or lack of employment.

19.     Shipping information to include labels, packaging materials, and receipts of past shipments.

20.     Telephone books, and/or address books, facsimile machines to include the carbon roll and/or other memory system, any papers reflecting names, addresses, telephone numbers, pager numbers, cellular telephone numbers, facsimile, and/or telex numbers, telephone records and bills relating to co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists. Also, telephone answering devices that record telephone conversations and the tapes therein for messages left for or by co-conspirators for the delivery or purchase of controlled substances or laundering of drug proceeds.

21.     Safes and locked storage containers, and the contents thereof which are otherwise described in this document.

22.     Tools:  Tools that may be used to open hidden compartments in vehicles, paint, bonding agents, magnets, or other items that may be used to open/close said compartments.

23.     Digital devices[1] or other electronic storage media[2] containing any of the records or information described above or used as a means to commit the violations described above, including to generate, store, or transmit records in furtherance of the violations.

24.     For any digital device or other electronic storage media upon which electronically stored information that is called for by this warrant may be contained, that may contain things otherwise called for by this warrant, or whose seizure is otherwise authorized by this warrant:

    a.      evidence of who used, owned, or controlled the digital device or other electronic storage media at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b.      evidence of software that would allow others to control the digital device or other electronic storage media, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c.      evidence of the lack of such malicious software;

    d.      evidence of the attachment to the digital device of other storage devices or similar containers for electronic evidence;

    e.      evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the digital device or other electronic storage media;

    f.      evidence of the times the digital device or other electronic storage media was used;

    g.      physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

    h.      passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.

    i.      documentation and manuals that may be necessary to access the digital device or other electronic storage media or to conduct a forensic examination of the digital device or other electronic storage media;

    j.      applications, utility programs, compilers, interpreters, and other software

---

[1] "Digital device" includes any device capable of processing and/or storing data in electronic form, including, but not limited to: central processing units, laptop, desktop, notebook or tablet computers, computer servers, peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media, related communications devices such as modems, routers and switches, and electronic/digital security devices, wireless communication devices such as mobile or cellular telephones and telephone paging devices, personal data assistants ("PDAs"), iPods/iPads, Blackberries, digital cameras, digital gaming devices, global positioning satellite devices (GPS), or portable media players.

[2] Electronic Storage media is any physical object upon which electronically stored information can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

k.     contextual information necessary to understand the evidence described in this attachment.

25.     For the digital devices that are cellular telephones and other communications devices including Blackberries, iPhones and other smartphones they may be additionally searched for the following items:

a.     Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

b.     Stored list of recent received, sent, and missed calls;

c.     Stored contact information;

d.     Stored photographs of narcotics, currency, firearms or other weapons, evidence of suspected criminal activity, and/or the user of the phone or suspected co-conspirators, including any embedded GPS data associated with those photographs;

e.     Stored text messages related to the aforementioned crimes under investigation, including Apple iMessages, WhatsApp, TextNow, Signal and Telegram messages or other similar messaging services or applications where the data is stored on the telephone.

During the execution of the search of the Subject Premises described in Attachment A, if law enforcement encounters a smartphone or other electronic device equipped with a biometric-unlock feature, and if law enforcement reasonably suspects that JOSHUA YOUNG, MU YUAN, STEPHANY DIAZ, and/or BRIELLE DEGUS is a user of the device, then – for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant – law enforcement personnel are authorized to: (1) press or swipe the fingers (including thumbs) of JOSHUA YOUNG, MU YUAN, STEPHANY DIAZ, and/or BRIELLE DEGUS to the fingerprint scanner of the device; and/or (2) hold the device in front of the face and open eyes of those same individuals and activate the facial, iris, or retina recognition feature.

In pressing or swiping an individual's thumb or finger onto a device and in holding a device in front of an individual's face and open eyes, law enforcement may not use excessive

force, as defined in Graham v. Connor, 490 U.S. 386 (1989); specifically, law enforcement may use no more than objectively reasonable force in light of the facts and circumstances confronting them.

# AFFIDAVIT OF TERRY D. STINSON

STATE OF WASHINGTON          )
                             )
COUNTY OF KING               )

## AFFIDAVIT

I, Terry D. Stinson, being first duly sworn on oath, deposes and says:

## BACKGROUND

1.      **Affiant Background.**  I am a United States Postal Inspector, assigned to investigate the unlawful transportation of contraband, including Title 21 controlled substances, through the United States Mail. I have been a Postal Inspector since June 2019 and am currently assigned as the Team Leader who oversees a team of investigators, analysts, and other personnel conducting investigations involving illicit contraband in the U.S. mail and security issues involving U.S. mail facilities. My office is located in Tukwila, Washington. As part of my duties, I investigate incidents where the United States mail system is used for the purpose of transporting illegal materials, including controlled substances such as marijuana, cocaine, methamphetamine and heroin in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and substances mailed in violation of Title 18, United States Code, Section 1716. I have received specialized training in the investigation of controlled substances in the United States mails. I have also received training on the identification of controlled substances and interdiction of controlled substances. I hold a bachelor's degree in Homeland Security from American Military University.

2.      Prior to my employment with the United States Postal Inspection Service, I served as a Coast Guard Investigative Service (CGIS) Special Agent (S/A) for 10 years. During my Coast Guard career, spanning nearly 22 years in total, I participated in multiple aspects of federal law enforcement within that timeframe. In my official

Affidavit of Inspector Stinson - 1
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

capacity, I investigated violations of federal and state law along with violations of the
Uniform Code of Military Justice. My training includes graduating from both the
Criminal Investigator Training Program at the Federal Law Enforcement Training Center
as well as the Naval Criminal Investigative Service's Special Agent Basic Training
Program. As part of my duties as a CGIS S/A, I investigated drug trafficking
organizations and their ability to traffic controlled substances including, but not limited to
cocaine, methamphetamine, and heroin globally. I conducted and/or participated in
numerous investigations involving allegations, such as; drug smuggling, money
laundering, the manufacture of controlled substances, weapons smuggling, and alien
smuggling. I have worked, led, and participated in multiple drug trafficking
investigations and operations during my career. My experience also encompasses other
investigative experiences and training not enumerated herein.

3.    **Duties, Training & Experience.**  As part of my current duties, I
investigate the use of the U.S. mails to illegally mail and receive controlled substances,
the proceeds of drug trafficking, as well as other instrumentalities associated with drug
trafficking, in violation of Title 21, United States Code, Sections 841(a)(1) (distribution
and possession with intent to distribute controlled substances), and 843(b) (unlawful use
of a communication facility, including the U.S. mails, to facilitate the distribution of
controlled substances).  As set forth below, my training and experience includes
investigations involving trafficking of controlled substances and money laundering.
During the course of my experience as a criminal investigator, I have participated in
numerous criminal investigations involving drug trafficking.

4.    The information contained in this affidavit is based upon knowledge I
gained from this investigation, my personal observations, my training and experience,
and investigation by and conversations with law enforcement officers and agents who

Affidavit of Inspector Stinson - 2
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

have engaged in various aspects of this investigation, and my review of reports written by other law enforcement officers and agents involved in this investigation. My experience in conducting criminal investigations, my education, my conversations with other investigators, and my training form a basis for my opinions and conclusions set forth below.

5.      Because this affidavit is being submitted for the limited purpose of obtaining the search warrants described below, I have not included every fact known to me concerning this investigation.  Rather, I have set forth only the facts that I believe are necessary to show that there is probable cause to issue the requested warrants. I have obtained the facts set forth in this affidavit through my participation in this investigation described below; from oral and written reports of other law enforcement officers and analysts; and from records, documents and other evidence obtained during the course of this investigation.

## PURPOSE OF AFFIDAVIT

6.      This affidavit is submitted in support of an application for search warrants for the following locations, vehicles, and persons, all more fully described in Attachment A, for the items and materials described in more detail in Attachments B.[1]

### PREMISES ASSOCIATED WITH THE JOSHUA YOUNG DTO:

i.      **Target Residence 2004:** The residence located at **2004 Columbia Ave Unit A, Everett, Washington 98203.** As described below, this is believed to be the current residence of **Joshua YOUNG**. Based on surveillance and other facts detailed in this affidavit, investigators believe that **Target Residence 2004** contains evidence of **YOUNG's** ongoing, current and past criminal conduct. **2004 Columbia Ave Unit A, Everett, Washington 98203** can be further described as a two story, town home,

---

[1] As to residences, for shorthand I will describe each property as the "Target Residence" followed by part of each location's address (usually but not always the house number).  They will collectively be referred to as the "Target Residences."  Vehicles are numbered sequentially and will collectively be referred to as the "Target Vehicles."  If I refer generally to both Target Residences and Target Vehicles, I will call them "Target Locations."

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

painted a blue color with white trim, and a white door. "2004A" appears on a vertical white support beam on the front porch.

ii.      **Target Residence 14622:** The residence located at **14622 28th Ave West, Lynnwood, Washington 98087**.  As described below, this is believed to be the current residence of **Mu YUAN** and **Stephany DIAZ**. Based on surveillance and other facts detailed in this affidavit, investigators believe that **Target Residence 14622** contains evidence of **YUAN's** and **DIAZ'** ongoing, current and past criminal conduct. **14622 28th Ave West, Lynnwood, Washington 98087** can be further described as a two-story, single-family home, painted two toned dark gray over light gray paint scheme. The front door is a dark gray and glass, "14622" is affixed to the house above the garage door.

iii.      **Target Business 4540:** The business CLOUDZ VAPE located at **4540 University Way NE, Seattle, Washington 98105**.  As described below, this is the store front of **Joshua YOUNG**. Based on surveillance and other facts detailed in this affidavit, investigators believe that **Target Business 4540** contains evidence of **YOUNG's** ongoing, current, and past criminal conduct.  **4540 University Way NE, Seattle, Washington 98105** can be further described as a storefront, located at 4540 University Way NE, Seattle, Washington 98105, storefront has large glass windows with gray and black trim, "4540" is affixed to the front entryway glass over the front door.

iv.      **Guardian Vault safe deposit box number 188** in the name of Mu YUAN located at 23515 NE Novelty Hill Rd Suite B215, Redmond, Washington 98053.

v.      **Alderwood Safe Storage unit number 49** rented in the name of Stephany DIAZ located at 16902 Alderwood Mall Pkwy, Lynnwood, Washington 98037.

vi.      The person of **Joshua YOUNG.**

vii.      The person of **Brielle DEGEUS.**

viii.      The person of **Mu YUAN**.

ix.      The person of **Stephany DIAZ.**

x.      **Target Vehicle 1:** A 2021 gray BMW M3 Sedan bearing Washington license plate CMA9847 and VIN: WBS33AY06MFK89525 (hereinafter referred to as "**Target Vehicle 1**"). According to Washington Department of Licensing (DOL) records, **Target Vehicle 1** is registered to **Joshua Anthony YOUNG**, at 2004 Columbia Ave Unit A, Everett, Washington 98203.

Affidavit of Inspector Stinson - 4
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

        xi.     **Target Vehicle 2:** A 2016 white Toyota 4Runner bearing Washington license plate BYK8000 and Vehicle Identification Number (VIN): JTEBU5JR0G5346193 (hereinafter referred to as "**Target Vehicle 2**"). According to Washington Department of Licensing (DOL) records, **Target Vehicle 2** is registered to **Joshua YOUNG and Brielle DEGEUS**, at 2004 Columbia Ave, Everett, Washington 98203.

        xii.     **Target Vehicle 3:** A 2023 white Mercedes-Benz C Sedan bearing Washington license plate CFV7714 and VIN: W1KAF4HB6PR077080 (hereinafter referred to as "**Target Vehicle 3**"). According to Washington Department of Licensing (DOL) records, **Target Vehicle 3** is registered to **Mu YUAN**, at 14622 28th Ave West, Lynnwood, Washington 98087.

        xiii.     **Target Vehicle 4:** A 2023 red Ferrari Roma bearing Washington license plate CHM9451 and VIN: ZFF98RNA4P0292933 (hereinafter referred to as "**Target Vehicle 4**"). According to Washington Department of Licensing (DOL) records, **Target Vehicle 4** is registered to **Mu YUAN**, at 14622 28th Ave West, Lynnwood, Washington 98087.

        xiv.     **Target Vehicle 5**: A 2023 white Tesla Model X bearing Washington license plate CKH7066 and VIN: 7SAXCDE53PF415698 (hereinafter referred to as "**Target Vehicle 5**"). According to Washington Department of Licensing (DOL) records, **Target Vehicle 5** is registered to **Mu YUAN**, at 14622 28th Ave West, Lynnwood, Washington 98087.

       7.     For each of the Target Residences listed above, I request that authority for search extend to all parts of the property, including main structure, garage(s), storage structures, outbuildings, and curtilage, and all vehicles, containers, compartments, or safes located on the property, whether locked or not, where the items described in Attachment B (list of items to be seized) could be found.

       8.     For each of the above-described Target Vehicles, authority to search extends to all parts of the vehicle and any cases, containers, compartments, or safes located in the vehicle, whether locked or not, where the items described in Attachment B (list of items to be seized) could be found.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

9.    As set forth below, there is probable cause to believe that **Joshua YOUNG, Mu YUAN, Stephany DIAZ, Chandler FLOTT, Brielle DEGEUS** and others known and unknown are committing the crimes listed above, and that a search of their persons and any carried personal containers, such as a cellular telephone, purse, wallet, backpack or briefcase, will lead to evidence, fruits, and instrumentalities of the aforementioned crimes, as described in Attachment B, as well as to the identification of other individuals who are engaged in the commission of those and related crimes.  While I believe there is probable cause to arrest the individuals named above, for operational reasons we do not plan to make arrests at the time the search warrants are executed.  Therefore, regardless of their location at the time of execution, as long as it is within the Western District of Washington, I seek authorization to search the persons of the individuals listed in bold, above, and any carried personal containers, such as a cellular telephones, purses, wallets, backpacks, or briefcases, for items specified in Attachment B.

10.    Based upon the facts set forth below, there is probable cause to believe that Target Locations are presently being used in the Western District of Washington in furtherance of the following federal criminal offenses: Distribution and Manufacturing of Controlled Substances, in violation of 21 U.S.C. § 841(a) (1); Unlawful Use of a Communication Facility to Facilitate the Distribution of Controlled Substances, in violation of 21 U.S.C. § 843(b); conspiracy to commit these offenses in violation of 21 U.S.C. § 846; Money Laundering, in violation of 18 U.S.C. § 1956; and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. 924(c).

11.    Further, there is probable cause to believe that the search of **Target Locations** will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

Affidavit of Inspector Stinson - 6
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

12.     Because this affidavit is being submitted for the limited purpose of obtaining a warrant to search the **Target Locations**, I have not included every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to show that there is probable cause to issue the requested warrants.

### SOURCES OF INFORMATION

13.     I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; and from records, documents, and other evidence obtained during this investigation. When I refer to registration records for vehicles, I am relying on records obtained from the Washington State Department of Licensing (DOL). Insofar as I have included event times in this affidavit, those event times are approximate. Insofar as I have identified individuals in this affidavit, those identifications are made in good faith based on comparisons with Washington State DOL photos and physical and electronic surveillance.

14.     The financial investigation in this case has been primarily conducted by Becky Carnell. Investigator Carnell is a Financial Auditor employed by the U.S. Attorney's Office, with extensive training and 20+ years of experience in conducting financial investigations in complex drug trafficking and money laundering cases. Investigator Carnell obtained banking, property, tax, and other financial records relevant to this case, and reviewed those documents. Then she conveyed her factual summary of that voluminous data to me. I have relied on Investigator Carnell's review of the underlying financial records and her summary of those records in most instances where I discuss financial transactions below.

Affidavit of Inspector Stinson - 7
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

15.    In sections below, I describe statements made by witnesses and suspects. My descriptions summarize the general content of those statements and are not verbatim recitations of the specific words spoken by the witnesses and suspects.

## SUMMARY OF INVESTIGATION

16.    As set forth in my prior affidavits, this investigation into Joshua YOUNG et. al. began in July 2019, following the interdiction and seizure of $34,000 USD, which was sent through the U.S. mail from Mount Vernon, Alabama.  That parcel was addressed to Joshua YOUNG at 15914 44th Ave. W., Apt B302, Lynnwood, WA 98087, (YOUNG's previous address). This particular seizure was the result of the execution of a federal search warrant, which was granted by this Court in the Western District of Washington (WDWA) (MJ19-358).  During surveillance and through USPS databases, I know that YOUNG previously resided at 15914 44th Ave. W., Apt B302, Lynnwood, WA 98087, and collected mail there as well.[2]

17.    Following seizures were made during an ongoing investigation of an interstate conspiracy to distribute marijuana across the United States, using the U.S. mail.

18.    Law enforcement has been actively investigating this drug trafficking organization (DTO) since 2019 and have learned that the targets' unlawful conduct is extensive, diverse, and evolving. To date, we have identified at least multiple different suspects involved in the interstate distribution of marijuana. The Washington-based subjects include **Joshua YOUNG**, **Mu YUAN**, **Stephany DIAZ**, **Chandler FLOTT**, **Brielle DEGEUS** and others named or unnamed. Investigators believe one investigative subject, Tianyu LYU was murdered due in part to his drug trafficking activities as part of this criminal conspiracy.

---

[2] YOUNG moved from this previous address in March 2020, to address, 3333 164th St. SW. Apt 531, Lynnwood, Washington 98087-3153, which he has since moved from as well.

Affidavit of Inspector Stinson - 8
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

19.     We have identified over 100 addresses linked to, or identified as, recipients of suspicious mailings linked to the Joshua YOUNG DTO and over 500+ suspicious mailings to or from at least the following states:  Alabama, Alaska, Arizona, Arkansas, California, Florida, Georgia, Illinois, Indiana, Iowa, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Jersey, North Carolina, Ohio, Oklahoma, Oregon, South Carolina, Tennessee, Texas, Virginia, and West Virginia from/to Washington State. These mailings have been deemed suspicious by investigators due to, for example, their origination in Washington State (a now key source state for illicit marijuana being exported nationally), the frequency of shipments, the apparent attempted concealment of the true senders by using fictitious sender/recipient names, along with other indicators of suspicious parcels, and their linkage to this DTO.

20.     Postal Inspectors initiated the investigation into the YOUNG DTO after a successful USPS parcel interdiction resulting in a $34,000 USD seizure of suspected drug proceeds being shipped via Express Priority class mail. YOUNG was the addressee of that seized parcel. Since this initial seizure, investigators have seized additional parcels containing currency and temporarily detained several other parcels containing currency before releasing them for controlled delivery to targets of the investigation. Investigators have also seized parcels containing controlled substances.

21.     Over the course of this investigation, I have obtained numerous additional warrants from this Court to search packages sent to/from YOUNG and/or other members of his suspected criminal network.  I have also obtained numerous search and tracking warrants to obtain the location data of cellular telephones and vehicles used by YOUNG and other members of his network.  A table showing some of those warrants is set forth below.

Affidavit of Inspector Stinson - 9
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Date | Court No. | Warrant Type | Suspect[s] | Result |
|------|-----------|--------------|------------|--------|
| 7/30/2019 | MJ19-358 | Parcel SW | YOUNG | $34,000 cash |
| 8/14/2019 | MJ19-379 | Parcel SW | YOUNG & McGee | $34,000 cash |
| 9/23/2019 | MJ19-447 | Parcel SW | Tianyu LYU & Justin Wong | 6.6 kilograms of THC vape cartridges (with packaging) |
| 10/18/2019 | MJ19-498 | Parcel SW | YOUNG (addressed to a "Robert Reed") | 663 grams of THC vape cartridges and marijuana cigarettes (with packaging) |
| 11/6/2019 | MJ19-539 | Parcel SW | Addressed to a "Dakota McGill" in Florida | 1.5 kilograms marijuana (with packaging) |
| 11/6/2019 | GJ19-647 | Vehicle TW | YOUNG | Not executed – YOUNG obtained a new vehicle |
| 12/16/2019 | 4:19mj243-CAS (Northern Dist. of Florida) | Parcel SW | Stephany DIAZ | $3,000 cash |
| 3/11/2020 | GJ20-137 | Vehicle TW | YOUNG | GPS data |
| 4/21/2020 | MJ20-190 | SW for phone location data and PRTT | YOUNG | Location and phone toll data |
| 4/21/2020 | GJ19-647 | Vehicle TW (renewal) | YOUNG | GPS data |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| 4/27/2020 | MJ20-212 | Parcel SW | Addressed to Sarah Wilkinson in Arizona, mailed by FLOTT | 4.6 kilograms of marijuana (with packaging) |
|---|---|---|---|---|
| 5/12/2020 | MJ20-241 | Parcel SW | Mailed from "FC FASHION LTD" in Florida to "R&D Auto" in Mountlake Terrace (MERCADO) | $28,760.00 cash |
| 5/13/2020 | MJ20-245 | SW for phone location data and PRTT | Phone used by FLOTT | Location and phone toll data |
| 5/13/2020 | GJ20-265 | Vehicle TW | FLOTT | GPS data |
| 5/18/2020 | MJ20-254 | Parcel SW | Mailed from California to Renton, WA | Surgical gloves |
| 5/21/2020 | MJ20-272 | Parcel SW | Mailed from New Haven, IN to Stephany DIAZ | $19,250 cash |
| 5/29/2020 | 3:20-mc-00514 (Dist. of Oregon) | Parcel SW | Mailed from "FC FASHION LTD" in Florida to "Cruiz Venecia" in Salem, OR | $10,670 cash |
| 6/5/2020 | GJ19-647 | Vehicle TW (renewal) | YOUNG | GPS data |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| 6/5/2020 | MJ20-315 | SW for phone location data and PRTT | YOUNG | Location and phone toll data |
| 6/22/2020 | GJ19-647 | Vehicle TW (Range Rover) | YUAN | Vehicle TW |
| 6/22/2020 | MJ20-365 | SW for phone location data and PRTT | YUAN | Phone location data and tolls |
| 6/26/2020 | MJ20-382 | SW for phone location data and PRTT | FLOTT | Phone location data and tolls |
| 6/26/2020 | GJ20-265 | Vehicle TW (Dodge Magnum) | FLOTT | Vehicle TW |
| 7/2/2020 | MJ20-398 | Package SW | Addressed to a "Rachel Monday" in Indiana, mailed by YUAN | Marijuana plant material |
| 7/20/2020 | GJ19-647 | Vehicle TW (renewal) | YOUNG | GPS data |
| 8/5/2020 | GJ20-265 | Vehicle TW (renewal) | FLOTT & YUAN | GPS data |
| 8/5/2020 | MJ20-507 | SW for phone location data and PRTT | FLOTT & YUAN | Phone location data and tolls |
| 8/18/2020 | GJ20-265 | Vehicle TW Range Rover | YOUNG | GPS data |
| 9/18/2020 | GJ20-265 | Vehicle TW | FLOTT & YUAN | GPS data |

Affidavit of Inspector Stinson - 12
USAO No. 2019R00799

| Date | Case No. | Type | Target | Data |
|---|---|---|---|---|
| | | (renewal) | | |
| 9/18/2020 | MJ20-607 | SW for phone location data and PRTT | FLOTT & YUAN | Phone location data and tolls |
| 10/2/2020 | GJ20-265 | Vehicle TW (renewal) | YOUNG | GPS data |
| 11/2/2020 | GJ20-265 | Vehicle TW (renewal) | YUAN & FLOTT | GPS data |
| 11/2/2020 | MJ20-607 | SW for phone location data and PRTT | YUAN & FLOTT | Phone location data and tolls |
| 11/16/2020 | GJ20-265 | Vehicle TW (renewal) | YOUNG | GPS data |
| 12/17/2020 | MJ20-814 | SW for phone location data and PRTT | FLOTT | Phone location data and tolls |
| 12/17/2020 | MJ20-814 | SW for phone location data and PRTT | YUAN | Phone location data and tolls |
| 12/17/2020 | MJ20-814 | SW for phone location data and PRTT | FANG | Phone location data and tolls |
| 12/17/2020 | GJ20-265 | Vehicle TW (renewal) | FLOTT | GPS data |
| 12/17/2020 | GJ20-265 | Vehicle TW | | |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| 12/17/2020 | GJ20-265 | Vehicle TW (renewal) | FLOTT & YUAN | GPS data |
|---|---|---|---|---|
| 12/30/2020 | GJ20-265 | Vehicle TW (renewal) | YOUNG | GPS data |
| 1/8/2021 | MJ21-009 (1) | Residence | LYU | Controlled substances, cash, documents, and electronics |
| 1/8/2021 | MJ21-009 (2) | Vehicle | LYU | Controlled substances, electronics, and documents |
| 1/21/2021 | MJ21-033 | Parcel SW | Angelo ALLEN Michael HARRIS | $4,000 Cash $3,000 Cash |
| 1/29/2021 | GJ20-265 (1) | Vehicle (renewal) | FLOTT & YUAN | GPS data |
| 1/29/2021 | MJ21-0056 | SW for phone location data and PRTT | FLOTT & YUAN | Phone location data and tolls |
| 1/29/2021 | MJ21-065 | SW for phone location data and PRTT | FANG | Phone location data and tolls |
| 3/15/2021 | MJ21-154 | SW for phone location data and PRTT | FLOTT & YUAN & FANG | Phone location data and tolls |
| 3/15/2021 | GJ20-265-1 | Vehicle (renewal) | FLOTT | GPS data |
| 3/15/2021 | GJ20-265-2 | Vehicle (renewal) | YUAN | GPS data |
| 3/15/2021 | GJ20-265-3 | Vehicle | YUAN | GPS data |

Affidavit of Inspector Stinson - 14
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Date | Warrant No. | Type | Subject | Items |
|------|------|------|------|------|
| | | (initial) | | |
| 4/20/2021 | MJ21-238 | Vehicle | YOUNG | GPS data |
| 4/20/2021 | GJ20-265 | SW for phone location data and PRTT | YOUNG | Phone location data and tolls |
| 4/20/2021 | MJ21-237 | Email | YUAN | Contents, records, etc |
| 5/18/2021 | MJ21-290 | Parcel SW | YOUNG | Suspected THC Concentrates |
| 10/22/2021 | MJ21-569 | Parcel SW | Addressed to "Glenda Wallace" at YOUNG's Residence | *$25,840.00 Cash* (not seized in furtherance of investigation) |
| 11/9/2021 | MJ21-603 | Parcel SW | YOUNG | *$50,000.00 Cash* (not seized in furtherance of investigation) |
| 4/14/2022 | MJ22-155 | Parcel SW | Alex ROCHON | *$17,355 Cash* |
| 8/30/2022 | MJ22-409 | Parcel SW | YOUNG | Nicotine vape cartridges, glass marijuana dab pipes, mini glass water pipes |
| 9/12/2022 | MJ22-435 | Parcel SW | ALLEN | Marijuana plant material |
| 9/20/2022 | MJ22-452 | Email & iCloud | YOUNG & YUAN | Contents, records, etc |
| 12/23/2022 | MJ22-600 | Parcel SW | YOUNG | Marijuana rolling papers |
| 2/9/2023 | MJ23-059 | Parcel SW | DIAZ | $1,400 in money orders |
| 4/21/2023 | MJ23-185 | Parcel SW | FLOTT | $12,500 in money orders |
| 9/13/2023 | MJ23-457 | Parcel SW | YOUNG | High-Capacity Pistol Magazines |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| 10/20/2023 | MJ23-517 | Parcel SW | YUAN | 469 grams marijuana plant material |
| 10/23/2024 | MJ24-674 | Parcel SW | ALLEN | 67.3 grams cocaine |

22.     As noted above, we have obtained prior warrants to track YOUNG and members of his illicit network and our ability to track those vehicles and phones was productive and yielded evidence. The tracking data from those warrants enabled us to safely surveil YOUNG and his co-conspirators as they mailed packages at various postal and other package delivery service locations.  In some instances, we were able to interdict the packages, obtain search warrants, and seize the contents, typically marijuana and other marijuana products.  Some of those warrants are set forth in the table above.[3]

**PROBABLE CAUSE FOR TARGET LOCATIONS AND VEHICLES**

**Joshua YOUNG: Target Location 2004 (2004 Columbia Ave. Unit A, Everett, Washington 98203)**

23.     According to U.S. Postal Service (USPS) business data, Joshua YOUNG placed a change of address with USPS effective February 2, 2021.  According to the change of address, YOUNG changed his mailing address from 3333 164th St. SW Apt 531, Lynnwood, Washington to 2004 Columbia Ave Unit A, Everett, Washington, hereafter **Target Location 2004**.

24.     On February 18, 2021, at approximately 9:32 PM, surveillance observed Mu YUAN arrive to YOUNG's residence **Target Location 2004**.  YUAN parked in the gravel parking lot next to **Target Location 2004** and then retrieved a large plastic garbage bag from the trunk of the vehicle. YUAN stood in front of the garage door for **Target Location 2004** and then appeared to place a telephone call.  The garage door

---

[3] As noted in the table above, we have also continued to identify suspicious incoming packages to YOUNG and his confederates and have interdicted and obtained warrants for some of said packages, resulting in the seizure of additional cash.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

opened, YUAN entered YOUNG's garage, and then the garage door closed after an unknown male departed.

25.    A review of toll data revealed YUAN called **YOUNG's** "dirty number" (425-515-4534) a telephone number primarily utilized for conducting illicit drug transactions at the time surveillance observed YUAN place the aforementioned telephone call. During the investigation, YOUNG was seen to maintain one number investigators believed he mostly (but not exclusively) used for legitimate purposes, and a second phone number he appeared to use to conduct illegal activities.  That second number would occasionally change.  I know, based on my training and experience that drug traffickers will often use multiple phone numbers in an attempt to confuse or avoid detection by law enforcement.

26.    Telephone number 425-515-4534 was identified in previous affidavits and was discovered during a February 22, 2021, trash pull of YOUNG's garbage from **Target Location 2004**. During the trash pull, I located a receipt from "The Phone Guys" dated February 9, 2021. The receipt appeared to be for an Apple iPhone 64GB, a phone case, New Carrier Service Plan for telephone number (425) 515-4534 (TT7), an activation fee, and a SIM card.  The name "JOSHUA YOUNG" appeared at the bottom of the receipt along with telephone number (360) 320-0030 which has been YOUNG's long standing legitimate telephone number.

27.    Surveillance observed YUAN depart **Target Location 2004's** garage at approximately 10:07 PM with a white plastic grocery sack. Surveillance observed YUAN place the grocery sack in the trunk of his vehicle and then depart. Based on surveillance observations and the telephone call to YOUNG's dirty number (TT7), I believe YUAN arrived at YOUNG's residence, **Target Location 2004** and then placed a call to YOUNG in order to gain access to the garage. Furthermore, based on my training, experience, and

Affidavit of Inspector Stinson - 17
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

familiarity with this investigation, I believe YUAN arrived to YOUNG's with marijuana in the large plastic bag and departed with cash in the white grocery sack.

28.    As mentioned above, the phone receipt was recovered during a trash pull on February 22, 2021, at **Target Location 2004**.  When agents recovered YOUNG's trash, it was located in trash bins next to a public street awaiting retrieval from a trash collection company.  In YOUNG's trash, agents found the following items:

a.    Clear Plastic bag bearing a handwritten label "10@ $2100 Frosted Cherry Cookies."[4]

b.    Clear Plastic Bag bearing a handwritten label "GG $1700"[5]

c.    Clear Plastic Bag bearing a handwritten label "1/2 PP".[6] I identified a small amount of green leafy substance suspected of being marijuana in the Clear Plastic Bag bearing "1/2 PP."  I conducted two presumptive field tests for marijuana of the green leafy substance, and both tested positive.

d.    The aforementioned receipt from "The Phone Guys" dated February 9, 2021.

**April 2021 Parcel Containing Controlled Substances (YOUNG)**

29.    On April 22, 2021, the U.S. Postal Service (USPS) forwarded USPS Priority Parcel 9505 5140 1983 1109 1728 47 to the U.S. Postal Inspection Service (USPIS) in Tukwila, Washington for possibly containing hazardous, restricted, and perishable mail, which was detected during normal USPS business operations. This particular parcel was mailed to YOUNG's address (**Target Residence 2004**). USPIS detained the parcel on April 23, 2021. I became aware of the detained parcel in USPIS

---

[4] I know, based on my training and experience, that different strains for marijuana are often given names.  I believe that this notation refers to ten pounds of a particular strain of marijuana that goes for $2,100 a pound.

[5]  Again, this is likely a reference to a particular strain of marijuana going for $1,700 a pound.

[6] I believe this notation likely refers to the bag having contained a ½ pound of marijuana.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

custody on May 10, 2021, during a trash pull of Joshua YOUNG's discarded trash near the public road at his residence in Everett, Washington. During the trash pull, investigators located a letter from USPIS stating they had detained the suspect parcel. While the targets received notice that this particular parcel had been detained by USPIS, investigators do not believe the targets were aware of the larger federal investigation.

30.     During my research, I identified a second and very similar parcel, which was mailed with the suspect parcel detained by USPIS to YOUNG's residence and delivered on April 22, 2021, to **Target Residence 2004**. The second parcel was a USPS Priority Class parcel bearing tracking number 9505514019831109172830. The postage for this second parcel was paid for in cash just like the original parcel (USPS Priority Parcel 9505514019831109172847). Based on USPS business data, both of these parcels were mailed from "Guillermo Sanders" to "Mathew Wright", neither of which was associated with the sender or recipient addresses.

31.     On May 18, 2021, I applied for and was granted a Federal Search Warrant for the parcel in USPIS custody by the Honorable S. Kate Vaughan (MJ21-290). When Postal Inspector Kimberly Myhrer and I executed the search warrant on May 24, 2021, we discovered three glass jars wrapped in orange bubble wrap and two red plastic Solo style cups. The glass jars appeared to contain a brittle, chalky substance. One glass jar had a piece of paper taped to it with a handwritten "907 grams" in red near the center of the paper. We did not locate any other notes or instructions in the parcel. Based on my training, experience, and familiarity with the investigation, I believe the chalky substance was a marijuana or THC concentrate. When I opened one of the jars to test the substance, I could smell the strong odor of marijuana emanating from the jar. I conducted a presumptive field test of the substance, which tested positive for the presence of THC. All three jars were weighed and had a combined approximate total of 2,776.5 grams

Affidavit of Inspector Stinson - 19
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(including the glass jars). The portion of the seized substance sent to the Food and Drug Administration laboratory for analysis and tested positive for the presence of THC.

## October 2021 Parcel Containing Currency (YOUNG)

32.    On October 22, 2021, I applied for and was granted a federal search warrant for a parcel mailed to **Target Residence 2004** in a fictitious name (MJ21-569). This October parcel was mailed from someone in Brinkley, Arkansas who used the return address of 510 S. Carter Ave, Brinkley, Arkansas.  In September 2019, Tianyu LYU mailed suspected drug parcels to 510 S. Carter Ave. Apt. A, Brinkley, Arkansas 72021, which was previously reported during this investigation.  LYU previously shipped suspected drug parcels to Apartment A at 510 S. Carter Ave, Brinkley, Arkansas. The sender of this parcel appears to have originally written "Apt A" and then wrote "B" over the "A".

33.    On October 22, 2021, Postal Inspector Justin Lothyan and I executed the search warrant and located $25,840 USD, vacuum sealed and hidden within the parcel. No notes, instructions, or receipts were located within the parcel. With concurrence from the U.S. Attorney's Office, PI Lothyan and I counted and repackaged the currency in the same manner it was found. I seized the two food saver vacuum seal bags the currency was located in.  I entered those bags into evidence and then sent them to the USPIS forensic laboratory on October 26, 2021, for potential fingerprint analysis.

34.    I returned the parcel to the mail stream in Everett, Washington on October 22, 2021.  According to USPS business data this parcel was delivered at YOUNG's residence on October 23, 2021.

Affidavit of Inspector Stinson - 20
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**November 2021 Parcel Containing Currency (YOUNG)**

35.     On November 9, 2021, I applied for and was granted a federal search warrant for a parcel mailed from Virginia Beach, Virginia to Josh YOUNG at **Target Residence 2004** (MJ21-603). On November 10, 2021, FBI S/A Caryn Highley and I executed the search warrant on this latest parcel and discovered $50,000 USD hidden inside. No notes, instructions, or receipts were located within the parcel. With concurrence from the U.S. Attorney's Office, S/A Highley and I counted and repackaged the currency in the same manner it was found in order to return it to the mail stream. I returned the parcel to the mail stream in Everett, Washington on November 10, 2021.

36.     At 3:25 PM, I watched a USPS mail carrier set the parcel on the porch area at the front door to YOUNG's residence, knock on the door, and then depart.  I saw who I recognized to be YOUNG open the door, retrieve the parcel, gesture or point toward the mail carrier, then go inside and close the door.

**November 2021 Home Invasion/Robbery and Shooting of Young**

37.     On November 11, 2021, through remote surveillance, investigators saw a large amount of police activity at **Target Residence 2004**. I contacted Detective Molly Spellman who informed me that YOUNG was the victim of a home invasion/robbery the night before. YOUNG and one of YOUNG's associates, Ryan HOLT were shot with non-life-threatening injuries on the night of November 10, 2021, when at least three men entered YOUNG's residence through the side door. YOUNG reportedly returned fire with his firearm. As Everett Police secured the home, officers observed firearms and "large quantities of a green leafy substance that appeared to be marijuana."

38.     On November 10, 2021, YOUNG was interviewed by Everett Police Detective Corey Barrows. During the interview YOUNG told Detective Barrows in part, "And I got up and I kept fighting him. I think that's when I got shot in the leg. And then I

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

went for my girlfriend's concealed carry on top of the fridge. Probably got hit in the head another time, but went for it, turned around, then realized a bunch of people were running. The guy was still coming for me when I shot in his direction, but I don't think I hit him. Or I sho-, I, don't know. I, I fired the gun. At least two shots or three. I hope I didn't hit anybody. I really don't. like, even though the guy shot me, I feel like people are really desperate these days." The above quote is taken from a transcription from a recorded interview of YOUNG. Based on my training, experience, and familiarity with this investigation, I know that "my girlfriend's concealed carry" refers to a firearm.

39.     According to an Everett Police report, Detective Steve Brenneman conducted a recorded interview with DEGEUS where she told him YOUNG sells marijuana. Additionally, photographs taken of the notifications on YOUNG's locked mobile telephone indicated the use of encrypted applications such as Signal and Telegram. Several of the names associated with these notifications are potentially drug related. The following Telegram notifications were captured from "Cali Plug Menu REAL," "Box Boy Distro," B ALL IN MENU Ballinla.2," "Seattle Plug," and "CALIPLUG X B ExZaTiK OFFICIAL." Based on my training and experience, I know the term "plug" can mean drug supplier. Additionally images photos of iMessage notifications from, "Curtis Bud," "Marco Bud," and "Sosa" were captured. Based on my training and experience I know that "bud" refers to marijuana. Additionally, based on my experience with this investigation, I know that YUAN has previously used the name "Sosa," or specifically Sosa Kushman. Based on my training and experience, I know "kush" can also refer to marijuana.

40.     On November 11, 2021, the Snohomish Regional Drug Task Force ("SRDTF") responded to YOUNG's residence.  Pursuant to a state search warrant, investigators recovered 10 firearms, approximately 58 pounds of marijuana,

Affidavit of Inspector Stinson - 22
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

approximately $123,824 cash, and YOUNG's BMW that he told investigators he was going to sell so he could use the proceeds of the sale as a down payment on a house. While investigators were at the residence, UPS delivered a parcel addressed to YOUNG from "EMEL ADMONES" in Virginia Beach, Virginia. I told Detective Spellman that based on my experience with this investigation, the parcel more than likely contained drug proceeds. Investigators detained the parcel.

41.     On November 16, 2021, Detective Spellman applied for and was granted a Snohomish County search warrant for the UPS parcel detained from YOUNG's front porch. I assisted Detective Spellman in the execution of that search warrant. During the search warrant, Detective Spellman discovered $50,000 USD. That currency was seized by the SRDTF as suspected drug proceeds.

42.     Through USPS business data, I located an address several blocks from YOUNG's **Target Residence 2004** receiving parcels from locations the Joshua YOUNG DTO had historically sent drugs to and received drug proceeds from. Beginning on March 11, 2022, 6714 Highland Drive, Everett, Washington 98203 was the intended address of at least six parcels suspected of containing drug proceeds. Five parcels had been delivered and one parcel, addressed below, has been seized. Of the six parcels, one parcel was mailed from Mobile, Alabama; two were mailed from Brinkley, Arkansas; and three were mailed from Virginia Beach, Virginia. Several of these parcels were addressed to Alex ROCHON who resides at the Highland Drive address. ROCHON is one of the individuals YOUNG has previously received payment from via Peer to peer (P2P) transactions, which will be presented later in this affidavit.

43.     On April 14, 2022, I applied for and was granted a federal search warrant (MJ22-155) for a parcel mailed from Brinkley, Arkansas to Alex ROCHON at ROCHON's residence. When we executed the search warrant on April 15, 2022, Postal

Inspector Michael Fischlin and I discovered $17,355 USD hidden within the parcel. No notes, instructions, or receipts were located within the parcel. I seized the $17,355 as suspected drug proceeds.

### Surveillance of YOUNG and Shipment by FLOTT

44.     On October 13, 2022, I conducted surveillance at YOUNG's residence located at **2004 Columbia Ave Unit A, Everett, Washington 98204 (Target Residence 2004)**. I observed a newer black BMW M3 driving towards Madison Street on Washington Avenue away from the direction of YOUNG's alleyway (later positively identified as a previous vehicle of YOUNG). As the M3 got closer, I recognized the driver as YOUNG. I got behind the BMW M3 and was able to read the temporary paper tag in the rear window of the vehicle. The tag was a Washington temporary registration A5708691 with an expiration date of November 4, 2022. While conducting surveillance on Interstate 5 (I-5) South, I observed YOUNG was driving approximately 50-55 miles per hour (MPH) in a 60 MPH zone, while staying in the right lane of traffic. Based on my training and experience, I know that drug traffickers will often drive at or below the speed limit while attempting to follow all traffic laws when they are carrying or moving contraband. I have observed YOUNG's driving habits multiple times during the course of this investigation and YOUNG does not typically drive at or below the speed limit. I observed YOUNG exit I-5 at the 164th St SW exit and turn west. I followed YOUNG on 164th St SW until it turned into 44th Ave W. I observed YOUNG turn right onto 176th St SW.

45.     At 9:26 AM, I observed YOUNG turn into the Duet apartments located at 4702 176th St SW, Lynnwood, Washington 98037. Based on my familiarity with this investigation, I am familiar with this apartment complex as being the location of

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Chandler FLOTT's apartment.  YOUNG parked close to FLOTT's apartment building, Building B

46.    At 9:29 AM, I observed YOUNG remove a black or dark colored duffel bag from the trunk of his vehicle, close the trunk, and then walk toward FLOTT's apartment building.  The duffel bag appeared to be full or partially full.

47.    I did not see YOUNG return to the vehicle.  However, I observed an unknown black male standing near the driver's side rear passenger door of YOUNG's BMW.  The unknown male appeared to be speaking to someone near the driver's door, which I could not see the driver's door of the M3 from my location.

48.    At 9:47 AM, I observed YOUNG driving his BMW as it departed the Duet Apartments and turned right on 176th St. SW.

49.    At 12:56 AM, I observed an individual I would later identify as FLOTT carry a parcel towards a parked car that was out of my view and then walk back towards the direction of his residence without the parcel.

50.    At 1:06 PM, I observed FLOTT walk back towards the vehicle from the direction of his residence where he had previously taken the parcel.

51.    I observed a black Chrysler 300 bearing Washington license plate BXM9246 depart the parking stall where FLOTT had walked to.

52.    At 1:08 PM, I watched the Chrysler depart the Duet apartments and turn left toward Highway 99.

53.    I followed the vehicle to the parking lot of the UPS Store located at 12918 Mukilteo Speedway Ste C-23, Lynnwood, Washington 98087.

54.    At 1:21 PM, I observed FLOTT walking from the direction of the UPS Store.  FLOTT did not appear to carry any mail or parcels.  FLOTT entered the driver's door of the vehicle and departed the parking lot.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

55.     I entered the UPS Store and identified myself as a U.S. Postal Inspector and asked to see the parcel that had been shipped by the male who had just departed the store. A UPS Store employee showed me the pile of recently dropped off parcels where I immediately recognized one parcel based on its shipping address.

56.     I recognized the recipient address "WE PRINT IT UNIT C, 5720 HOGGARD RD, NORFOLK VA 23502-2244" as it is a location YOUNG and FLOTT have previously shipped to.  When I placed my nose near the seam of the parcel, I could smell what could be described as dryer sheets.  Based on my knowledge, training, and experience I know drug traffickers will often use masking agents such a dryer sheets to conceal the smell of contraband. Based on my training, experience, familiarity with this investigation, and observations of YOUNG, FLOTT, and the parcel, I believe this parcel contained controlled substances.  Furthermore, I believe YOUNG transported marijuana from his residence at **2004 Columbia Ave Unit A, Everett, Washington** (**Target Residence 2004**) in his BMW M3 to FLOTT's residence **at 4702 176th St. SW Apt B116, Lynnwood, Washington 98067.** I believe FLOTT then packaged the marijuana or marijuana products for shipment, transported them to the UPS store in his vehicle, and then shipped the parcel.

**Suspected Delivery of Marijuana to YOUNG**

57.     On April 19, 2023, FBI Special Agents were conducting surveillance in vicinity of **Target Residence 2004**.  At Approximately 9:28AM, a white Volkswagen Atlas, confirmed to be driven by another criminal associate of YOUNG arrived at **Target Residence 2004**.  The Atlas parked in YOUNG's parking area and the driver got out of the vehicle and retrieved a large black bag from the cargo area of the vehicle. After retrieving the bag, the driver of the vehicle then walked into YOUNG's open garage and the garage door closed behind him.  At approximately 9:59AM, the driver of the Atlas

exited YOUNG's residence through the side sliding glass door, returned to the vehicle, and then went back into YOUNG's residence through the same sliding glass door.  At approximately 10:16AM, the driver exited **Target Residence 2004** carrying a black bag which he placed in the cargo area of the Atlas, entered the driver's door of the vehicle, and then departed the area in the vehicle.  Surveillance units could see YOUNG through the sliding glass door as the driver returned to his vehicle.  At approximately 10:27AM, surveillance units watched as YOUNG opened the sliding glass door and appeared to smoke.  At approximately 11:31AM, surveillance units observed YOUNG as he departed the residence in his black BMW M3.  Surveillance units followed YOUNG to **Target Business 4540** where he parked on the street and then surveillance was terminated.

58.     Based on my training, experience, and familiarity with this investigation, I believe the driver of the Volkswagen Atlas was Zhuowen LIU as the registered owners of the Atlas are reportedly out of the country and have been for some time.  Based on surveillance during the course of this investigation, LIU is the only person to be observed driving the Atlas. Based on my training, experience, and familiarity with this investigation, I believe LIU delivered marijuana to **Target Residence 2004**.

### Continued Surveillance of YOUNG

59.     On August 28, 2024, Agents and Inspectors conducted surveillance of YOUNG beginning at **Target Residence 2004**.

60.     Around 8:00 AM, I observed a white Toyota 4Runner leave from the direction of **Target Residence 2004**. The vehicle appeared to be driven by Brielle DEGEUS, who is YOUNG's girlfriend. I recognized DEGEUS based on my familiarity with her Washington State Department of Licensing issued driver's license photo as well as the photos of her on YOUNG's open-source social media accounts. Based on the totality of what I observed, I believe DEGEUS was driving **Target Vehicle 2**. After

DEGEUS' departure, Special Agent (S/A) Kelli Johnson reported YOUNG could be seen in the open garage of **Target Residence 2004** wearing a bathrobe, a black ball cap, barefoot, and smoking. At 10:02 AM, I observed YOUNG as he drove by in **Target Vehicle 1** eastbound on Madison Street. Postal Inspector (PI) Kimberly Myhrer observed as YOUNG turned right onto Broadway. Due to the manner in which YOUNG drove, surveillance units lost sight of YOUNG for a period of time. It is unknown if YOUNG was actively attempting to avoid surveillance units or if he simply drove in violation of state law. Regardless, surveillance was unable to safely follow YOUNG.

61.     At approximately 10:15 AM, S/A Johnson located YOUNG as he drove westbound onto Airport Way from 128th St SW. Again, due to the manner in which YOUNG drove, surveillance units lost sight of YOUNG for a period of time. It is unknown if YOUNG was actively attempting to avoid surveillance units or if he simply drove in violation of state law. Regardless, surveillance was unable to safely follow YOUNG.

62.     Inspector Myhrer reacquired YOUNG as he drove southbound in about the 8000 block of Mukilteo Speedway. I followed YOUNG south on Mukilteo Speedway. As YOUNG drove south in the far-left hand lane, I observed as YOUNG switched from the lefthand lane to the far-right lane and exited the highway without signaling (I fortunately was stuck at a red light and was able to observe this). I was able to follow and later acquired **Target Vehicle 1** at Evergreen Way, turning left onto 148th Street SW in Lynnwood, WA. At 10:45 AM, I confirmed the license plate of the BMW YOUNG was driving was CMA9847. According to Washington Department of Licensing, CMA9847 belongs to a 2021, BMW M3 registered to YOUNG at 2004 Columbia Ave Unit A, Everett, WA (**Target Vehicle 1**).

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

63.    At approximately 10:54 AM, S/A Zigler observed as YOUNG parked **Target Vehicle 1** across from Zakk's Smoke and Beverages located at 2902 164th St SW Unit G4, Lynnwood, WA 98087. At 10:55 AM, S/A Zigler observed YOUNG speaking on his mobile telephone. At 10:59 AM, S/A Zigler reported YOUNG walked into Zakk's Smoke and Beverages. At 11:02 AM, S/A Angela Zigler observed as YOUNG came out of Zakk's Smoke and Beverages with a second male. Both men walked across the parking lot to **Target Vehicle 1**. At 11:03 AM, S/A Zigler watched YOUNG open the trunk of **Target Vehicle 1**, pull a black backpack towards him from the trunk, and then retrieve something from the backpack in the trunk of **Target Vehicle 1**. S/A Zigler then watched as YOUNG closed the trunk and both men walked back toward Zakk's Smoke and Beverages. At 11:04, both men stood in front of Zakk's Smoke and Beverages. A short time later, both entered Zakk's Smoke and Beverages.

64.    At 11: 59 AM, S/A Zigler watched as YOUNG exited the store and returned to **Target Vehicle 1**. YOUNG then drove across the parking lot and parked near a Five Guys restaurant in the same shopping area. At 12:05 PM, PI Myhrer observed as YOUNG went into Five Guys. At 12:32 PM, PI Myhrer watched YOUNG get back to **Target Vehicle 1** with a brown paper sack. PI Myhrer watched as YOUNG placed the paper sack in the trunk of **Target Vehicle 1**. At 12:34 PM, PI Myhrer observed as YOUNG pulled away from the building in **Target Vehicle 1**, exit the parking lot onto 164th St. SW. headed east. Surveillance units then followed YOUNG as he exited 164th St onto Interstate 5 and then drove south.

65.    I observed as YOUNG took the NE 50th Street exit in Seattle. I then watched as YOUNG drove to his store, Cloudz Vape located at **4540 university Way NE, Seattle, WA (Target Business 4540)**. I watched as YOUNG parked in front of Cloudz Vape. At 1:05 PM, I saw YOUNG at the open trunk of **Target Vehicle 1**, parked

nearly in front of his business. YOUNG was wearing a black backpack that he appeared to have just pulled out of his trunk. He then handed a brown paper sack with a white receipt on it to a white male standing on the sidewalk. I noted this paper sack appeared to be the same paper sack YOUNG placed in the trunk of his vehicle after exiting the Five Guys restaurant in Lynnwood. Based on how YOUNG interacted with the backpack in the trunk of **Target Vehicle 1** in Lynnwood and after seeing him immediately put it on when stopping in Seattle, I believe the backpack contained drugs, money, or guns or a combination of the three. At 1:38 PM, I observed YOUNG's BMW parked in the same location near **Target Business 4540**.

### Surveillance of Target Residence 2004

66.     On September 21, 2024, at 11:22PM, an unknown male walked towards the garage door of **Target Residence 2004** carrying what appeared to be a large trash bag. The garage door opened, and the unknown individual entered the garage. The garage door closed behind him. Approximately 48 minutes later, the garage door opened, and YOUNG and the unknown male could be seen in the garage. The unknown male then exited the garage carrying a garbage bag. The unknown male then departed in a light color sedan.  Based on my training and experience, and my knowledge of the investigation, I believe this unknown male delivered marijuana to YOUNG at his residence.

67.     During surveillance at **Target Residence 2004**, an individual believed to be Michael HARRIS, a coconspirator has been observed at YOUNG's residence. For example, on October 21, 2024, at 8:48AM, YOUNG could be seen carrying a large black duffel bag in his garage. At 8:51AM, YOUNG's BMW departed the garage with the door closing behind it. At 7:31PM, a white Honda Ridgeline arrived at YOUNG's residence. At 7:32PM, a black male I believe to be HARRIS exited the Ridgeline and knocked on

Affidavit of Inspector Stinson - 30
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

YOUNG's sliding glass door, and no one answered. HARRIS stood outside appearing to smoke and talk on his mobile phone. Of note, HARRIS' girlfriend Winona BOXBERGER has a Washington registered 2023 white Honda Ridgeline bearing license plate D02813E. At 7:45PM HARRIS got into the driver's seat of the Ridgeline. At 7:53PM, YOUNG's garage door opened, and HARRIS walked into the garage. At 7:54PM, the garage door closed behind him. At 7:56PM, the garage door opened, and HARRIS exited the garage carrying a large black duffel bag. The duffel bag appeared to be the same approximate size and type of the one YOUNG could be seen with earlier in the day. HARRIS placed the duffel bag in the bed of the Ridgeline and departed YOUNG's residence. At 8:09PM, YOUNG's BMW arrived back to the residence.  Based on my training and experience, and my knowledge of the investigation, I believe that YOUNG supplied HARRIS with marijuana.

68.    On November 24, 2024, at 12:41PM, a Silver 2017 Nissan Maxima bearing Washington license plate CNW2028 (registered to Zhuowen LIU at 7325 125th Pl SE, Newcastle, WA 98056) arrived and parked between YOUNG's Toyota 4Runner and his residence. LIU was previously involved in retrieving a suspicious parcel in November 2022. At 12:42PM, an individual I believe to be Zhuowen LIU exited the driver's seat of Maxima and walked to the trunk, where he retrieved a gray bag. LIU walked back towards driver's side of the Maxima. At 12:43PM, LIU walked back to the trunk and placed the bag back into and closed the trunk. At 12:44PM, the garage door opened, and YOUNG exited and walked to the trunk of the Maxima. LIU opened the trunk and retrieved the same bag before closing the trunk. YOUNG and LIU entered the garage and door closed. At 12:46PM, LIU returned to the Maxima and departed approximately five minutes later. Based on my training, experience, and familiarity with this investigation, I believe LIU delivered marijuana to YOUNG at **Target Residence 2004**.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

69.     At 9:35PM, the same white Honda Ridgeline reported above arrived at YOUNG's residence. At 9:36PM, HARRIS exited the driver's side of the Ridgeline and entered YOUNG's house through the sliding glass door. At 10:03PM, the garage door opened, and HARRIS exited the garage carrying a large brown box and the garage door closed behind him. HARRIS placed the large box in the driver's side back seat of the Ridgeline. At 10:04PM, the garage door opened, and YOUNG walked out of the garage carrying something. YOUNG walked to the driver's side of Ridgeline and handed the object through the open driver's window. YOUNG then returned to the garage and the door closed. HARRIS departed in the Ridgeline. During surveillance, the Ridgeline appeared to have front end damage on the passenger's side. On November 26, 2024, Special Agent Brett Hockenbury located a white Honda Ridgeline with front end damage on the passenger's side bearing Washington State license plate D02813E in front of HARRIS's apartment building at 4626 Celia Way, Bellingham, Washington. Based on my training, experience, and familiarity with this investigation, I believe YOUNG supplied HARRIS with marijuana. Based on the factors of this investigation, I believe the marijuana in the brown cardboard box was meant to be shipped or mailed.

70.     On December 5, 2024, during surveillance, a black Jeep Cherokee arrived at YOUNG's address as YOUNG's BMW began pulling out of his garage. The BMW then reversed and backed part way into the garage. An individual I believe to be Angelo ALLEN exited the vehicle and went inside YOUNG's garage. I have previously seized marijuana mailed from ALLEN along with cash and cocaine mailed separately to ALLEN's residence.[7] Additionally, I have previously followed YOUNG to ALLEN's residence in Mount Vernon, Washington where I believe YOUNG was supplying him with marijuana at the time. ALLEN owns a 2004 black Jeep Cherokee bearing

---

[7] Some of those seizures were pursuant to warrants summarized in the table above beginning on page 9 of this Affidavit.

Washington license plate CFM2844. ALLEN returned to his vehicle approximately 10 minutes later carrying small items. ALLEN walked to the passenger side of his Jeep and then went to the driver's side of the vehicle. YOUNG exited the garage as ALLEN entered the Jeep. YOUNG and ALLEN spoke briefly at ALLEN's open driver's door before ALLEN departed YOUNG's residence. Based on my training, experience, and familiarity with this investigation, I believe YOUNG supplied ALLEN with marijuana or marijuana products.

71.    On December 6, 2024, at 8:11PM, an unknown male in a white crossover arrived at **Target Residence 2004.** The unknown male retrieved a box and what appeared to be a small bag from the hatchback of the vehicle as YOUNG greeted him. Both YOUNG and the unknown male entered the garage of **Target Residence 2004**. **Target Vehicle 1** then departed the garage, and the door closed. At 8:30PM, **Target Vehicle 1** returned to the residence. At 8:33PM, the garage door closed. At 9:09PM, the garage door opened, and the unknown male exited the garage, walked to the white crossover and then departed in the vehicle approximately one minute later. Based on my training, experience, and familiarity with this investigation, I believe the unknown male in the white crossover supplied YOUNG with marijuana or marijuana products.

72.    On December 27, 2024, at 9:19PM, a light color sedan arrived at **Target Residence 2004**. An unknown male exited the vehicle and retrieved what appeared to be a full duffel bag from the passenger side of the vehicle. The unknown male began walking toward the attached garage of Target Residence 2004 when he returned to the passenger side of his vehicle. The unknown male then walked toward the closed garage door of **Target Residence 2004** while appearing to be looking at his mobile phone. At 9:22PM, the garage door opened, the unknown male entered the garage with the duffel bag and the door closed behind him. At 9:45PM the garage door opened, and the

unknown male could be observed inside the garage with the duffel bag. At 9:48PM, the unknown male exited the garage and returned to his vehicle. The unknown male departed in his vehicle. Based on my training, experience, and familiarity with this investigation, I believe this unknown individual supplied YOUNG with marijuana at **Target Residence 2004**.

73.      On December 29, 2024, at 10:10AM, **Target Vehicle 1** returned to **Target Residence 2004**. Brielle DEGEUS exits the vehicle passenger door. DEGEUS directed the vehicle to pull forward. The garage door opened, and DEGEUS entered the garage. YOUNG exited the driver's door of **Target Vehicle 1**. YOUNG then entered the garage. At 10:11AM, YOUNG and DEGEUS exited the garage and walked to the trunk of **Target Vehicle 1**. YOUNG could be seen carrying a small item in his right hand. YOUNG then placed the item in the trunk of the **Target Vehicle 1**. YOUNG and DEGEUS entered the target vehicle, and then departed as the garage door closed.

74.      On January 18, 2025, at 2:21PM, a dark colored Toyota Camry with an unknown male driver arrived at **Target Residence 2004**. At 2:46PM the unknown driver exited YOUNG's garage with and placed boxes into the trunk of the Camry.  At 2:47PM, the driver exited YOUNG's garage and placed what appeared to be a soft-sided rifle carrying case into the trunk of the Camry. The driver appeared to carefully place the carrying case in a manner consistent with having a firearm in the case. At 2:48PM, the unknown male driver departed YOUNG's residence in the Camry. Of note, during the course of this investigation this is the first time I have seen YOUNG overtly give or sell a possible firearm to another individual.

75.      On March 2, 2025, at 8:26PM, a light-colored sedan arrived at **Target Residence 2004** and parked next to **Target Vehicle 2**. An unknown male who I believe to LIU exited the vehicle, walked to the sliding glass door on the side of the house, was

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

greeted by YOUNG, and then entered the house. At 8:34PM, LIU exited the sliding glass door and YOUNG appeared to close the curtains of the sliding glass door behind him. LIU walked to the car where he appeared to remove a large bag from the backseat of the sedan and place it in the trunk of vehicle. LIU then closed the trunk and the back rear passenger door of the sedan. LIU entered the driver's seat of the sedan and then drove away. Although the bag did not enter YOUNG's residence, based on my training, experience, and familiarity with this investigation that the black bag contained marijuana and perhaps YOUNG and LIU could not come to an agreement on price.

### YOUNG's Propensity Toward Firearms

76.     On April 29, 2024, YOUNG posted a Facebook profile photo of himself wearing what appeared to be night vision goggles mounted to a tactical style helmet, a black camouflage Agilite tactical plate carrier with three AR style magazines in the front pocket. In the same photo, YOUNG is wearing a black long sleeve shirt under the plate carrier and a black balaclava hiding his face. On May 11, 2024, YOUNG posted images on his Facebook account of what appeared to be his girlfriend, DEGEUS using night vision goggles mounted to a tactical style helmet to look at the Northern Lights. His caption read, "Night Vision and Northern lights. Dope combo when you take a [emoji of a mushroom] cap or [emoji of two fingers being held up followed by three laughing/crying emojis and a flame emoji] #nightvision". [sic]

77.     On June 2, 2024, YOUNG posted several photographs and several videos in a single Facebook post with the caption, "Lead Therapy Day [number 100 emoji and five American flag emojis] The rain didn't stop the pew pew". [sic] The images depict several AR and SKS style, either short barreled rifles or pistols. Several other pistols and long guns are depicted in the post's images. One image depicts YOUNG in a shooting stance firing what appears to be a short barreled rifle or AR pistol. In an Instagram post

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

dated August 24, 2024, YOUNG wrote, "I love getting my little days off with my little family stopped off at @ironmonkeyrifle where they always have something cool. (Like gold RPGs) to pick up the girlfriends new carry then McMenamins Anderson School [saluting emoji]". [sic] In the first of three images associated with this post, Young is holding what appears to be a metallic gold and white rocket propelled grenade launcher. In the second of three images, a Sig Sauer P365 appears to be resting in the cutout foam of its box. I believe this Sig Sauer pistol is what YOUNG was referring to when he said, "the girlfriends new carry". Based on my training and experience with firearms, I believe "carry" is referring to concealed carry firearm or every day carry firearm. The third image is of YOUNG and his girlfriend's juvenile daughter. These photographs and social media posts suggests not only a continued interest in, and access to, firearms but also willingness to go to considerable effort to procure prohibited high-capacity magazines and train with tactical equipment and firearms. Additionally, based on YOUNG's social media post referring to his, "girlfriends new carry," and the image of the concealable Sig Sauer P365, I believe that YOUNG's girlfriend, Brielle DEGEUS should also be considered armed.

78.     Through remote surveillance on October 30, 2024, at 9:54PM, **Target Vehicle 1** arrived at **Target Residence 2004** and parked in the garage. At 9:56PM YOUNG could be seen exiting the garage with what appeared to be a handgun. YOUNG appeared to be in a shooter's stance with the weapon mounted flashlight engaged. YOUNG appeared to point the firearm down the alleyway and then placed the firearm back inside his waistline. At 9:58PM, YOUNG reentered the garage, and the door closed.

79.     On November 5, 2024, at 5:01PM, YOUNG exited his garage and removed a holstered firearm from his waistband. YOUNG appeared to place the firearm on top of

Affidavit of Inspector Stinson - 36
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the garbage can while he urinated on the side of his residence. YOUNG then retrieved the firearm and reentered the garage.

80.     On November 23, 2024, at approximately 5:18PM, while standing outside **Target Residence 2004**, YOUNG removed what appeared to be a firearm with a weapon mounted light from his waistband. YOUNG appeared to take a shooter's stance and flashed the mounted light. At 5:19PM, YOUNG placed the firearm back into his waistband. At 5:21PM, YOUNG appeared to pace around his garage and driveway while holding what looked like his mobile phone.

81.     On December 28, 2024, at 6:20PM, YOUNG's garage door opened YOUNG exited the garage. At approximately 6:21PM, YOUNG walked to the side of his house and appeared to draw a firearm from his waistband. YOUNG appeared to take a firing stance, aiming the firearm with the light engaged down the side of his home toward the sliding glass door to the residence. YOUNG then walked toward his garbage can and appeared to look at something in that area before holstering his firearm and returning to the garage.

82.     On January 1, 2025, at approximately 4:52PM, YOUNG exited his garage while shouldering what appeared to be an AR style short, barreled rifle. YOUNG looked down his alley with the rifle and then returned to the garage.

83.     On February 23, 2025, at approximately 7:57PM, YOUNG exited the garage of **Target Residence 2004** and activated a weapon mounted light on his handgun while taking a shooter's stance pointing along the west side of his residence towards the sliding glass door.

84.     YOUNG's firearm activity such as drawing his concealed firearm and pointing it in the direction or at his neighbor's homes as well as his use of a weapon mounted light as a flashlight shows a reckless disregard for the safety of his neighbors as

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

well as possible paranoia due to his current criminal activities. Given YOUNG's involvement in an earlier shootout after the home invasion robbery of his residence described above – likely an attempt to steal his drugs and drug proceeds – and the very recent incident described below, YOUNG's continued possession of firearms is concerning.

**Recent Arrest of Young**

85.     On March 11, 2025, while reviewing remote video surveillance of Target Residence 2004, investigators learned YOUNG was contacted by the police. Research revealed that on Saturday March 8, 2025, YOUNG was accused of pointing a handgun at another customer (hereafter, the "victim") at a Taco Bell located at 8401 Mukilteo Speedway, Mukilteo, Washington.

86.     Based on law enforcement reporting from a publicly available database, the victim stated they were at Taco Bell with friends when they observed the BMW M3 (later identified as **Target Vehicle 1**) in the drive-through; the victim noted a BMW M3 was their dream car. The victim started recording a video on their cellphone, walked out of Taco Bell, and approached **Target Vehicle 1**. The victim can be reportedly heard in the video saying things like this is my dream car and talking to the male driver about how cool the vehicle was. The male (later identified as YOUNG) continued through the drive-through and pulled into a parking stall. The victim thought the male parked the vehicle to show off the BMW to the victim.

87.     The victim continued recording the interaction, approached the vehicle, and asked the male to rev the engine. The victim approached the driver's side door of the BMW, and YOUNG rolled the window down and told the victim not to record him. The victim stated the male pulled out a black pistol, rested the firearm on the driver's side window, and pointed the gun at them. The victim ended the video recording. The victim

stated they believed if they did not stop the recording, the male was going to shoot them. The victim said they felt scared for their life and walked back inside Taco Bell. The victim described the male as a white male wearing a black hat. The victim described the firearm as a small black gun with a green dot on it.

88. The victim showed the Mukilteo Police Officer the video recording, and the male's face and vehicle license plate were clear and visible in the video. The officer conducted a registration check of the vehicle. The officer searched the vehicle through Department of Licensing (photo and persons return) and observed that the registered owner of the BMW, Joshua YOUNG, was the same male as depicted in the victim's video. The victim later positively identified YOUNG as the male who pointed the gun at them.

89. On March 12, 2025, I contacted Mukilteo Police Detective Eric Ofori about the incident via telephone. Corporal Mason Shoudy, who assisted Detective Ofori in executing search warrants on **Target Vehicle 1** and **Target Residence 2004** was also on the call.

90. During the conversation, Detective Ofori said Mukilteo Police Officers arrested YOUNG for Assault 2 as well as conducted a search warrant on **Target Vehicle 1** and **Target Residence 2004** specifically for handguns and handgun related paraphernalia. Detective Ofori said during the search of the vehicle they located an MP5 style firearm (which is essentially a submachine gun style weapon) affixed to the back of the back seat. Corporal Shoudy explained the back seat could be folded down from the interior of the vehicle with a lever or something similar making the firearm accessible from inside the vehicle. Corporal Shoudy also told me that located with the MP5 was a backpack which contained a rifle plate or body armor. The backpack also contained five extra MP5 magazines, extra magazines for a separate pistol, and a suppressor for the

MP5. Approximately 1,000 rounds of ammunition were in a container on the back seat floor. Detective Ofori said what appeared to be marijuana in a glass jar was also located in the trunk of the vehicle.

91.    During the execution of a Washington State search warrant of the **Target Residence 2004**, officers located the suspected pistol used during the alleged assault on the Victim, a semi-automatic Glock 48 pistol (SN- BYSA405). The pistol had a loaded 15 round magazine and one round in the chamber. The pistol had a red dot optic and a flashlight attachment. The officers seized four additional handguns from safes located in YOUNG's bedroom. During the search of the residence, Detectives and Officers observed, but did not seize at least nine rifles including Armalite Rifle (AR) platform rifles, an AK47 type rifle, and a .308 caliber rifle. Additionally, a shotgun was located in a safe. The investigators also located AR pistols, a Kriss Vector type firearm, and multiple suppressors.

92.    Corporal Shoudy said there was what appeared to be marijuana or marijuana products tucked away throughout the house and appeared to be out of reach of the child that resides there. The quantity of marijuana appeared to be smaller amounts. However, Detective Ofori said they were searching solely for the handguns and merely saw the marijuana pursuant to plain view.

93.    Booking records for YOUNG indicated he was released on $20,000 bond from the Snohomish County Jail on March 9, 2025, the same day he was arrested.

94.    Despite the recent search of **Target Vehicle 1** and **Target Residence 2004**, I believe that evidence of the crimes under investigation, described in Attachment B, will nonetheless still be found at both locations.  As noted above, local officers saw in plain view, but did not seize, additional firearms and marijuana that were outside the scope of their own search warrant.  In addition, many other items set forth in Attachment B were

Affidavit of Inspector Stinson - 40
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

outside the scope of their warrant, which dealt with a much narrower investigation into the specific assault allegedly committed by YOUNG.

### Financial Investigation

95.     An extensive financial investigation into YOUNG and his associates has been conducted with the assistance of Auditor Carnell. The investigation shows evidence of unexplained wealth, inconsistent with known legitimate employment or other sources of income for YOUNG and many of his associates. I know, based on my training and experience, that evidence of unexplained wealth is often indicative of drug trafficking or other criminal activity. The financial investigation also shows that YOUNG and some of his associates opening businesses, opening and using numerous bank and other financial accounts, and sometimes moving money between accounts in a fashion that seems to have no legitimate business purpose. I know, based on my training and experience, and my consultation with Auditor Carnell, that this activity can be indicative of money laundering.

### Establishment of Young Business Solutions LLC and Cloudz Vape

96.     During the financial investigation, I became aware that YOUNG wrote a check from his BECU checking account to Stratton Properties Inc. for "Deposit + Rent" in the amount of $9,034.00. The check was dated March 17, 2022, and appeared to be signed by YOUNG.

97.     On April 6, 2022, I became aware of an LLC that YOUNG apparently opened on or about March 16, 2022:

UBI                              1610

Business Name              Young Business Solutions LLC

Physical Address          2004 Columbia Ave, Unit A, Everett 98203

Incorporation Date        03/16/2022

Exp Date 03/31/2023

Email                    joshyyoung197@gmail

Phone                   360.320.0030

98.     On April 6, 2022, I located a Washington State Department of Revenue (DOR) business license record for UBI 6 ████ 1610, which indicated it belongs to CLOUDZ VAPE. The mailing address was 2004 Columbia Ave Unit A, Everett, Washington 98203 and location address was 4540 University Way NE, Seattle, Washington 98105 (**Target Business 4540**). Joshua YOUNG is listed as the business' sole governing person.

99.     On April 7, 2022, Customs and Border Protection Officer (CBPO) David Moen identified a second CLOUDZ VAPE business, located at 1635 Avenue F, Billings, Montana, 59102. The information revealed by CBPO Moen indicated the Billings location of CLOUDZ VAPE is governed by three individuals. The listed executives were Nathan Belden, Warren CHILD, and Dustin Polak.

100.   During the course of this investigation, through USPS business data, I previously identified suspected drug parcels mailed from Washington State to Warren CHILD in Billings, Montana. Based on my training, experience, and familiarity with this investigation, I believe the Washington mailer to have either been Joshua YOUNG or someone directed by YOUNG. According to subpoena returns, CHILD has paid YOUNG on at least two occasions via PayPal and Zelle.

101.   On April 7, 2022, FBI Special Agent Caryn Highley and I conducted surveillance at **Targe Business 4540**. During surveillance, I observed YOUNG and an unidentified white male shuttle items from the back of Brielle DEGEUS' registered white Toyota 4Runner (**Target Vehicle 2**) into **Target Business 4540**.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

102.   In July 2022, while reviewing YOUNG's open Instagram page for CLOUDZ VAPE (@cloudzvape206) located at **Target Business 4540**, I noticed that YOUNG appeared to be selling items containing Delta 8 THC according to their packaging. Not being familiar with Delta 8 THC, I conducted a cursory internet search and learned that Delta 8 THC is a THC that can be synthesized from hemp and while not federally illegal, is illegal in the State of Washington. On August 1, 2022, I contacted Captain Joshua Bolender, Washington State Liquor and Cannabis Board regarding YOUNG's new vape shop. Captain Bolender confirmed that Delta 8 THC is illegal in the State of Washington.

103.   On December 22, 2022, I intercepted a parcel mailed to Joshua YOUNG's CLOUDZ VAPES store located at **Target Business 4540** from a Wasif ARDAB in Palatka, Florida. Law enforcement indices checks revealed ARDAB has a criminal history for misdemeanor and felony drug charges from South Carolina. A drug K-9 was summoned, the parcel was placed into a warehouse, and ultimately the K-9 sat, indicating the positive odor of narcotics emitting from the parcel. On December 23, 2022, I applied for and was granted a federal search warrant by the Honorable S. Kate Vaughan. On January 4, 2023, S/A Highley and I executed the search warrant on the suspect parcel. During the search warrant I located two boxes of "RAW BUD WRAP CONES," which appear to be marijuana rolling papers. No apparent contraband was located during the search warrant. Nothing was seized and the parcel was returned to the mail stream.

104.   On September 8, 2023, I intercepted a parcel addressed to Joshua YOUNG at **Target Business 4540**. On September 13, 2023, I applied for and was granted federal search warrant MJ23-457 by the Honorable Michelle L. Peterson. On September 14, 2023, Inspector Katelyn Mitchell and I executed the search warrant on the parcel. During the search warrant, I discovered three large capacity pistol magazines for a Glock

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

handgun. I was aware the importation of large capacity magazines was a violation of Washington State law. With concurrence from the U.S. Attorney's Office, I repackaged the pistol magazines and returned the parcel to the mail stream.

105.    According to U.S. Postal Service (USPS) business data, on September 14, 2023, an individual identifying themselves as Joshua YOUNG contacted the USPS Customer Care Center to inquire about a parcel that was missing or delayed. The telephone call was recorded by USPS. YOUNG told the operator the last numbers of the tracking number from the parcel in question were "068068." The search warrant I executed on September 14, 2023, was on USPS Priority Parcel 9505 5154 3941 3248 0680 68 as previously reported. This parcel was mailed to Joshua YOUNG at his business Cloudz Vape with an address of **4540 University Way NE, Seattle, WA 98105**. During the call with the Customer Care Center, YOUNG stated the intended delivery address for the parcel was **2004 Columbia Avenue Unit A, Everett, Washington**. YOUNG would later confirm "Unit A as in apple," with the operator. In the conversation YOUNG provided his phone number (360) 320-0030 for follow up. YOUNG told the operator the estimated value of the items in the parcel was $200. During his interaction with the Customer Care Center, YOUNG provided the email address jyoung@cloudzvape.com. Based on my familiarity with this investigation, I know **2004 Columbia Avenue Unit A, Everett, Washington** is Joshua YOUNG's home address, **Target Residence 2004,** and telephone number (360) 320-0030 is YOUNG's "clean" cell phone number.

106.    I recently learned that on or about September 12, 2024, investigators with the Washington State Liquor and Cannabis Board (WSLCB) conducted a compliance check of YOUNG's business, **CLOUDZ VAPE** at **Target Business 4540** due to four alleged violations/complaints.  During the compliance check, Officer Crystal Brassard

Affidavit of Inspector Stinson - 44
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

found and seized approximately 777 prohibited items that she believed to contain Schedule I controlled substances under Washington law, including items that apparently contained THC and psilocybin.  Psilocybin is currently a Schedule I substance under the Controlled Substances Act. According to Officer Brassard's report, YOUNG stated he did not want his mushroom (psilocybin) chocolates to melt and wanted them to be kept in a cool location. While counting and putting all the products away for seizure, Officer Brassard heard YOUNG tell an employee he would get more mushroom products, but they would be from a different company. While lab results are pending, I believe it is likely that many of these items were also controlled substances for purposes of Title 21. Of note, as Officer Brassard loaded the seized items into her vehicle, YOUNG complimented the officer's service weapon, "right before holding up his shirt and showing me [Officer Brassard] that he was carrying a Glock handgun in the front of his pants."

107.    On January 3, 2025, I conducted a review of Washington State's Department of Revenue website for Cloudz Vape. According to the website, the entity name of the business is YOUNG BUSINESS SOLUTIONS LLC with a business name of Cloudz Vape. According to the website Joshua YOUNG is the sole governing person for the business. The listed mailing address for the business is **Target Residence 2004**.

108.    On February 21, 2025, with the assistance of detectives from the Snohomish Regional Drug Task Force. Investigators conducted an undercover purchase of controlled substances out of the CLOUDZ VAPE store front (**Target Business 4540**) during regular business hours. During the purchase, the undercover law enforcement officer purchased a chocolate candy bar suspected of containing psilocybin. The employee assisting the undercover said this particular candy bar no longer contains psilocybin following "a lawsuit." However, the employee then provided a chocolate skull

Affidavit of Inspector Stinson - 45
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

candy to the undercover saying something to the effect of, "we make these in-house" and guaranteed the item contains psilocybin. The employee also sold the undercover officer a bag of gummy candies which he claimed contains LSD or lysergic acid diethylamide, another Schedule I Drug. On March 13, 2025, these items were turned over to the Food and Drug Administration for testing.

### Financial Investigation (YOUNG)

109.    The financial investigation shows that YOUNG and Brielle DEGEUS reside at 2004 Columbia Avenue, Unit A, Everett, Washington[8] (**Target Residence 2004**).  YOUNG was employed at a marine/boat company from 2015 through 2018, and had no known legitimate wages during 2019, 2020, 2021, 2023, and Quarters 1 and 2 of 2024.  Bank records show wages deposited during 2017 and 2018, consistent with the reporting to the Washington State Employment Security Department.  In addition to the payroll deposits, YOUNG's accounts had more than $118,000 in cash deposits during 2017 and 2018.  Further, in 2020, YOUNG claimed that he had no employment for the past two years in his claim to the Washington State Department of Social and Health Services.  Despite the lack of legitimate income, YOUNG's bank accounts had more than $330,000 in cash deposits as well as more than $220,000 in Peer-to-Peer deposits beginning in 2019.  These funds were used not only for personal expenditures, but also to pay more than $185,000 towards new vehicle purchases.

110.    As referenced elsewhere, in November of 2021, YOUNG was involved in an armed home invasion robbery in which he was shot and transported to the hospital. On November 16, 2021, five days after the robbery, YOUNG closed his three existing bank accounts and opened three new accounts, transferring all funds from the old accounts to the new accounts.  The reason for closure listed on account documents was

---

[8] This property is owned by Nory Heng.  Bank records show several payments from Young to Heng.

"consolidate BECU accounts', however he opened the same number of accounts that he had closed.  Similarly, YOUNG's Cash App card ceased activity on or about November 19, 2021.  His Cash App account was closed at the end of 2021 or the beginning of 2022[9].

111.    As discussed above, in March of 2022, YOUNG established a Vape business in Seattle, however, he did not report any income for the business until July of 2022.  YOUNG opened two business bank accounts during the same month, transferring funds from his personal account to open the business accounts.  The first deposit that could be related to business income was on July 25, 2022, the same month he reported his first income to the Washington State Department of Revenue.   From March through July of 2022 when the business was opened and operating, bank accounts show limited purchases for inventory, supplies, or construction materials to establish a full business enterprise with only $55,870 in withdrawals from the business checking account.  Bank accounts do not show purchases for inventory for the store.  A February 2023 credit report does not indicate any credit cards opened or maintained by YOUNG that could be used to purchase inventory for the business.  Given YOUNG's history of receiving large amounts of cash in return for drug shipments, it is likely much, if not all the inventory and store renovations were paid for with cash.

112.    According to Washington State Employment Security records, the following wages were reported for Joshua YOUNG for the years 2015 through the beginning of 2024:

| Reporting Year | Employer | Total Wages Reported |
| --- | --- | --- |
| 2015 | Foss Maritime Company | $29,540.24 |
| 2016 | Foss Maritime Company<br>Lake Union Drydock<br>Stabbert Yacht and | $42,035.41 |

---

[9] Records are pending to obtain the date the account was closed.

| 2017 | Hansen Boat Company Stabbert Marine & | $59,616.04 |
| 2018 | Hansen Boat Company | $57,895.43 |
| 2019 | None reported | $0 |
| 2020 | None reported | $0 |
| 2021 | None reported | $0 |
| 2022 | Event Management Solutions Inc[10] | $250.00 |
| 2023 | None reported | $0 |
| 2024 (Q1 & Q2) | None reported | $0 |

113.    Records provided by the State of Washington Division of Child Support show Joshua Young has a monthly YOUNG support obligation of $422 payable to the custodial parent, Bianca G. Warren.  The DCS file was opened in November of 2016.  In May of 2017, notes in the file indicate YOUNG[11] told DCS that he "has a disability, deformed arm, makes finding work difficult".  Young appeared to make all payments, although was late a few times.

114.    In August of 2017, YOUNG's income was verified with Hansen Boat Company.  His gross pay was stated to be $1,241.60 working 40 hours a week as a welder.  On April 6, 2020, notes state the following:

> >> welder and business has been slow, said he hasn't had muc
> h income in the last 2 years or so and has been living off h
> is savings. NCP said he can make full MOA right now, but mig
> ht not be able to in the coming months, depending on what ha
> ppens with the coronavirus. Told NCP to stay in touch with R
> SEO so she knows if he's not able to make full pmnts.

115.    Despite YOUNG's claim of having little income and not being able to pay child support, bank records show that during 2020 along, more than $80,000 in cash was

---

[10] WA SOS shows this business is headquartered in Charlotte, NC.
[11] Young is referred to as NCP, or non-custodial parent.

Affidavit of Inspector Stinson - 48
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

deposited to YOUNG's bank accounts. Although the above notes from April of 2020 state he may not be able to make full payments in the coming months, YOUNG paid $45,000 to Buick GMC of Kirkland to purchase a new vehicle only four months later. Additionally, the balance one of YOUNG's Wells Fargo accounts in April of 2020 was more than $180,000.

116.    During 2020, Bank records show that accounts maintained by YOUNG have more than $98,000 in cash deposits along with more than $100,000 of Peer 2 Peer transfer deposits. No legitimate wages were found to have been deposited during the year and no wages were reported for him during the year. Similarly, during 2022, YOUNG's accounts had more than $100,000 in cash deposits and $66,000 in Peer2 Peer deposits, all during a time that YOUNG had no known legitimate income

***Wells Fargo Bank***

117.    Joshua YOUNG opened a Wells Fargo checking account, number █████4167, on May 11, 2009; On January 28, 2013, he opened a Wells Fargo savings account, number █████5235. At the time of the savings account opening, YOUNG provided a phone number of 360-320-0030.

118.    From January 1, 2017 through July 12, 2021, when the accounts were closed, net deposits[12] to both accounts totaled $775,948. Of that amount, at least $396,979[13] (51%) consisted of cash and $80,074.61 consisted of YOUNG's payroll from Hansen Boat Company. More than $245,000 (32%) was also received from other individuals from external transfers or P2P platform transactions.

119.    Payroll deposits were made to the checking account from February of 2017 through December of 2018; from December of 2018 through June of 2019, YOUNG received $14,132.00 in Washington State Unemployment Benefit payments, also

---

12 Net deposits after transfers between these two accounts were eliminated.
13 Deposited items less than $500 were not provided by the bank.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

deposited to his checking account.    The timing of these deposits is consistent with YOUNG's reported wages to the Washington State Employment Security Department. After unemployment benefits ended for YOUNG in June of 2019, there is no known source of legitimate income from any other source of employment or business.  Despite the lack of employment or known income, YOUNG's Wells Fargo accounts had more than $210,000 in cash deposits from July of 2019 through July of 2021 when the accounts were closed.

120.    Records reviewed for savings account number ▮▮▮▮ 5235 show that on January 1, 2017, the account balance was $35,700.57.  During the time reviewed, the only deposits to this account were transfers from the checking account and $332,946.14 in cash.  YOUNG used some of these funds, such as $45,000 to Buick GMC of Kirkland and $35,000 to Landmark Motors, however much of the amount deposited accumulated in the account until it was closed in 2021.

121.    On July 12, 2021, both of YOUNG's Wells Fargo accounts were closed; there was $122,423.88 in the accounts at that time and $2,4252.31 in the checking account.  $60,000 of these funds were deposited to YOUNG's BECU savings account on July 20, 2021, and $60,000 was deposited to YOUNG's BECU money market account on August 21, 2021.  These accounts are detailed below.

***BECU***

122.    On March 10, 2021, YOUNG opened three new bank accounts at BECU: savings ▮▮▮▮ 2814, checking ▮▮▮▮ 2822, and money market ▮▮▮▮ 2830.  At the time of opening, the associated address was 2004 Columbia Ave, Unit A, Everett, Washington (**Target Residence 2004**) with a phone number of 360-320-0030 and email of joshyyoung187@gmail.com.  YOUNG stated he was employed at Hanson Boat Co as a welder, despite not having been employed there since 2018.

Affidavit of Inspector Stinson - 50
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

123.    During the eight-month time-period reviewed, from March through November of 2021, YOUNG deposited $54,778 in cash to these accounts; this represented 65% of all new deposits during this time. An additional $26,723 consisted of deposits from P2P platforms, such as Cash App, Zelle, or Venmo.

124.    When YOUNG's Wells Fargo accounts were closed in July of 2021,[14] he transferred $120,000 of the remaining funds in those accounts to his new accounts at BECU. As of August of 2021, the balance in all of YOUNG's BECU was approximately $152,000.

125.    On November 16, 2021, after his involvement in the shootout and the subsequent search of **Target Residence 2004,** YOUNG closed all three of his existing BECU accounts and opened three new accounts at BECU: money market number ████6429, checking number ████6453, and savings number ████6388.  Each of these accounts was held jointly with Brielle L DEGEUS.  The new accounts were funded by the closure of the three existing accounts.

***BECU Checking Account Number ████6453***

126.    On November 16, 2021, YOUNG transferred $2,900.68 from his BECU checking account ***2822 to open checking account number ***6453.  From account opening through July 15, 2022, deposits to this account totaled $31,018.04, of which $23,860 (77%) consisted of cash.

127.    YOUNG also received a $229.77 deposit on May 31, 2022, from Event Management Payroll, his only known wage income since 2018.

128.    On March 17, 2022, Joshua YOUNG wrote check number 1001 from checking account ████6453 for $9,034 payable to Stratton Properties Inc.  The

---

14 The total of funds that remaining in the Wells Fargo accounts was $122,423.88; Young used $120,000 of that to transfer to BECU.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

notation on the check was "Deposit + Rent.".  Stratton Properties Inc is the owner of 4540 University Way NE, the location of Cloudz Vape (**Target Business 4540**).

129.    The account remained open as of February 24, 2025.

***BECU Savings Account Number*** ███ ***6388***

130.    On November 16, 2021, YOUNG transferred $78,002.03 from his BECU savings account ***2814 to open checking account number ***6388.   That same day, YOUNG transferred that $78,002.03 to his new Money Market account, number ***6429.  The account remained at a zero balance until a $97 deposit from Doordash was made on March 1, 2022.  That amount was transferred to checking account ***6453, leaving a zero balance.

131.    As of January 17, 2025, the balance in the account was $14,658.52.  The account remained open as of February 24, 2025.

***BECU Money Market Account Number*** ███ ***6429***

132.    On November 16, 2021, YOUNG transferred $78,002.03 from his BECU saving account ***6388 and $78,006.18 from his account ***2830 to open money market account number ***6429.  Between November of 2021 and July 15, 2022, the money market account had relatively few transactions, most of which were transfers to and from his BECU checking or savings accounts.  The only remaining transactions in this account were dividend payments.  On March 24, 2022, YOUNG transferred $80,000 to his Young Business Solutions LLC checking account number ***9230.  The balance in YOUNG's money market account ***6429 on July 15, 2022, was $60,013.28.

133.    On January 17, 2025, the balance in the account was $15,014.37.  The account remained open as of February 24, 2025.

***Uphold HQ***

Affidavit of Inspector Stinson - 52
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

134.    According to Uphold.com, Uphold HQ is a "multi-asset digital money platform offering financial services to a global market".

135.    On April 7, 2021, Young opened a new account at Uphold HQ[15], a digital money platform. YOUNG provided his Washington Driver's License and an email address of joshyyoung187@gmail.com. Young linked his Wells Fargo and his BECU bank accounts to his new Uphold HQ account. Three deposits, each for $2,500, were made to Uphold from YOUNG's BECU bank account. As of May 20, 2021, the balance is his account was $5,138.542 XRP (Ripple). Based on an open internet search I learned that XRP (Ripple) is a type of cryptocurrency. Additionally, in a December 1, 2024, Facebook post, YOUNG posted, "XRP going to be $3,$5,$10-$100-$1000 Even if you have just enough to buy a little bit, it's gonna pay out. I've been saying this for years". [sic]

### Peer 2 Peer

136.    Peer to Peer transactions, also known as P2P transactions, are electronic money transfers made from one person to another. Transactions can be sent from any computer or mobile device using an app and are an easy way to quickly send money to another person, therefore allowing the recipient of funds to immediately withdraw the sent funds in cash. These transactions also allow for another layer of anonymity, as the sender or recipient name and information often does not appear, or may not be accurate, in regular financial institution monthly statements. If a person sent money to another using a method such as a check or wire, both sides would show the originator and sender's bank information. In P2P transactions, that information is not included for the participants.

---

15 User ID d675e806-83a6-414b-bd19-7dcff5f7e6a9

Affidavit of Inspector Stinson - 53
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

137.    Sutton Bank is the issuer of the Square Cash Card product.  The Square Cash Card acts as a prepaid card and is designed to not maintain a running balance, as the card can only be funded by the customer's Square Cash App (Digital Phone App Account).    Records provided by Sutton Bank show YOUNG established a Cash Card product in 2020 but had no activity until March of 2021.  Records show that by the end of 2021, all of YOUNG's CashApp cards had been closed.

138.    On May 2, 2021, Young made a $179 purchase at "safedepositstorage"; the merchant had and associated phone number of 253-334-6455. A Google search shows the number is associated with Rodger D Overson; Phone tolls show YOUNG has been in contact with this phone number.

139.    Public records show Safe Private Storage LLC is owned by Sue Day, Rodger Overson, and Lynn Prather of Sound Storage Management at 2750 SW 312th Pl Federal Way.  A search of the address shows the property is a single-family residence. The property was owned by Rodger and Sue Overson until they sold it in October of 2020.

140.    Washington State Department of Revenue public records showed an additional business name of Safe Deposit Center with a location address of 12000 NE 8th Street, Suite 100, Bellevue.  The business has an associated website of www.safedepositcenterwa.com.  The business advertises that a customer can be anonymous as, unlike banks, there are no reporting requirements for a private safe deposit box company.  The lack of any reporting requirements makes private safe deposit box companies a useful place for people engaged in illegal activity to hide their ill-gotten gains, especially if the business does not require a person to give a name, date of birth, or social security number to provide search criteria for law enforcement.

Affidavit of Inspector Stinson - 54
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**WELCOME TO SAFE DEPOSIT CENTER!**

Our business is based on security, safety and privacy.

Banks are not the only providers of safe deposit boxes. Safe Deposit Center provides more than just a safe deposit box – we are a private company, not required to report to any government agency about our clients. What you store is your business. You have the only keys and no one but you - or your authorized agents - have access to your box.

**PRIVACY**

Our system is set up to keep your information private. Unlike banks, we have no mandatory reporting requirements.

You can choose to be as anonymous as you wish. We do need some information, so we can contact you about your account and collect payment, but we don't ask for your social security number

**SECURITY**

Our facility is a literal concrete vault, built into the side of a hill, with an 18,000 lbs vault door. We use a state-of-the-art biometric system to ensure only verified clients can access the vault. Our offices and lobby, outside the vault, are equipped with motion detectors and camera security, and are monitored 24/7.

141.    During S/A Highley's review of the Gmail records for YOUNG's account, she located multiple emails with attached invoices from SAFE DEPOSIT CENTER, located at 12000 NE 8th street, Suite 100, Bellevue, Washington 98005. According to these records, YOUNG rented **Unit 101855** at Safe Deposit Center from April 2022 through September 2022. YOUNG also received an email on September 12, 2022, indicating that his monthly rent for safe deposit box **101855** would increase from $13.50 to $18.00 per month beginning October 1, 2022.

142.    Based on research and surveillance on March 13, 2025, Safe Deposit Center appears to now be permanently closed.

Affidavit of Inspector Stinson - 55
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

143.    YOUNG frequently sends and receives fund via Cash App; during 2018 and 2019, Young sent funds to Chandler Flott, Evell Nelson, Lavish Hay, Mu Yu, and Amanda Crooks.  Young has sent additional funds via Facebook Pay to Lauren Peabody, Michael Harris, Tia Davis, Breanna Cross, Brian Young, Gerald Tallman, and others. These transactions are of interest as Chandler FLOTT has been observed mailing marijuana for YOUNG during the course of this investigation; Mu YUAN has been seen multiple times supplying YOUNG with marijuana, Michael HARRIS has been seen retrieving duffel bags and boxes suspected of containing marijuana from YOUNG's residence, and Breanna CROSS was previously the suspected receiver of marijuana from YOUNG and the shipper of a cash parcel through UPS to YOUNG that was apparently ripped open and the contents stolen before delivery.

144.    Bank records show Young conducted several financial transactions via Zelle, as shown below.  Young had both his Wells Fargo accounts and his BECU accounts connected to Zelle.  The table below shows transactions from these accounts during 2021 and 2022.  Records were requested from Zelle for Josh Young using his phone number of 360-320-0030 and email joshyyoung187@gmail.com; the response from Zelle showed less transactions than were seen in his bank accounts. It is unknown if Young used a different phone number or email for other Zelle transactions. Based on my training, experience, and familiarity with this investigation, I believe many of the below Withdrawals, specifically those totaling $1,000 or more may well represent the purchase of marijuana from various sources of supply by YOUNG.

| Date | Statement Description | Deposit | Withdrawal |
|---|---|---|---|
| 7/2/2021 | Zelle to Degeus Brielle | | $20.00 |
| 7/30/2021 | Transfer Withdrawal Zelle to Nory Heng | | $1,500.00 |
| 8/9/2021 | Transfer Withdrawal Zelle to Michael Roderer | | $2,000.00 |
| 8/9/2021 | Transfer Withdrawal Zelle to Michael Roderer | | $1,500.00 |

| Date | Statement Description | Deposit | Withdrawal |
|---|---|---|---|
| 8/23/2021 | Zelle to Nory Heng | | $2,000.00 |
| 8/25/2021 | Zelle from Brielle Degeus | $500.00 | |
| 9/1/2021 | Zelle to Brielle Degeus | | $492.50 |
| 9/27/2021 | Zelle to Nory Heng | | $2,000.00 |
| 11/19/2021 | Zelle to Ronald Kigen | | $150.00 |
| 11/19/2021 | Zelle from Douglas Young | $1,000.00 | |
| 11/19/2021 | Zelle to Ryan Holt | | $1,000.00 |
| 11/28/2021 | Zelle to Nory Heng | | $2,000.00 |
| 12/21/2021 | Zelle to Nory Heng | | $2,000.00 |
| 12/26/2021 | Zelle from Brielle Degeus | $500.00 | |
| 1/19/2022 | Zelle to Nory Heng | | $2,000.00 |
| 1/22/2022 | Zelle from Brielle Degeus | $500.00 | |
| 2/1/2022 | Zelle to Brielle Degeus | | $450.00 |
| 2/15/2022 | Zelle to Ryan Holt | | $100.00 |
| 3/1/2022 | Zelle to Nory Heng | | $2,000.00 |
| 3/8/2022 | Zelle from Brielle Degeus | $500.00 | |
| 3/20/2022 | Zelle from Brielle Degeus | $600.00 | |
| 3/27/2022 | Zelle from Brielle Degeus | $500.00 | |
| 3/27/2022 | Zelle to Nory Heng | | $2,000.00 |
| 4/23/2022 | Zelle from Douglas Young | $700.00 | |
| 4/27/2022 | Zelle to Nory Heng | | $2,000.00 |
| 4/27/2022 | Zelle from Brielle Degeus | $500.00 | |
| 4/27/2022 | Zelle From Chuangxin Zhou | $750.00 | |
| 5/28/2022 | Zelle from Brielle Degeus | $700.00 | |
| 5/29/2022 | Zelle to Nory Heng | | $2,000.00 |
| 7/1/2022 | Zelle to Nory Heng | | $2,000.00 |
| 7/12/2022 | Zelle from Brielle Degeus | $500.00 | |
| 7/15/2022 | Zelle from Douglas Young | $1,000.00 | |
| | **Totals** | **$8,250.00** | **$27,212.50** |

145.    PayPal records show that in addition to Zelle and Cash App, Young conducted financial transactions using Venmo, some of which are shown in the table below. Based on my training, experience, and familiarity with this investigation, I believe many of the below transactions represent the sale of marijuana to various customers. As

an example, several of the individuals below have prior drug convictions. Daniel
ENGLAND has a 2023 felony Drug conviction. On June 28, 2019, Postal Inspectors
interdicted a parcel mailed to ENGLAND at his residence. Pursuant to a federal search
warrant, Postal Inspectors located, 10 bottles of steroids within ENGLAND's parcel.
Another individual listed below; Alex ROCHON was the intended recipient of another
parcel interdicted by Postal Inspectors. Pursuant to a federal search warrant, I located
$17,355 U.S. cash. Based on my familiarity with this investigation, I believe ROCHON
was accepting a drug cash parcel for YOUNG at ROCHON's address. Additionally,
Andrew ZATINE also has felony drug convictions.

| Date | USD | Balance Impact | Transaction Type | Notes | Counterparty Name | Counterparty Email |
|---|---|---|---|---|---|---|
| 04/08/18 | $300.00 | DR | PAYMENT-Payment | Housing | Derrick Chim | dmc12721@gmail.com |
| 04/08/18 | $300.00 | CR | PAYMENT | Housing | Derrick Chim | dmc12721@gmail.com |
| 05/24/18 | $650.00 | CR | PAYMENT-Payment | Pot puller fishing | Nai Saephan | saephan719@yahoo.com |
| 06/23/18 | $50.00 | CR | PAYMENT-Payment | Groceries | Derrick Chim | dmc12721@gmail.com |
| 07/23/18 | $650.00 | CR | PAYMENT-Charge Conf. | Bookshelf | Nai Saephan | saephan719@yahoo.com |
| 07/29/18 | $200.00 | CR | PAYMENT-Payment | 🖐️ | Andrew Gilbert | drew_tha_ninja@yahoo.com |
| 08/02/18 | $150.00 | CR | PAYMENT-Payment | 🍔 | Andrew Gilbert | drew_tha_ninja@yahoo.com |
| 08/02/18 | $20.00 | CR | PAYMENT-Payment | 😆 | Andrew Gilbert | drew_tha_ninja@yahoo.com |
| 08/03/18 | $20.00 | CR | PAYMENT-Payment | Groceries | Derrick Chim | dmc12721@gmail.com |
| 08/24/18 | $20.00 | CR | PAYMENT-Payment | 🍽️ | Andrew Gilbert | drew_tha_ninja@yahoo.com |
| 09/08/18 | $80.00 | CR | PAYMENT-Payment | Brunch | Derrick Chim | dmc12721@gmail.com |
| 11/12/18 | $140.00 | CR | PAYMENT-Payment | 🏠🏴 | Derrick Chim | dmc12721@gmail.com |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Date | Amount | CR/DR | Type | Memo | Name | Email |
|---|---|---|---|---|---|---|
| 11/24/18 | $40.00 | CR | PAYMENT-Payment | 🍽 | Andrew Gilbert | drew_tha_ninja@yahoo.com |
| 12/01/18 | $1,100.00 | CR | PAYMENT-Payment | The booty | Daniel England | englandd1488@gmail.com |
| 12/21/18 | $102.00 | CR | PAYMENT-Payment | Car parts | Matthew Nguyen | matthewn152@comcast.net |
| 03/17/19 | $1,000.00 | DR | PAYMENT-Payment | Couch | Andrew Zatine | andrew.zatine@gmail.com |
| 03/17/19 | $50.00 | DR | PAYMENT-Payment | Couch | Andrew Zatine | andrew.zatine@gmail.com |
| 04/15/19 | $20.00 | CR | PAYMENT-Payment | 🙏🙏🙏 | Tyler Langdon | tylersbasketball@gmail.com |
| 04/17/19 | $85.00 | CR | PAYMENT-Payment | Dinner | Jackson Karlenzig | jkarlenzig@gmail.com |
| 04/17/19 | $15.00 | CR | PAYMENT-Payment | Burger | Jackson Karlenzig | jkarlenzig@gmail.com |
| 04/30/19 | $100.00 | CR | PAYMENT-Payment | food | Eric Thompson | eathompson710@gmail.com |
| 08/27/19 | $1,100.00 | DR | PAYMENT-Payment | Brake job | Daniel Immeyer | daniel.immeyer@gmail.com |
| 09/25/19 | $900.00 | CR | PAYMENT-Charge Conf. | ainting | Alex Rochon | alexlouisrochon@gmail.com |
| 10/09/19 | $20.00 | DR | PAYMENT-Payment | 🍺 | Nick Spencer | viggen7@gmail.com |
| 10/17/19 | $150.00 | DR | PAYMENT-Payment | Dog boarding | Signe Qvale | signeqw@gmail.com |
| 11/20/19 | $304.00 | DR | PAYMENT-Payment | Vacation hotel money | Randi Eckhoff | wonderlust1989@gmail.com |
| 11/05/19 | $575.00 | CR | PAYMENT-Payment | Brake rotors | Danny Gamino16 | issydanny@yahoo.com |
| 11/22/19 | $1,100.00 | CR | PAYMENT-Payment | Paint help | Alex Rochon | alexlouisrochon@gmail.com |
| 12/04/19 | $250.00 | DR | PAYMENT-Payment | Help | Nick Spencer | viggen7@gmail.com |
| 12/13/19 | $50.00 | CR | PAYMENT-Payment | Steak dinner | Danny Gamino | issydanny@yahoo.com |
| 01/08/20 | $40.00 | DR | PAYMENT-Payment | 📱 | Breanna Cross | b.reynolds0522@gmail.com |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | | | | | | |
|---|---|---|---|---|---|---|
| 01/20/2 0 | $40.00 | CR | PAYMEN T-Payment | Gas money | alan Ramirez | alanramirez411@gmail. com |
| 02/04/2 0 | $165.00 | CR | PAYMEN T-Charge Conf. | Honda headlights | Sara Gutierrez | sgutierrezkw@gmail.co m |
| 04/03/2 0 | $300.00 | CR | PAYMEN T-Payment | Toilet paper | alan Ramirez | alanramirez411@gmail. com |
| 04/04/2 0 | $1,500. 00 | CR | PAYMEN T-Payment | Rear axle | Danny Gamino | issydanny@yahoo.com |
| 04/17/2 0 | $202.00 | CR | PAYMEN T-Payment | Brisket | Sara Gutierrez | sgutierrezkw@gmail.co m |
| 04/24/2 0 | $350.00 | CR | PAYMEN T-Payment | 🦐🔪🦪 | Sara Gutierrez | sgutierrezkw@gmail.co m |
| 04/24/2 0 | $120.00 | CR | PAYMEN T-Payment | Hawaii | Sara Gutierrez | sgutierrezkw@gmail.co m |
| 04/28/2 0 | $350.00 | CR | PAYMEN T-Payment | Future vacation 🏝️ | Sara Gutierrez | sgutierrezkw@gmail.co m |
| 04/28/2 0 | $5.00 | CR | PAYMEN T-Payment | Hotel fee | Sara Gutierrez | sgutierrezkw@gmail.co m |
| 04/29/2 0 | $41.00 | CR | PAYMEN T-Payment | Ddr | Nate Taylor | taylonat002@gmail.com |
| 05/15/2 0 | $650.00 | DR | PAYMEN T-Payment | Computer | Nick Spencer | viggen7@gmail.com |
| 05/13/2 0 | $250.00 | CR | PAYMEN T-Payment | Car parts | Andrew Gilbert | drew_tha_ninja@yahoo. com |
| 05/23/2 0 | $345.00 | CR | PAYMEN T-Payment | Supreme | alan Ramirez | alanramirez411@gmail. com |
| 06/04/2 0 | $200.00 | CR | PAYMEN T-Payment | Best buddy | Mike Russo | mikerusso.cp@gmail.co m |
| 06/15/2 0 | $345.00 | CR | PAYMEN T-Payment | Cat sitting | Will Baltzer | wbaltzer@uw.edu |
| 06/22/2 0 | $2,000. 00 | CR | PAYMEN T-Payment | G | Nathaniel Williams | nhwilliams91@yahoo.co m |
| 07/31/2 0 | $890.00 | CR | PAYMEN T-Payment | UM👋 | Alex Kos | kosminalex@ymail.com |
| 08/05/2 0 | $80.00 | DR | PAYMEN T-Payment | Oops | Tessa Fox | tessafox626@gmail.com |
| 08/05/2 0 | $80.00 | DR | PAYMEN T-Payment | Babysittin g | Tessa Fox | tessafox626@gmail.com |
| 08/05/2 0 | $80.00 | CR | PAYMEN T-Payment | babysittin g | Tessa Fox | tessafox626@gmail.com |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | | | | | | |
|---|---|---|---|---|---|---|
| 09/15/20 | $1,050.00 | CR | PAYMENT-Charge Conf. | Old rent money | Breanna Cross | b.reynolds0522@gmail.com |
| 09/20/20 | $1,100.00 | CR | PAYMENT-Payment | Love time | Warren Child | warrenchild@gmail.com |
| 10/29/20 | $100.00 | CR | PAYMENT-Payment | "Consetual" sex with you... | Alex Rochon | alexlouisrochon@gmail.com |
| 10/26/20 | $100.00 | CR | PAYMENT-Payment | More sex | Alex Rochon | alexlouisrochon@gmail.com |

146.    YOUNG also received money from other individuals via PayPal, then transferred like amounts to himself shortly after receiving the funds.

### *Vehicles (see Attachment A)*

147.    Records show that Joshua YOUNG often purchases expensive luxury vehicles, uses them for a short time, then trades them in towards the purchase of a different vehicle within a short time period.  YOUNG will used funds from his Wells Fargo account, funded by cash deposits, to make a down payment in addition to trading in his current vehicle in order to purchase a different, often newer, vehicle.  YOUNG will obtain financing for the remaining amount owed on his new purchase, then make payments on that loan using funds from his bank account.  On the credit applications, YOUNG has stated he works as a welder for Hansen Boat Company, despite employment records not reporting any income from 2019 through the present.  Additionally, agents have not seen YOUNG travel to any place of employment or engage in any activity that appears to be related to legitimate employment other than Cloudz Vape (**Target Business 4540**), which based on my training, experience, and familiarity with this investigation, I believe to be an ongoing money laundering operation for his drug trafficking enterprise.

148.    Records provided by Wells Fargo Bank show that on May 15, 2017, YOUNG purchased his used 2015 Lexus IS from Elliott Bay Auto Brokers for $37,103.52.  YOUNG traded in a 2012 Lexus IS and made a $16,000 down payment,

Affidavit of Inspector Stinson - 61
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

financing the remaining $8,603.52 with Wells Fargo Dealer Services.  The down payment was made with check number 307 from Young's Wells Fargo account, number █████4167.  YOUNG had transferred $16,000 from his savings account, Wells Fargo █████5235 to fund this check; this account is funded almost exclusively with cash. Payments on the loan were made from YOUNG's Wells Fargo checking account.

149.    In June of 2019, payments on the loan were returned.  The loan was closed on June 20, 2019; neither bank records nor loan records state the source of the $5,090.75 payoff.

150.    On May 21, 2019, YOUNG purchased a 2016 BMW M4 from Landmark Motors for $45,996.  YOUNG made a $30,000 down payment and financed $6,143 with Ally Bank.  Loan records do no show if he traded in another vehicle at the time of this purchase.

151.    Records provided by Wells Fargo Bank show YOUNG purchased a 2016 BMW M3 for $50,362 on August 27, 2019 from D&C Motor Company.  YOUNG made a $6,000 down payment and traded in his 2016 BMW M4 (VIN *69491), financing the remaining $9,053.45 with Wells Fargo Dealer Services.  The loan was paid in full three months later, on November 9, 2019; records do not show the source of the $8,427.31 payoff, however likely was paid when YOUNG purchased a different BMW M3 on October 21, 2019.

152.    In October of 2019, YOUNG obtained a new loan for $10,000 from Wells Fargo Dealer Services.  Records provided by Wells Fargo Bank show YOUNG purchased a 2016 BMW M3 for $51,500 on October 21, 2019, from D&C Motor Company in Milwaukie, OR. YOUNG made a down payment of $1,500 and traded in a 2016 BMW M3, financing the remaining $10,009.35 with Wells Fargo Dealer Services.

Affidavit of Inspector Stinson - 62
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Payments on the loan were to be $180.37 a month and were made from YOUNG's Wells

Fargo checking account through January of 2020.

153.    On January 11, 2020, Joshua YOUNG purchased a new 2020 Toyota

4Runner (VIN ***46184) from Magic Toyota in Edmonds, WA.  According to the retail

installment sale contract, YOUNG traded in a 2016 BMW M3, receiving a trade-in

allowance of $41,500 (net trade-in value was $32,247 after the loan payoff).  YOUNG

made a $10,000 down payment and financed the remaining $20,326 with Ally Bank.  The

loan was terminated on February 11, 2020, possibly with the purchase of a 2016 BMW

the same month.  Bank records show the $10,000 down payment was made from his

Wells Fargo checking account ***4167.

154.    On the auto credit application for the 4Runner, YOUNG stated he had been

employed full-time as a welder with "Hands and Boats" for three years.  An employer

phone number of 541-610-3565 was listed.  YOUNG stated he rented his residence,

15914 44th Ave W, B2302, Lynnwood, for $1,426 a month.

155.    In February of 2020, Young wrote a check for $27,000 to BMW of Seattle;

the memo on this check was "car down payment 5G41775B".[17]  Records provided by

Ally Bank indicate YOUNG purchased a 2016 BMW M3 from BMW Seattle-Lithia on

February 12, 2020, for $53,000 and traded in the Toyota 4Runner purchased a month

prior.  The total purchase price of the BMW was $54,531.90.  Young received a $43,500

trade-in allowance for his 4Runner and financed the remaining amount of $10,750.90.

156.    In August of 2020, YOUNG purchased a cashier's check from his Wells

Fargo account ***5235 for $45,000; this check was payable to Buick GMC of Kirkland.

YOUNG purchased a 2019 Land Rover Range Rover Sport and traded in his 2016 BMW

M3 purchased six months prior.  The total purchase price of the Range Rover was

---

17 This check was from Young's WF account ***4167.  Young transferred $27,000 from account ***5235 the same day to fund the
check.  Records show the source of funds to account ***5235 was cash.

Affidavit of Inspector Stinson - 63
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

$86,000.06. YOUNG received a $44,000 trade-in allowance for his BMW, financing the remaining amount of $13,806.57. On the credit application, YOUNG stated his gross monthly income was $4,800 from Hansen Boat Company.

157.    In January of 2021, YOUNG purchase a new 2021 BMW M-5 sedan for $122,571.56 from BMW Seattle. YOUNG traded in his 2019 Land Rover he purchased a few months prior in August of 2020 and received a $72,000 trade in allowance. $13,000 was still owed on that vehicle, resulting in a credit of $59,000 towards the new purchase. YOUNG made a $50,000 down payment on the new BMW via Wells Fargo Bank Cashier's Check number ████2645 dated January 25, 2021, and financed $20,481. On the BMW credit application, YOUNG stated he had been employed as a welder for three years with Hansen Boat Company in Everett earning $60,000 a year. Employment records show he has not been employed at Hansen Boat Company since 2018. YOUNG listed no other income and stated he was not self-employed.

158.    Payment records show YOUNG was late on his payments several times during 2021 and deferred a payment in December of 2021. Payments were made from YOUNG's Wells Fargo account ***4167. As of March 31, 2022, the payoff on the loan was $17,704.27. According to BMW Financial, as of February 23, 2023, no payment has been made to the account since May 14, 2022. The payoff as of February of 2023 was $18,395.46 due to accumulating late fees.

159.    In April of 2021, Joshua YOUNG and Brielle Degeus[18] purchased a 2016 Toyota 4Runner[19] (**Target Vehicle 2**) from Puyallup Truck County. Young made a $20,000 down payment from his Wells Fargo account and financed $20,112 with JPMorgan Chase Bank. The address associated with the loan account was 2004

---

18 Degeus' income in 2021 was approximately $14,500 with the Everett Clinic for Q1 and Q2.

19 VIN JTEBU5JR0G5346193

Columbia Ave, Everett, Washington (**Target Residence 2004**).  By June of 2021, the loan payments were past due, however by February of 2022 there was only a $27 principal balance remaining.  A credit report shows that was paid in full the same month, closing the loan.

160.    On the credit application, YOUNG stated his address was 2004 Columbia Avenue and he had been renting the property for three years with a current rent amount of $600.  YOUNG stated he was employed full time as a welder at Hansen Boat Co with an $8,000 monthly income.

161.    In February of 2022, YOUNG purchased a Subaru WRX S4 STI Sport.  A credit report did not show any existing loan for this purchase.  This vehicle has since been sold.

162.    In about September 2023, YOUNG then purchased a 2021 Tesla Model S Plaid edition. This vehicle too has since been sold or traded in.

163.    YOUNG has since purchased **Target Vehicle 1**, a 2021 gray BMW M3, which he is listed as the sole owner of the vehicle with BMW Bank of America listed as the lien holder.

### *Young Business Solutions LLC dba Cloudz Vape*

164.    On March 16, 2022, Josh YOUNG established Young Business Solutions LLC dba Cloudz Vape in the State of Washington.  The business has a location address of 4540 University Way NE, Seattle, Washington (**Target Business 4540**) with a mailing address of 2004 Columbia Ave, Unit A, Everett, Washington (**Target Residence 2004**). Two emails were associated with the business: jyoung@cloudzvape.com and joshyyoung187@gmail.com The business has beer and wine, cigarette, tobacco, and vapor product licenses; "we are a retail store that specializes in selling alternative tobacco products. (Vape Products)". On the business application, YOUNG estimated the gross annual income to be between $28,000 and $60,000.  The $615 business application fee

Affidavit of Inspector Stinson - 65
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

was paid on March 22, 2022, from Young's BECU checking account, number ███████6453. YOUNG was the only listed owner of the business.

165. Montana business records show Cloudz Vape LLC located at 1819 Grand Avenue, Suite 3, in Billings, Montana. This business was established in October of 2020 by Nathan Belden, Warren Child, and Dustin Polak. Child is a known associate of YOUNG; YOUNG and FLOTT have historically shipped suspected marijuana to Child in Billings, Montana. Currency Transaction reports show 90 filings have been made from May of 2021 through March of 2023 for cash in transactions on behalf of Cloudz Vape LLC in Montana; these filings total more than $560,000. Bank records show YOUNG travelled to the Billings, Montana area in June of 2022. An Internet search shows branches of Cloudz Vape LLC in Montana, South Dakota, North Dakota, and Union Gap, Washington, as well as YOUNG's location in Seattle.

166. YOUNG reported there was no business for Cloudz Vape for March, April, May, or June of 2022. In August of 2022, he filed an amended return for July of 2022 showing the gross revenue amount of $2,448.23; YOUNG had initially filed a return stating there was no business for that month, then amended that return. The $251.31 amended return payment was paid in from the YOUNG Business Solutions checking account.

167. According to a Google search, Cloudz Vape is a "High end vape shop located in the heart of the University Way. Offering a large selection of Disposable's including Elfbar, Escobar, juices, salt nic, glass, apparell, Beer, soft drinks, and much more! Best Selection, Best Service, Welcome to Cloudz!". Several images of the store as well as customer reviews were found on Google as well.

168. An open-source internet search showed a STACK Bitcoin ATM inside the Cloudz Vape Seattle location.

Affidavit of Inspector Stinson - 66
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

169.    According to a January 2024 news article, Young's business has been the victim of multiple robberies, including a "smash-and-grab" with a stolen Kia.

*Josh Young, owner of Cloudz Vape, told KIRO Newsradio he has lost approximately $5,000 in merchandise, while repairs to his storefront will cost more than $20,000. The subsequent loss of business is cutting into any profits.*

*"When people attack small businesses like us, it's not like you're attacking a corporation. You're literally taking someone's food off their plate," Young said. "We're just doing enough to keep the lights on. It sucks, but it's what we have to do."*

*Young, an avid news and crime watcher, said he never felt like a victim, but after four break-ins at Cloudz Vape, he does. To make matters worse, he said he sees teenage criminals released faster from jail than his storefront can be repaired, fearing they can strike again.*

170.    In December of 2023, a GoFundMe account was created to help raise funds for repairs to the business.

**BECU Checking Account Number ███████ 9230**

171.    On March 24, 2022, Joshua YOUNG opened a BECU business checking account, number 3███9230.  YOUNG transferred $80,000 from his BECU money market account, ██████6429 to this new business checking account for the opening deposit.  From March until June of 2022, the deposits to this account consisted of transfers from other BECU accounts controlled by YOUNG and Point of Sale purchase returns.

172.    The first known rent check for the Cloudz Vape space was written in March of 2022.  This is consistent with YOUNG opening the business that same moth.  By July

Affidavit of Inspector Stinson - 67
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of 2022, the shop appeared to be open and fully stocked.  A review of bank records during March to July of 2022 shows less than $60,000 in expenditures from YOUNG's business account.  Give that the shop location was fully equipped and stocked within that five-month period, it is likely that YOUNG used funds that were not deposited to any of his known bank accounts.  Bank records show that the business account began receiving merchant credit card deposits in July of 2022, consistent with Young's reporting to the Washington State Department of Revenue.  From July of 2022 through September of 2024, the business account had more than $1.3 million in merchant credit card deposits.  In addition to the merchant deposits, the account had more than $387,000 in cash deposits.  Another $129,423 was transferred from the business savings account 3620749173, further detailed below, as well as the initial $80,000 transferred to open this account.

173.    Young also had test deposits and withdrawals[20] from Square Inc in July of 2022.  Records indicate he had a Square account as monthly fees were deducted, however there were no deposits from Square to this business checking account.  Records provided by Block (fka Square), show Young did have a Square account from 2011 through at least 2020, however there were no merchant transactions.

174.    The business checking account had several expenses likely related to the establishment of Cloudz Vape, such as Seattle City Light, Fastsigns, Home Depot and other hardware stores, Best Buy and Microsoft, Amazon, and North West Importer (a wholesaler of vape products in Mountlake Terrace).  Young wrote monthly checks to Stratton Properties for rent at the business location until late 2023 when he appeared to begin using a real estate management company for rent payments.

---

[20] In order to verify a bank account, a company such as Square will make two small deposits and two equal withdrawals from a bank account.  Those amounts can be verified on the company's website by the user, showing that user is an authorized user of the bank account.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

175.    The Young Business Solutions business checking account consistently maintained an average balance between $3,000 and $12,000.  Beginning in 2024, the account had periods with a negative balance, with 29 overdraft protection deposit transfers during that year; there were 18 transfers in 2023, the year prior.

176.    Social media posts indicate Young has a propensity towards firearms. Young's business bank account shows several purchases related to guns or firearms.

**YOUNG BUSINESS SOLUTIONS LLC**
2004 COLUMBIA AVE
UNIT A
EVERETT, WA 98203

19-8140/3250

1111

DATE *8-25-23*

PAY TO THE ORDER OF *William Saunders*    $ *1,361.32*

*One thousand three hundred sixty one & thirty two cents* DOLLARS

BECU
PO Box 97050
Seattle, WA 98124-9750
800 233 2328
becu.org

MEMO *Gun Broker*

⑆9230⑆ 01111

| Acct Name | Clear Date | Statement Description | Withdrawal |
|---|---|---|---|
| Young Business Solutions LLC | 1/26/2024 | Securite Gun | $88.05 |
| Young Business Solutions LLC | 3/5/2024 | Securite Gun | $869.78 |
| Young Business Solutions LLC | 3/5/2024 | Securite Gun | $363.32 |
| Young Business Solutions LLC | 3/16/2024 | Securite Gun | $539.46 |
| Young Business Solutions LLC | 3/19/2024 | Wades Eastside Gun Shop | $846.56 |
| Young Business Solutions LLC | 3/22/2024 | Securite Gun | $121.10 |
| Young Business Solutions LLC | 4/14/2024 | Securite Gun | $456.87 |
| Young Business Solutions LLC | 5/21/2024 | Lynnwood Firearms | $55.29 |

| Acct Name | Clear Date | Statement Description | Withdrawal |
|---|---|---|---|
| Young Business Solutions LLC | 5/25/2024 | Securite Gun | $2,778.52 |
| Young Business Solutions LLC | 6/14/2024 | Securite Gun | $2,677.84 |
| Young Business Solutions LLC | 6/15/2024 | Securite Gun | $2,206.14 |
| Young Business Solutions LLC | 6/21/2024 | Securite Gun | $132.23 |
| Young Business Solutions LLC | 6/23/2024 | Securite Gun | $297.52 |
| Young Business Solutions LLC | 7/30/2024 | Wades Eastside Gun Shop | $99.08 |
| Young Business Solutions LLC | 8/1/2024 | Securite Gun | $110.19 |
| Young Business Solutions LLC | 8/2/2024 | Securite Gun | $209.38 |
| | | | $11,851.33 |

177. On April 29, 2024, Young posted a Facebook profile photo of himself wearing what appeared to be night vision goggles mounted to a tactical style helmet, a black camouflage Agilite tactical plate carrier with three AR style magazines in the front pocket. Bank records show multiple transactions from the Young Business Solutions checking account to "Agilite". An internet search of Agilite revealed it is a tactical gear/equipment website.

| Acct Name | Clear Date | Statement Description | Withdrawal |
|---|---|---|---|
| Young Business Solutions LLC | 1/13/2023 | sp*Agilite | $578.60 |
| Young Business Solutions LLC | 11/23/2023 | sq*Agilite | $234.70 |
| Young Business Solutions LLC | 1/20/2024 | sp*Agilite | $104.94 |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Acct Name | Clear Date | Statement Description | Withdrawal |
|---|---|---|---|
| Young Business Solutions LLC | 1/27/2024 | sp*Agilite | $488.80 |
| Young Business Solutions LLC | 2/3/2024 | sp*Agilite | $228.45 |
| Young Business Solutions LLC | 3/26/2024 | sp*Agilite | $48.85 |
| Young Business Solutions LLC | 6/9/2024 | sp*Agilite | $186.72 |
| Young Business Solutions LLC | 8/17/2024 | Agilite | $89.95 |

178.    In an Instagram post dated August 24, 2024, YOUNG wrote, "I love getting my little days off with my little family stopped off at @ironmonkeyrifle where they always have something cool. (Like gold RPGs) to pick up the girlfriends new carry then McMenamins Anderson School [saluting emoji]".

179.    Bank records show multiple transactions from the Young Business Solutions checking account to Iron Monkey Rifle Work.

| Acct Name | Clear Date | Statement Description | Withdrawal |
|---|---|---|---|
| Young Business Solutions LLC | 1/27/2024 | Iron Monkey Rifle Work | $71.68 |
| Young Business Solutions LLC | 4/28/2024 | Iron Monkey Rife Work | $49.62 |
| Young Business Solutions LLC | 5/12/2024 | Iron Monkey Rife Work | $138.91 |
| Young Business Solutions LLC | 8/10/2024 | Iron Monkey Rife Work | $104.74 |
| Young Business Solutions LLC | 8/25/2024 | Iron Monkey Rife Work | $97.04 |

180.    In the first of three images associated with this post, Young is holding what appears to be a metallic gold and white rocket propelled grenade launcher. In the second

Affidavit of Inspector Stinson - 71
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of three images, a Sig Sauer P365 appears to be resting in the cutout foam of its box. I believe this Sig Sauer pistol is what YOUNG was referring to when he said, "the girlfriends new carry".

| Acct Name | Clear Date | Statement Description | Withdrawal |
|---|---|---|---|
| Young Business Solutions LLC | 8/28/2024 | Sig Sauer Inc | $142.85 |

***BECU Savings Account Number*** ███ ***9173***

181.    YOUNG's business savings account, number ███ 9173, was opened at the same time as the checking account.  The first deposit to the account was a $70,000 transfer from Young Business Solutions checking account ███ 9230.  These funds were part of the $80,000 transferred from Young's personal account to the business checking account on March 24, 2022. Activity in the savings account mostly consisted of transfers to and from other Young controlled BECU accounts and dividend deposits until a $15,000 deposit on May 4, 2023.  The account remained open as of February 24, 2025.

**Conclusion – Young Finances**

182.    As set forth above, the financial investigation shows YOUNG coming into possession of very large amounts of cash that is not readily explainable by normal wage or other legitimate income.  He has used that cash to purchase a number of luxury vehicles, and in the process repeatedly misrepresented his employment status and the source of funds used to purchase those vehicles.  I know, based on my training and experience, that unexplained wealth is often powerful evidence of illicit activity.  The financial investigation, together with the seizures and surveillance observations of YOUNG's activities establishes probable cause to believe that YOUNG is engaged in the interstate trafficking of marijuana and possibly other controlled substances using the mails, as well as related money laundering and firearms offenses.  It also establishes probable cause to believe that evidence of his criminal activities can be found at **Target**

**Residence 2004, Target Business 4540,** and the other locations/businesses associated with YOUNG.

**D.     Mu YUAN and Stephany DIAZ: Target Residence 14622 (14622 28th Ave W, Lynnwood, Washington 98087)**

183.     On May 19, 2020, I intercepted a parcel mailed to Stephany DIAZ from an "Ian Wagner" in New Haven, Indiana.  The parcel was mailed to DIAZ at 4615 NE 17th St., Renton, Washington 98059.  YUAN's mother, Ying DENG and stepfather were the listed owners of this particular property.

184.     On May 21, 2020, an individual identifying themselves as "Stephany Diaz" filed an online service request with the USPS Customer Care Center to locate their missing package.  According to the data provided by the customer, their contact telephone number was provided as (206) 271-9091, YUAN's telephone number, and their email address was gannima950616@gmail.com.  The customer provided their address as 307 NE Thornton PL, Seattle, Washington 98125-8035.  307 NE Thornton PL, Seattle, Washington was the previous residence of YUAN and DIAZ.  At the time, the customer identified the contents of the parcel as "Clothing; Jewelry/Precious Metals."

185.     An open-source internet search of "gannima950616" revealed a Twitter account with the Twitter handle "Sosa kushman."  Images contained in the open Twitter account depict multiple images of Mu YUAN including the Twitter profile picture for the account.  Multiple images appeared to depict YUAN with different firearms to include what appeared to be a MAC-10 style firearm and an AK-47 style firearm, large sums of cash (U.S. and Canadian), marijuana, and a digital scale.  One image is of YUAN pointing a handgun at the camera with one hand while holding what appeared to be a MAC-10 style weapon to his own head with the other hand.  In the same image of YUAN, there appeared to be marijuana on the table in front of him.  At the time, the most

recent public post to that account appeared to have occurred on March 25, 2015. Due to YUAN's prominence in the images on this particular Twitter account, including YUAN being the sole person in the profile picture, I believed this account belonged to YUAN. This account since appears to have been hidden or deleted.

186.    A review of USPS business data revealed telephone number (206) 271-9091 was utilized to receive SMS/Text message alerts for this subject parcel.

187.    On May 21, 2020, I applied for and was granted a Federal Search Warrant for the parcel by U.S. Magistrate Judge Mary Alice Theiler in the Western District of Washington (MJ20-272).

188.    On May 21, 2020, with the assistance of HSI S/A Abigail Sawyer, I executed the search warrant on the parcel. During the search, I located $19,250 USD secreted within clear sandwich bags, sealed in multiple USPS envelopes and a USPS box. There were no notes, receipts, or instructions included with the money. I seized the currency as suspected drug proceeds.

189.    On May 28, 2020, investigators were conducting surveillance of Chandler FLOTT. As set forth in prior warrants, FLOTT has mailed at least one package containing marijuana products as part of this investigation that was subsequently seized pursuant to a warrant issued by this Court. During surveillance, investigators could see that FLOTT's telephone number was in communication with one of YOUNG's previous dirty telephone numbers. During this same surveillance, investigators followed FLOTT to YOUNG's then current residence (not the current location).

190.    As surveillance units waited at YOUNG's then residence, investigators could see that YOUNG's at the time second phone or dirty phone was also in communication with telephone number (206) 271-9091. Again, based on Customs and Border Protection data and other law enforcement indices checks, I know this telephone

Affidavit of Inspector Stinson - 74
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

number is subscribed to by YUAN's stepfather and belongs to and is utilized by Mu YUAN.

191.    Sometime later, YUAN arrived at YOUNG's residence in his white Land Rover Range Rover (previous vehicle).  Investigators observed YUAN park his vehicle, exit the driver's door of the vehicle, look around, and then retrieve several partially full dark colored garbage bags from the hatch area of his vehicle.  Investigators then observed YUAN carry the partially full garbage bags up the stairs toward YOUNG's apartment. Investigators watched as YUAN came back to his vehicle a short time later carrying now empty garbage bags, access the rear hatch of his vehicle, and appear to search through several more garbage bags in the rear of the vehicle.  After appearing to find the one or ones YUAN was looking for, he walked back toward YOUNG's apartment carrying the bag or bags.

192.    YUAN then returned to his vehicle a final time with a white plastic Target store shopping bag in his hand.  Surveillance was able to see what appeared to be U.S. currency in the Target shopping bag.  Surveillance observed YUAN enter the driver's door of his vehicle and then depart the area.  As he did so, he appeared to employ techniques to detect possible law enforcement surveillance.

193.    Based on the foregoing observations, on my training and experience and knowledge of the rest of this investigation, there is probable cause to believe that YUAN delivered marijuana to YOUNG in return for currency.

194.    Sometime later FLOTT returned to his vehicle from the vicinity of YOUNG's residence.  In FLOTT's possession was a large duffel bag, which appeared to be full. It should be noted when FLOTT originally arrived at YOUNG's residence he was seen carrying only what appeared to be a mobile telephone and keys towards YOUNG's residence.  Based on the foregoing observations, on my training and experience and on

Affidavit of Inspector Stinson - 75
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

my knowledge of the rest of this investigation, there is probable cause to believe that FLOTT, who appears to work for YOUNG, took some of the marijuana just delivered by YUAN to YOUNG with him – a conclusion supported by subsequent events, outlined below.

195.    On the following day, May 29, 2020, a separate vehicle tracking device on FLOTT's vehicle (granted by this court) indicated FLOTT's vehicle had stopped near the Office Depot Store located at 19719 Highway 99, Lynnwood, Washington, 98036.  I responded to the location and was able to observe a USPS parcel, weighing approximately 14lbs 12 ounces that FLOTT appeared to mail from the Office Depot based on store video surveillance footage.  FLOTT paid for postage in cash and mailed the parcel under the fictitious name "John Hill." FLOTT mailed the parcel to, "WE PRINT IT, 5720 HOGGARD RD, UNIT C, NORFOLK VA 23502-2244.  When I placed my nose near the seam of the parcel, I could smell the odor of marijuana emanating from the box.

196.    On June 28, 2020, at approximately 9:06 PM, a vehicle tracking device on YUAN's Range Rover, reported for approximately 2 minutes in the street in front of the U.S. Post Office located at 130 2nd Ave N., Edmonds, Washington 98020. This vehicle tracking warrant was previously granted in the Western District of Washington (WDWA) on June 22, 2020 (GJ19-647).

197.    On June 29, 2020, I became aware that YUAN had utilized his USPS Click-N-Ship account to create the label for USPS Priority Mail class parcel 9405 5036 9930 0435 0191 57, thus identifying the parcel as potentially linked to my larger investigation.

198.    USPS Click-N-Ship accounts allow users to pay for and ship priority mail and other U.S. mail from their home using a computer and an internet account.  Users can

Affidavit of Inspector Stinson - 76
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

pay for and print mailing labels without going to a physical post office. Users can register email addresses and/or mobile phone numbers to receive information about their packages.

199.    On June 29, 2020, I responded to the U.S. Post Office located at 130 2nd Ave N., Edmonds, Washington 98020. At the Post Office, I located USPS Priority Mail class parcel 9405 5036 9930 0435 0191 57. Furthermore, I identified the parcel as independently suspicious due to the parcel being physically mailed from a zip code different than the return address, and the parcel being mailed from a fictitious address.

200.    Based on the aforementioned information on June 29, 2020, I identified and removed the parcel from the mail stream in Edmonds, Washington for further investigation.

201.    On July 2, 2020, I applied for and was granted WDWA search warrant MJ20-272 to search the parcel.

202.    On July 6, 2020, USPIS Team Leader France Bega and I executed the search warrant on the parcel. When opened, I discovered approximately 499.2 grams (with packaging) of suspected marijuana hidden within the parcel. The suspected marijuana was triple vacuum sealed (vacuum sealed three separate times) and sealed within a USPS envelope inside of the USPS parcel itself. The suspected marijuana was seized as evidence.

203.    On July 6, 2020, I received video surveillance footage from the Edmonds, Washington Post Office from the night of June 28, 2020. In the video, at approximately 9:05 PM, Mu YUAN could be seen entering the Post Office from the vicinity of what appeared to be YUAN's vehicle, which was parked in the street in front of the Post Office. As mentioned earlier in this affidavit, the tracking device installed on YUAN's

vehicle, reported at this location for approximately two minutes, coinciding with YUAN's timing at the Edmond's Post Office.

204.    In the video, YUAN can be seen as he appeared to use his mobile telephone to possibly video record himself mailing the suspect parcel.  In the same video, YUAN could be seen operating his mobile telephone in a way that appeared he was messaging someone via text message, email or some other messaging application prior to and during his departure from the Post Office.  At approximately 9:06 PM, YUAN departed the Post Office.  In the video, YUAN could then be seen returning to the driver's side of his Range Rover.  Tracking data indicated YUAN's vehicle returned to **Target Residence 14622**.  As mentioned earlier in this affidavit, the following day, June 29, 2020, I located one Priority Mail class parcel at the Edmonds Post Office that was paid for with YUAN's Click-n-Ship account.

205.    Based on USPS business data, on September 11, 2020, YUAN used his USPS Click-N-Ship account (████3689) to create labels for USPS Priority Parcels 9405503699300024314366 and 9405503699300024579864. USPS Click-N-Ship account ████3689 is the account registered in YUAN's name with his telephone number listed as the contact telephone number.

206.    On September 11, 2020, at 4:10 PM GPS tracking data revealed YUAN's vehicle was at the Mill Creek Post Office for approximately two minutes. On September 11, 2020, USPS Priority Parcel 9405503699300024314366 was mailed from the Mill Creek, Washington Post Office to an address in Fort Wayne, Indiana. The return addresses name utilized on this particular USPS parcel appeared as "BELLEVUE PLUMBING INC." Having visited the Mill Creek Post Office, I know two minutes is enough time to park a vehicle, walk through the front doors, and deposit a parcel with a preprinted label into the parcel collection box in the front lobby area of the Post Office.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

207.    On September 12, 2020, at 11:31 AM, GPS tracking data revealed YUAN's Range Rover was at the Mill Creek Post Office for approximately three minutes. On September 12, 2020, it appeared that USPS Priority Parcel 9405503699300024579864 was also shipped from the Mill Creek Post Office to an address in Fort Wayne, Indiana. The return address name utilized on this particular USPS parcel appears as "CREEKSIDE ANGLING CO."

208.    It should be noted although both aforementioned parcels were created through YUAN's Click-N-Ship account, neither parcel indicated YUAN's true name or true address on the label of either parcel. The investigation to date has not indicated YUAN is a plumber or an angler. Based on the deceptive nature of how the parcels were labeled and my familiarity with this investigation, I believe both USPS Priority Parcels contained controlled substances.

209.    During surveillance on November 12, 2020, I observed YUAN walking away from the direction of YOUNG's apartment and toward his Range Rover. I observed YUAN carrying what appeared to be a white garbage bag filled with what looked to be a green leafy substance inside of the bag. Based on my knowledge of this investigation, I believe YUAN was walking across the parking lot with a garbage sack containing marijuana. Once YUAN arrived at his vehicle, I observed him using his mobile phone. I then followed YUAN to the Mill Creek Post Office. Once YUAN was parked at the Post Office, I observed YUAN exit his vehicle, retrieve a white garbage bag from the hatch back area of the vehicle, and walk toward the front doors of the Post Office carrying the white garbage bag. It should be noted, when YUAN was retrieving this most recent garbage bag from the rear of his vehicle, I could see YUAN sorting through other garbage bags in the hatch back area until he found the one he was apparently looking for.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

As YUAN returned to his vehicle, I entered the Post Office and watched as YUAN departed the Post Office property in his white Land Rover Range Rover.

210.    After YUAN departed the Post Office, I went to the location where parcels are received once they have been placed in the USPS parcel drop box by the customer. I observed five parcels that I believe YUAN mailed. One parcel was mailed from "VITAL ENERGY MOTORSPORT" a name I am familiar with as being used by YUAN found in YUAN's USPS Click-N-Ship accounts. This parcel carried $15.05 postage which was paid for through a Click-N-Ship account. This parcel was being mailed to "COURTNEY MCCLUREG" at 3033 Inwood Dr., Fort Wayne, Indiana 46815. Based on the size, weight, and other characteristics of this parcel along with it being shipped by YUAN, I believe this parcel contained controlled substances. Further research of this suspect parcel revealed postage was paid for with one of YUAN's USPS Click-N-Ship accounts. The other four parcels apparently mailed by YUAN were mailed from the "Highway99shop" with a return address listed as "14622 28th Ave W, LYNNWOOD WA 98087." While I could find no such store with the name "Highway99shop," I am familiar with 14622 28th Ave. W., Lynnwood, Washington 98087, as it is YUAN's current residence (**Target Residence 14622**).

211.    On October 10, 2023, I identified Priority Mail Parcel 9405 5036 9930 0612 1804 36 for possibly containing narcotics and/or monetary proceeds derived from illegal drug trafficking activity. On October 12, 2023, the parcel was removed from the mail stream in Rolling Fork, Mississippi at my request and returned to me for further investigation. On October 16, 2023, I received the parcel.

212.    Using USPS and law enforcement databases, I researched the sender's name and address listed on the parcel. I learned that address 1018 164th ST SE, Mill Creek, Washington 98012-1502, was a true and deliverable address. However, the

address was missing a Suite or Unit number in order to be completely accurate. A company with the name "PACIFIC FLY FISHERS" was not associated with 1018 164th ST SE, Mill Creek, Washington 98012-1502. I was also aware of "Pacific Fly Fishers" as it was a common fictitious name utilized by Mu YUAN through his USPS Click-N-Ship account (███7828), which this parcel's postage was paid with. Using USPS and law enforcement databases, I also researched the recipient's name and address. I learned that the address 79 Joor Ave, Rolling Fork, Mississippi 39159-5196, was a true and deliverable address. An individual by the name of Leon Browne was associated with, 79 Joor Ave, Rolling Fork, Mississippi 39159-5196. I was familiar with the recipient's name and address as it was a part of my larger drug investigation. Through the review of YUAN's USPS Click-N-Ship data, it appeared that YUAN had mailed at least 23 parcels (including this parcel) to Leon Browne at 79 Joor Ave, Rolling Fork, Mississippi.

213.    On October 20, 2023, I applied for and was granted a federal search warrant in the Western District of Washington for the parcel by the Honorable Paula L. McCandlis (MJ23-517). On October 30, 2023, Inspector Mitchell and I executed the search warrant on the parcel. During the search of the parcel, I located approximately 469 grams of a green leafy substance in bud form believed to be marijuana. During the search, I found what appeared to be pages torn from a shipping supply catalogue. Depicted on the catalogue pages were shipping boxes and food storage bags among other items. Of note, the suspected marijuana in the parcel was found contained within double vacuum sealed food saver style bags and wrapped in a clear plastic bag. This double vacuum sealed bag of marijuana was contained within a USPS envelope and two USPS Flat Rate boxes. At least two stickers that read, "THANK YOU for your purchase" were stuck to the inner of the two Flat Rate boxes.

*Mu YUAN's Click-N-Ship Accounts*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

214.    Through review of USPS business data, I have identified at least three USPS Click-N-Ship accounts linked to Mu YUAN, only one of which was registered in his name. During a July 2, 2020, interview with FBI and USPIS, YUAN provided the telephone number associated with these three accounts (206) 271-9091 as the best way to reach him. This telephone number was also a top caller of YOUNG. According to USPS business data, the same credit card number was used for at least two of these Click-N-Ship accounts. Based on the knowledge I have gained of YUAN and this investigation, I believe nearly all, if not all of, the shipments sent by YUAN through his USPS Click-N-Ship accounts contained controlled substances.

215.    **Click-N-Ship Account number** ████ **3689**, registered on October 12, 2019, was registered to YUAN in his name. The login name was listed in USPS business data as "yhr950616". The address was listed as 307 NE Thornton Pl. Apt 235, Seattle, Washington. The listed telephone number was (206) 271-9091 and the email was gannima950616@gmail.com. My review of USPS business data revealed that this account appears to have been used to ship or prepare to ship approximately 280 USPS Priority parcels from June 14, 2020, to September 19, 2024. Of the 280 shipments, 277 of them appeared to have a fictitious sender name consisting of several angler company names, a plumbing company, and a motorsports company. One of the 280 shipments appeared to have a true return name and address of Stephany DIAZ at 14622 28th Ave W., Lynnwood, Washington 98087 (**Target Residence 14622**). Two of the 280 shipments appeared to have a true return name and address of Mu YUAN at 14622 28th Ave W., Lynnwood, Washington 98087 (**Target Residence 14622**). One of YUAN's true name mailings appeared to also have a fictitious angling company listed as the return name. As of June 18, 2021, it appeared YUAN used this account to create and/or mail

277 shipments dating back to June 14, 2020, an average of 21.3 parcels per month, and spent at least $5,575.65 in USPS shipping alone through this account at the time.

216.    On July 9, 2024, I conducted a review of the account and learned the account name was updated to Daniel SONG, the account address was updated to 10114 SE 225th PL, Kent, Washington, the email was updated to danielsong95@yahoo.com, and the contact telephone number was updated to (206) 365-2189. I am familiar with the name Daniel SONG because the execution of a search warrant (MJ19-539) in November 2019 on a parcel mailed from "Daniel Song" revealed approximately 1.5 kilograms of suspected marijuana being mailed from Seattle to Lynn Haven, Florida. The login name stayed the same as previously indicated, yhr950616. Additionally, during this review I identified this account was used to mail a parcel on February 9, 2024, and another parcel on July 5, 2024. Additionally on January 3, 2025, I identified this account was used to ship a parcel on September 19, 2024, bringing the total number of mailings conducted from this account to 280 parcels totaling $5,646.35 in postage costs.

217.    **Click-N-Ship Account number** ███ **7170** was registered on January 29, 2020, to "Daniel SONG." The login name is danielsong950616. The associated address was listed as 243 SW 150th St., Burien, Washington. The listed telephone number was (206) 271-9091 and the email was danielsong95@yahoo.com. Again, I am familiar with the name Daniel SONG because the execution of a search warrant (MJ19-539) in November 2019 on a parcel mailed from "Daniel Song" revealed approximately 1.5 kilograms of suspected marijuana being mailed from Seattle to Lynn Haven, Florida. My review of USPS business data revealed that this account was used to mail to many of the same addresses as YUAN's previous Click-N-Ship account and used previous fictitious shipper names. This account was used to create the first label on February 11, 2020. In

Affidavit of Inspector Stinson - 83
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

total, it appears this account has been used to ship 28 times since February 11, 2020. The most recent parcel for this account was mailed, using this account, on June 4, 2020.

218.    **Click-N-Ship account number** ████**7828**, has a username of "yhr950616mumi," a contact email of weizhihuang98108@yahoo.com, and the same contact telephone number of (206) 271-9091. On February 14, 2025, I conducted a review of YUAN's Click-N-Ship account number ████7828. In total, it appeared this account had been used to ship or prepare labels for shipping approximately 79 times between August 13, 2021, and February 14, 2025. During the time of the review, the most recent parcel label was created on March 12, 2024. This label was used to mail a parcel with the fictitious name and return address of Puget Sound Sports Fishing 300 Admiral Way, Edmonds, Washington to 206 N. Wylie St., Lancaster, South Carolina. This most recent parcel appears to have been delivered on March 15, 2024. As detailed above, YUAN mailed a parcel on October 10, 2023, from the Mill Creek Post Office. On October 12, 2023, this parcel was removed from the mail stream in Rolling Fork, Mississippi at my request and returned to me for further investigation. On October 16, 2023, I received the parcel. Following a positive narcotics detection K9 alert to the parcel, on October 20, 2023, I applied for and was granted a Federal Search Warrant in the WDWA (MJ23-517) by the Honorable Paula L. McCandlis. On October 30, 2023, Inspector Mitchell and I executed the search warrant on the parcel. During the search warrant, I discovered approximately 469 grams of suspected marijuana.

219.    **Click-N-Ship account number** ████**9017**, has a username of Mumiyuan27, a contact email of danielsong95@yahoo.com, a contact telephone number of (321) 331-7262, and an associated address of 5554 23rd Ave S, Seattle, WA 98108. This account was established on June 24, 2021. On March 11, 2025, I conducted a review of YUAN's Click-N-Ship account number ████9017. This account was used to

create the first label on June 24, 2021. In total, it appears this account has been used to ship 21 times since June 24, 2021. The most recent parcel for this account was mailed or a label was created, using this account, on August 4, 2021.

**E.    Mu YUAN and Stephany DIAZ: Alderwood Safe Storage, 16902 Alderwood Mall Parkway, Storage Unit Number 49, Lynnwood, Washington**

220.    On February 14, 2023, S/A Harris observed YUAN walking out of **Target Residence 14622** and getting into the driver's seat of **Target Vehicle 3**.  S/A Harris then observed YUAN depart the residence in **Target Vehicle 3**.  Surveillance units followed as YUAN drove to the Stewart Crossing neighborhood, near 1210 29th Pl NW, Puyallup, Washington.  YUAN appeared to conduct "heat checks" or drive in a manner, which made it difficult for law enforcement to follow without being detected.  YUAN drove down an alleyway and was out of sight of surveillance units for a short period of time before heading north toward Lynnwood again. Surveillance followed YUAN to a strip mall in Lynnwood and was again out of sight for a short period of time. Surveillance units then followed YUAN to the Alderwood Safe Storage located at 16902 Alderwood Mall Parkway, Lynnwood, Washington. Surveillance units were able to see YUAN park **Target Vehicle 3** near a storage unit but were not able to get close enough to see which storage unit. Once YUAN exited the storage unit complex in **Target Vehicle 3**, surveillance units were able to follow him back to the area his mailbox and then back to **Target Residence 14622**.  Surveillance observed YUAN carrying a bag from the **Target Vehicle 3** into **Target Residence 14622**.

221.    On February 24, 2023, FBI S/As Kelli Johnson and Justin Collis interviewed an Alderwood Safe Storage manager at 16902 Alderwood Mall Parkway, Lynnwood, Washington.  During the interview, the store manager provided the following information to FBI S/As Johnson and Collis: YUAN does not have a rented storage,

however, Stephany DIAZ rents **storage unit number 49**.  According to DIAZ' rental contract she resides at **Target Residence 14622**.  The manager said DIAZ pays the bill monthly via autopay.  According to the rental agreement, YUAN was listed as the alternate contact for storage unit number 49.  According to the rental agreement, DIAZ signed the agreement on November 29, 2021.  During the interview, S/As Collis and Johnson reviewed surveillance footage from February 14, 2023, and YUAN was identified on the surveillance footage inputting a unique key code and entering the storage area in **Target Vehicle 3** at approximately 12:52 PM.  Cameras in the storage area showed **Target Vehicle 3** drive through the storage area at approximately 12:53 PM. **Target Vehicle 3** stopped at a storage unit and YUAN exited the car. YUAN then accessed a storage unit, which was identified by the manager as **storage unit number 49**.

222.    On February 7, 2025, I confirmed with Alderwood Safe Storage in Lynnwood, Washington that DIAZ still has **storage unit number 49** rented to her in her name. The manager of the storage facility said DIAZ has been a customer since 2021 and has the monthly payment set as an autopayment paid on the 28th of each month. The manager also stated YUAN was listed as an alternate point of contact on the account. The last time the unit was accessed was on the evening of January 8, 2025.

223.    On February 7, 2025, Port of Seattle Police Detective Cory Stairs applied is K9 partner Poncho, a narcotic detection dog to the outside door of **storage unit 49** at the Alderwood Safe Storage. K9 Poncho did not alert to the storage unit. Despite the negative dog alert, I believe there is nonetheless probable cause to believe that contraband – likely in the form of marijuana – other evidence of drug trafficking activity, and/or the fruits and instrumentalities of drug trafficking activity will be found in said storage unit.  I know, based on my training and experience, that drug traffickers keep such items in their residences, vehicles, storage units, and (as to the fruits) safe deposit boxes. I also know

that while drug detection dogs are a valuable tool, the way narcotics are packaged and stored – which can include vacuum sealing, extensive packaging, and sometimes the use of masking agents to hide the drug's odor – can interfere with the K9's ability to smell the drugs.

**F.     Mu YUAN: Guardian Vault 23515 NE, Safe Deposit Box Number 188, Novelty Hill Rd Suite B215, Redmond, Washington 98053**

224.    During the course of this investigation, agents became aware of a private safe deposit box store names "Guardian Vault" that YUAN was communicating with via his telephone number (206) 271-9091. Guardian Vault is located at 23515 NE Novelty Hill Rd. Suite B215, Redmond, Washington. On at least three occasions tracking data show YUAN's Range Rover was located at or near Guardian Vault.

225.    On August 25, 2020, I visited Guardian Vault and spoke with founder Brandon Sylvestal, I identified myself as a U.S. Postal Inspector with my badge and credentials at the onset of our conversation.  During our conversation, I asked Mr. Sylvestal if his business would comply with an administrative subpoena and if he would disclose the request to his customer.  Mr. Sylvestal told me he would be unable to comply as his business was not required to follow the same protocols as a normal financial institution would be required. I then asked Mr. Sylvestal if his business would comply with a Federal Grand Jury subpoena, and he told me he would be unable to comply as his customers are anonymous. Mr. Sylvestal told me he does not keep identifying information for his customers which I found to be extremely odd considering Guardian Vault provides their customers insurance on all of their rented safe deposit boxes as well as an option to purchase increased insurance for safe deposit boxes.

226.    On September 18, 2020, S/A Highley located an at the time three-month-old online review for Guardian Vault authored by an individual with screen name "Yuan Yuan." In the review Yuan Yuan wrote, "This place is awesome it's 30 mins drive from

where I'm at but it's worth it. I had safe deposit box at my banks but I didn't really feel safe at all but this place offfers insurance and it's really easy access you don't gotta wait in line like regular banks. definitely recommend it." [sic] According to an internet search, YUAN lives approximately 35 minutes away from Guardian Vault.

227.    On October 22, 2020, surveillance units followed YUAN as he drove his Range Rover from **Target Residence 14622** to **Guardian Vault** at 23515 NE Novelty Hill Rd. Suite B215, Redmond, Washington. Surveillance watched as YUAN exited is vehicle with a black backpack. Surveillance watched as YUAN entered Guardian Vault with the black backpack. Approximately nine minutes later, surveillance observed as YUAN exited **Guardian Vault** with the black backpack. Agents watched as YUAN got into the driver's seat of his vehicle. Surveillance watched as YUAN then exited the vehicle without the black backpack and walked to the rear hatch area of his Range Rover. Surveillance watched as YUAN retrieved what appeared to be a black leather purse from the rear hatch area and close the hatch. YUAN then got back into the driver's seat of his vehicle and departed the area. Based on the aforementioned activity with YUAN and Guardian Vault, I believe this is the location where YUAN is hiding some or all of the proceeds of his drug trafficking efforts.

228.    On April 20, 2021, I applied for and was granted a federal search warrant for YUAN's Gmail records. Located in YUAN's Gmail records was an email dated May 20, 2020, from Brandon F. Sylvestal at brandonsylvestal@guardianvault.biz to Mu YUAN at gannima950616@gmail.com.  The email appeared to thank YUAN for leasing a safe deposit box and it contained a contract identifying YUAN's box number as number 188.  Also located in these records was a response via Google from Guardian Vault thanking Yuan Yuan for his positive Google review. This appears to be the same Google review located by S/A Highley earlier in this affidavit.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

229.    According to phone toll analysis, YUAN's telephone number (206) 271-9091 communicate with telephone number (425) 285-9530 at least 12 times from May 20, 2020, to March 17, 2023.  According to an open-source internet search, telephone number (425) 285-9530 belongs to **Guardian Vault** in Redmond, Washington.

### Financial Investigation (YUAN and DIAZ)

230.    The financial investigation has shown that Mu YUAN and his wife Stephany DIAZ reside at **14622 28th Avenue West, Lynnwood, Washington** (**Target Residence 14622**).   This property was purchased by YUAN's mother, Ying DENG, and her husband Robin RAY, in June of 2020.   Like Joshua YOUNG, YUAN works with a network of individuals sending and receiving both controlled substances and the proceeds from transactions involving those controlled substances through the U.S. mail and UPS. From 2019 through 2022, bank records show YUAN and DIAZ have spent more than $4,500 in shipping charges; this amount only includes transactions from bank accounts and does not include other methods of spending, such as PayPal, CashApp, Square, or Venmo.

231.    Records show that around the same time that YUAN would send packages to other states, often using fictitious sender or recipient names or addresses, YUAN or DIAZ would receive funds from those individuals via Zelle or CashApp.  Below are a few of those examples.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 6/14/2020 | 9405503699300417003907 | ROBERT KIMBRELL | ROBERT | KIMBRELL | 11326 N 46TH ST | TAMPA | FL |
| 6/14/2020 | 9405503699300417010769 | ROBERT KIMBRELL | ROBERT | KIMBRELL | 11326 N 46TH ST | TAMPA | FL |

*6/13/2020: Robby Kimbrell (robbykimbrell@gmail.com) sent Yuan a Venmo transaction: $1900 "Gucci bag"*

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 6/14/2020 | 9405503699300417325276 | MACK LINSTEAD | MACK | LINSTEAD | 415 MITCHELL ST | SOUTHPORT | NC |

| | | | | | 645 HARRISON RIDGE RD | | |
|---|---|---|---|---|---|---|---|
| *6/14/2020: Mack Linstead (mackenziel543@gmail.com) sent two Venmo transactions to Yuan: $1 "test") and $1890 "summer housing 2020"* | | | | | | | |
| 6/21/2020 | 940550369930042604522 6 | MICHAEL BUCHANAN | MICHAEL | BUCHANAN | 645 HARRISON RIDGE RD | DUNCAN | SC |
| *6/21/2020: Terry Buchanan sent Yuan $756 via CashApp "BJJ lessons"* | | | | | | | |
| 8/3/2020 | 9405503699300479585151 | ADRI KANABLE | ADRI | KANABLE | 13324 ROAD 51 | ANTWERP | OH |
| *7/30/2020: Salil Kanade (salil_kanade@hotmail.com) sent Yuan a Venmo Transaction: $1750 "packs"[21]* | | | | | | | |
| 8/5/2020 | 9405503699300482203592 | LEON BROWN | LEON | BROWN | 79 JOOR AVE | ROLLING FORK | MS |
| *8/5/2020: Troy Brown sent $1850 to Yuan Via Zelle* | | | | | | | |

232.    In addition to frequently using financial methods outside of bank accounts, YUAN and DIAZ also maintained a large number of bank accounts at any one time, with more than $2.6 million in deposits over an approximate seven-year period.  Money deposited to any one of these accounts was frequently transferred between multiple other accounts with no understandable business purpose; out of the $2.6 million in deposits, YUAN and DIAZ made more than $2 million (more than 3,000 transactions) in transfers between these known bank accounts.  Further, deposits are made to these accounts from unknown individuals that also do not have any identifiable purpose other than to move large amounts of money.  In November of 2022, YUAN and DIAZ received $76,500 from an individual that had just sold his property in Marysville, Washington a few days prior.  The memo on one of the checks written to them was "house".

233.    YUAN and his mother maintained at least five bank accounts either jointly, or where DENG is the primary account holder, and YUAN has power of attorney on the

---

[21] I know, based on my training and experience, that "packs" can be a slang term for pound-quantities of marijuana, and that $1,750 is consistent with the price of a pound of some marijuana strains.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

account.  They also had a vehicle where the loan was held jointly, as well as YUAN
living and paying for the expenses of "DENG's property" in Lynnwood.  YUAN's Gmail
account shows emails regarding the purchase of the property, maintenance, or community
news were either sent directly to YUAN or forwarded to YUAN from RAY and DENG.

234.    According to Washington State Employment Security records, the
following wages were reported for Mu YUAN for the years 2015 through 2024:

| Mu Yuan: Reporting Year | Employer | Total Wages Reported |
|---|---|---|
| 2015 | None reported | |
| 2016 | East West Education[22] | $2,760 |
| 2017 | East West Education | $11,040 |
| 2018 | East West Education | $11,040 |
| 2019 | East West Education | $20,1023 |
| 2020 | East West Education | $14,400 |
| 2021 | East West Education<br>One Way Group | $19,400<br>$20,000 |
| 2022 | East West Education<br>One Way Group | $21,150<br>$84,524 |
| 2023 | East West Education<br>Nine Way | $14,400<br>$78,000 |
| 2024 | Nine Way | $21,000 |

235.    Public records show that One Way Group LLC was established in the State
of Washington on September 13, 2018, with an address of 14808 NE 28th St, Ste A,
Redmond, WA.  The listed governors of the business on the public website are Huyini
Ping, Qian Ping, Tzu-En Lin, and Yonghui CHEN.  A Google search of this address
shows a business by the name of Nine Way, a Chinese noodle restaurant.  Bank of
America record show Yonghui CHEN, Tzu Lin and Huyini Ping are the authorized

---

22 Owned by Ying Deng and Robin Ray.

23 East West Education reported $3,600 per quarter in wages for Q 1-3 in 2019.  That amount jumped to $9,300 for Q4 2019.

Affidavit of Inspector Stinson - 91
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

signers on account ███████ 7733; this is the bank account that issues payroll checks to Mu YUAN.

236.    Bank records show deposits from One Way Group, Nine Way made to the Chase account of Mu YUAN during August through January of 2023.  Each of these checks, which totaled $88,063.39, had the memo "pay".  The amounts that YUAN receives with each paycheck is not consistent with other paychecks from the same business account of One Way Group. For example, YUAN received check number 2171 dated March 2, 2022, for $5,464.63. Hunyini Ping, an owner of the business, received check number 2167 for $1,852.97.

237.    YUAN also appears to have a relationship with Yonghui CHEN outside of the business.  During 2019 and 2020, Mu YUAN sent CHEN more than $57,000 via Zelle.  One of those transfers had the note[24] "The Profit will be paid to you, and the rest will be given to you in cash".  Another note was "help boss (emoji symbol) fuck me".

238.    Based on my familiarity with this investigation, I believe Yonghui CHEN is a marijuana supplier to YUAN. CHEN was arrested in 2018 for Manufacture/Delivery of a Schedule I/II/III Controlled Substance and was convicted of a Controlled Substance Possession No Prescription. Both YUAN and CHEN have been seen by surveillance at the same suspected illicit marijuana grow.

239.    According to Washington State Employment Security records, the following wages were reported for Stephany DIAZ Fletes for the years 2015 through 2024:

| Stephany Diaz: Reporting Year | Employer | Total Wages Reported |
|---|---|---|
| 2015 | None reported | $0 |
| 2016 | None reported | $0 |
| 2017 | None reported | $0 |

---

[24] Note was in Chinese.  Google translator was used to read this in English.

Affidavit of Inspector Stinson - 92
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| 2018 | None reported | $0 |
| 2019 | Safeway Inc<br>PCP LLC | $529 |
| 2020 | None reported | $0 |
| 2021 | None reported | $0 |
| 2022 | None reported | $0 |
| 2023 | Amazon.com Services LLC | $257.01 |
| 2024 | None report | $0 |

240.    Washington State Department of Revenue records show DIAZ Fletes established a Washington business in the name of Highway 99 on January 20, 2020.  The business is a "clothing and clothing accessories retailers".  Bank accounts show she maintains two bank accounts in the name of the business and activity indicates she sells items on Etsy.com.

241.    A search of available records reveal that YUAN and/or DIAZ maintained over 40 bank accounts at more than eight different financial institutions.

242.    A comparison of bank records to known reported wages for both DIAZ and YUAN show a significantly greater amount of bank deposits[25] than legitimate wages.

| Year | Total Reported Wages | Total Bank Deposits |
| --- | --- | --- |
| 2018 | $11,040 | $51,239 |
| 2019 | $20,629 | $355,743 |
| 2020 | $19,400 | $778,099 |
| 2021 | $39,400 | $725,066 |
| 2022 | $105,674 | $650,657 |

243.    On multiple occasions, YUAN or DIAZ transferred money back and forth between accounts with seemingly no reason.  For example, on October 4, 2020, $16,300 was transferred between accounts, as shown below.  Based on my training and experience, transfers of this type are often consistent with money laundering activity,

---

[25] This amount does not include identified transfers between bank accounts, nor does it include all the funds involved in P2P transactions.  Some of the P2P funds remained in those platforms and was used without being deposited or withdrawn from a bank account.

Affidavit of Inspector Stinson - 93
USAO No. 2019R00799

because they make it difficult to trace funds.  This activity continued throughout all time periods reviewed.

| Account Name | Account Number | Date | Statement Description | Deposit | Withdrawal |
|---|---|---|---|---|---|
| Diaz, Stephany | Ally ***2349 | 10/4/2020 | Internet Transfer to Interest Checking Account ***8475 | | $3,650.00 |
| Diaz, Stephany | Ally ***2349 | 10/4/2020 | Internet Transfer from Interest Checking Account ***8475 | $1,000.00 | |
| Yuan, Mu | Ally ***2356 | 10/4/2020 | Internet Transfer from Interest Checking Account ***4189 | $1,000.00 | |
| Yuan, Mu | Ally ***4189 | 10/4/2020 | Internet Transfer from Interest Checking Account ***8475 | $1,000.00 | |
| Yuan, Mu | Ally ***4189 | 10/4/2020 | Internet Transfer to Interest Checking Account ***8475 | | $200.00 |
| Yuan, Mu | Ally ***4189 | 10/4/2020 | Internet Transfer to Interest Checking Account ***2356 | | $1,000.00 |
| Diaz, Stephany | Ally ***7264 | 10/4/2020 | Internet Transfer from Interest Checking Account ****8475 | $1,000.00 | |
| Yuan, Mu | Ally ***8458 | 10/4/2020 | Internet Transfer from Interest Checking Account ***8475 | $3,650.00 | |
| Yuan, Mu | Ally ***8458 | 10/4/2020 | Internet Transfer to Interest Checking Account ***8475 | | $1,000.00 |
| Yuan, Mu | Ally ***8458 | 10/4/2020 | Internet Transfer to Interest Checking Account ***8475 | | $2,000.00 |
| Yuan, Mu | Ally ***8458 | 10/4/2020 | Internet Transfer to Interest Checking Account ***8475 | | $800.00 |

Affidavit of Inspector Stinson - 94
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Account Name | Account Number | Date | Statement Description | Deposit | Withdrawal |
|---|---|---|---|---|---|
| Diaz, Stephany & Yuan, Mu | Ally ***8475 | 10/4/2020 | Internet Transfer from Interest Checking Account ***8458 | $800.00 | |
| Diaz, Stephany & Yuan, Mu | Ally ***8475 | 10/4/2020 | Internet Transfer from Interest Checking Account ***2349 | $3,650.00 | |
| Diaz, Stephany & Yuan, Mu | Ally ***8475 | 10/4/2020 | Internet Transfer to Interest Checking Account ***8458 | | $3,650.00 |
| Diaz, Stephany & Yuan, Mu | Ally ***8475 | 10/4/2020 | Internet Transfer from Interest Checking Account ***8458 | $1,000.00 | |
| Diaz, Stephany & Yuan, Mu | Ally ***8475 | 10/4/2020 | Internet Transfer from Interest Checking Account ***8458 | $2,000.00 | |
| Diaz, Stephany & Yuan, Mu | Ally ***8475 | 10/4/2020 | Internet Transfer to Interest Checking Account ***2349 | | $1,000.00 |
| Diaz, Stephany & Yuan, Mu | Ally ***8475 | 10/4/2020 | Internet Transfer from Interest Checking Account ***4189 | $200.00 | |
| Diaz, Stephany & Yuan, Mu | Ally ***8475 | 10/4/2020 | Internet Transfer to Interest Checking Account ***4163 | | $1,000.00 |
| Diaz, Stephany & Yuan, Mu | Ally ***8475 | 10/4/2020 | Internet Transfer from Interest Checking Account ***4163 | $1,000.00 | |
| Diaz, Stephany & Yuan, Mu | Ally ***8475 | 10/4/2020 | Internet Transfer to Interest Checking Account ***4189 | | $1,000.00 |
| Diaz, Stephany & Yuan, Mu | Ally ***8475 | 10/4/2020 | Internet Transfer to Interest Checking Account ***7264 | | $1,000.00 |
| | | | | $16,300.00 | $16,300.00 |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

244.   Further, a detailed analysis suggests DIAZ and YUAN had maintained accounts almost solely to transfer money to and then withdraw those same funds in cash. On several occasions, money was transferred into an account, only to have the same amount withdrawn the same day. The transactions below show a few examples.

| Account Number | Date | Statement Description | Deposit | Withdrawal |
|---|---|---|---|---|
| Ally ***8458 | 3/29/2021 | Internet Transfer from Interest Checking Account ***4189 | $1,000.00 | |
| Ally ***8458 | 3/29/2021 | ATM Withdrawal | | $200.00 |
| Ally ***8458 | 3/29/2021 | ATM Withdrawal | | $800.00 |

| Account Number | Date | Statement Description | Deposit | Withdrawal |
|---|---|---|---|---|
| Ally ***8458 | 3/14/2021 | ATM Withdrawal | | $800.00 |
| Ally ***8458 | 3/14/2021 | ATM Withdrawal | | $200.00 |
| Ally ***8458 | 3/14/2021 | Internet Transfer from Interest Checking Account ***2356 | $1,000.00 | |

| Account Number | Date | Statement Description | Deposit | Withdrawal |
|---|---|---|---|---|
| Ally ***8458 | 1/1/2021 | Internet Transfer from Interest Checking Account ***4189 | $1,000.00 | |
| Ally ***8458 | 1/1/2021 | ATM Withdrawal | | $800.00 |
| Ally ***8458 | 1/1/2021 | ATM Withdrawal | | $200.00 |

| Account Number | Date | Statement Description | Deposit | Withdrawal |
|---|---|---|---|---|
| Ally ***2349 | 1/13/2021 | Internet Transfer from Interest Checking Account ***8475 | $1,000.00 | |
| Ally ***2349 | 1/13/2021 | ATM Withdrawal | | $800.00 |
| Ally ***2349 | 1/13/2021 | ATM Withdrawal | | $200.00 |

| Account Number | Date | Statement Description | Deposit | Withdrawal |
|---|---|---|---|---|
| Ally ***2349 | 2/24/2021 | Internet Transfer from Interest Checking Account ***8475 | $1,000.00 | |
| Ally ***2349 | 2/24/2021 | ATM Withdrawal | | $800.00 |
| Ally ***2349 | 2/24/2021 | ATM Withdrawal | | $200.00 |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Bank of America*

245.    Mu YUAN established three personal bank accounts at Bank of America in addition to three credit card accounts: account numbers ████4457, ████1734, and ████8768.

246.    On April 20, 2021, all three of Yuan's accounts were closed; the closing funds of $42,809.65 were withdrawn in a cashier's check payable to Stephany DIAZ.

*Ally Bank*

247.    Mu YUAN and Stephany DIAZ established several personal bank accounts at Ally Bank beginning in 2019.  Of the total gross deposited amount, $1,885,204, more than $1.12 million was transferred within these Ally Bank accounts, leaving $760,369.10 in net deposits.  Of this amount, $719,747.96 was transferred into the account using P2P transactions, including Zelle, Cash App, PayPal, and Venmo. YUAN and DIAZ used these funds to make $517,868 in ATM withdrawals.

*Capital One*

248.    On January 5, 2020, Mu YUAN opened a checking account, number ████2962, and savings account, number ████2953, with Capital One Bank. These accounts had an associated address of 4615 NE 17th St, Renton, WA, phone number of 206-271-9091, and email gannima950616@gmail.com.  The same day the accounts were opened, YUAN linked the checking account to his Venmo account. From account opening through June 32, 2021, net deposits[26] to both accounts totaled $73,363.24. Of that amount, $59,796 (82%) consisted of funds transfers from Venmo or Square.

*BECU*

---

26 Total net deposits after transfers between the two accounts were eliminated.

Affidavit of Inspector Stinson - 97
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

249.    Stephany DIAZ Fletes opened two accounts at BECU in December of 2020.  The address associated with the accounts was **14622 28th Avenue West, Lynnwood, Washington (Target Residence 14622)** with a phone number 206-504-9307 and email stephanydiaz94@gmail.com. Diaz Fletes was listed as the owner of High Way 99, a Washington business.

250.    From account opening through November of 2021, net deposits to both accounts totaled $17,540. Of this amount, $14,924 (85%) consisted of direct deposits from Etsy, Inc.  These accounts remained open as of December of 2021.

251.    Mu YUAN also opened a checking and savings account at BECU in October of 2021.  The address associated with the accounts was **14622 28th Avenue West, Lynnwood, Washington (Target Residence 14622)** with a phone number of 206-271-9091 and email gannima950616@gmail.com.  YUAN's employment was stated to be a manager at One Way Group-Nine Way. From account opening through February 17, 2023, deposits to YUAN's savings account number ███2792 consisted of dividend deposits and transfers from his BECU checking account. The balance as of February 17, 2023, was $60,099.41.

252.    From October of 2021 through February of 2023, deposits to YUAN's checking account number ███7980 totaled $72,163.61. Of this amount, $6,900 consisted of cash and $5,500 consisted of money orders.  At least three of the deposited money orders had the handwritten remitter name "Weizhi Huang"[27] with the address of 5554 23rd Ave S, Seattle, WA[28] 98108 and the memo "rent"[29].  It is unknown what Huang may be renting from YUAN since YUAN and DIAZ did not previously own any

---

[27] Paypal records show a credit card in the name of Weizhi Huang was associated with Yuan's Paypal account on July 5, 2021.
[28] 5554 23rd Ave S, Seattle was added to Yuan's Paypal account on July 5, 2021.  This address has been identified by agents as receiving cash parcels.
[29] Yuan's Venmo account shows multiple individuals send him money for "rent".

Affidavit of Inspector Stinson - 98
USAO No. 2019R00799

1  real property in their names. Further, the address written on the money orders has been

2  owned by Kwai Sau and Wang Tsloon Yee since 1984.

3      253.    A review of YUAN's Gmail account shows the invoice below associated

4  with 5554 23rd Ave S, Seattle. Sutton Bank records show that on April 22, 2020, YUAN

5  made a $150.87 charge on his Square debit card to Uline*Ship Supplies.

## ULINE ORDER CONFIRMATION # 36193864

| | |
|---|---|
| From: | Uline Customer Service <customer.service@uline.com> |
| To: | gannima950616@gmail.com |
| Date: | Tue, 21 Apr 2020 01:41:10 -0700 |
| Attachments: | Uline_Order_Confirmation_18019503_36193864_70682838_1.pdf (106.6 kB) |

**ULINE**
800-295-5510 | uline.com

ORDER # 36193864
PO # MU
SHIPMENT 1 of 1

Thank you for your order!

| SOLD TO: | SHIP TO: |
|---|---|
| MU YUAN | MU YUAN |
| 5554 23RD AVE S | 5554 23RD AVE S |
| SEATTLE WA 98108-2917 | SEATTLE WA 98108-2917 |

| CUSTOMER NUMBER | SHIP VIA | ORDER DATE | WILL SHIP | TERMS |
|---|---|---|---|---|
| ████9503 | POZZI FREIGHT | 04/21/20 | 04/21/20 | VISA |

| QUANTITY | U/M | ITEM NUMBER | DESCRIPTION | UNIT PRICE | EXT. PRICE |
|---|---|---|---|---|---|
| 15 | EA | S-14288 | 21 X 21 X 21" CORRUGATED BOXES | 4.07 | 61.05 |

| SUB-TOTAL | SALES TAX | SHIPPING/HANDLING | TOTAL |
|---|---|---|---|
| 61.05 | 13.85 | 75.98 | 150.88 |

NOTE:

ATTENTION: MU YUAN
TRACK YOUR ORDERS ON ULINE.COM/TRACK

Affidavit of Inspector Stinson - 99
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

254.    An additional $50,000[30] was from Shaoyan Chen, deposited to YUAN's account on November 1, 2022. On or around June 19, 2020, Shaoyan Chen purchased the property located at 7621 82nd Avenue NE, Marysville, Washington for $560,000 from Philip Chris and Jill B Gibson. Chen obtained one loan for $512,820 from RMK Financial Corp dba Majestic Home Loan to finance the purchase. On November 2, 2022, Chen sold the property to David N and Sunhuan C Barnes for $730,000. The address for Barnes on the deed was 20034 East Oakridge Ct, Walnut, California.

255.    YUAN transferred a total of $56,699.99 from his BECU checking account to his BECU savings account and made $12,326.83 in American Express and Chase credit card payments.  The balance in the checking account on February 17, 2023, was $3,136.22.

### East West Bank

256.    Mu YUAN opened two accounts at East West Bank in April of 2021. From April through August of 2021, deposits to these accounts totaled $193,859.  Of this amount, $89,000 (46%) was transferred from YUAN's Ally Bank account, and $10,000 from his Bank of America account. An additional $30,000 was received from Jin Mei Cai and Zuo Lin Liu, and $57,650 was deposited from P2P platforms Square, Venmo, and Paypal. These accounts remained open as of August of 2021.

### JPMorgan Chase Bank

257.    Mu YUAN opened two personal accounts at JPMorgan Chase Bank in June of 2021. The address associated with the accounts at the time they were opened was **14622 28th Avenue West, Lynnwood (Target Residence 14622)** with a phone number of 206-271-9091.

---

[30] This check was deposited on 11/1/22 and on 11/10/22 Yuan transferred $50,000 to his BECU savings account. The balance in the checking account prior to the check deposit was $4,715.85.  The address on Shaoyan Chen's check was 16611 Benson Rd S, Renton, WA.  This property has been owned by Chiu Kit Lee and Gui Tang Xiong since October of 2015.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

258.    Between account opening and December of 2021, net deposits to both accounts totaled $40,958.08.  Of that amount, $16,742 (41%) consisted of P2P deposits from other individuals and $23,075.78 (56%) consisted of deposits from East West Education & RE Consulting LLC or One Way Group/Nine Way.

259.    On September 23, 2021, $140,008.57 was deposited from Mu YUAN's East West Bank accounts. These funds likely represented the closure of his two East West Bank accounts; current records end on August 31, 2021, and the total balance at that time was $142,066.46. As of November 24, 2021, the total balance of both JPMorgan Chase accounts was approximately $192,000.

**Bancorp Bank**

260.    On January 22, 2020, Mu YUAN opened a VARO personal visa debit card with Bancorp Bank, card number ▮▮▮▮▮▮▮▮▮ 5287.  Records show this card was funded by YUAN's Venmo account, Bank of America account, and his Ally Bank account. Between January 22 and March 10, 2020, a total of $9,910 was transferred from YUAN's Venmo account to his Varo card. Almost all the funds were then transferred to a Varo Savings account.

**Wells Fargo Bank**

261.    Mu YUAN opened three new accounts at Wells Fargo Bank on August 3, 2021, two in his name only and one joint account with Stephany DIAZ.

262.    From account opening through March of 2022, net deposits to these accounts totaled more than $146,000. On March 17, 2022, a check for $122,500 was deposited to YUAN's account ▮▮▮▮ 8075; the deposit was made in a branch in Alhambra, California.

**Peer 2 Peer**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

263. As stated above, Peer to Peer transactions, also known as P2P transactions, are electronic money transfers made from one person to another. These transactions allow for another layer of anonymity, as the sender or recipient name and information often does not appear, or may not be accurate, in regular financial institution monthly statements.

264. During 2017 through 2021, Mu YUAN and Stephany DIAZ received over $1 million in Peer 2 Peer transfers, including Zelle, Venmo, Cash App, and Google Pay. YUAN and DIAZ sent $198,165.30 to other individuals during that same time period.

265. Records provided by Sutton Bank for Square Cash Card show YUAN loaded and used more than $45,000 in funds to his card from 2019 through 2022. Several of these transactions related to food, gas, travel, or other personal expenditures. YUAN also had multiple transactions to UPS and USPS for shipping costs; these transactions are in addition to any transactions shown in his bank accounts or other credit cards.

266. During 2019, 2020, and 2021, YUAN received from Juneem BARNES a total of $96,520 via Zelle Pay. CTRs filed by Bank of America show that BARNES was associated with the address 350 NE 92nd St, Seattle, WA and phone number 206-601-6235. According to Bank or America, BARNES was employed with "A to Z Contractor", Home Depot, a theater owner, and a grocery store employee. A Washington State Employment Security Department report shows BARNES was employed at Home Depot during 2019 and 2020.

267. Bank records show that Mu YUAN sent $33,959 to Anthony DiBenedetto in 2020 and 2021. According to a CTR filed by Institution of Savings, Anthony DiBenedetto had an address of 7 Sunset Drive, Newbury, MA with a phone number of 978-465-7001.

Affidavit of Inspector Stinson - 102
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

268.     In 2019 and 2020, Yuan sent $57,610 to Yonghui CHEN via Zelle transfers.  Chen is a listed governor or One Way Group, the purported employer of Mu YUAN. According to a March 2019 CTR filed by JPMorgan Chase Bank, CHEN lived at 3102 S Graham Ave, Seattle and has a phone number of 206-960-8588. CHEN's occupation is listed as "Facing East", a Seattle area restaurant.  Yonghui CHEN is further detailed below.

269.     According to records provided PayPal, Mu YUAN maintained a Venmo account under the name Henry YUAN and @idonknow-Yuan. The associated phone number was 206-271-9091 and email address gannima950616@gmail.com. Transaction notes on YUAN's Venmo transactions also indicate he uses Snapchat to communicate with others.

270.     A comparison of YUANs Capital One Bank checking account and his Venmo account showed consistent amounts transferred to the checking account once the funds were received to his Venmo account.

| Account Name | Account Number | Date | Description | Venmo Amount | Transfer Amount | Memos |
|---|---|---|---|---|---|---|
| | | 1/5/2020 | @photographymusic | $100.00 | | 150/450 |
| | | 1/5/2020 | @photographymusic | $50.00 | | 50/450 |
| Yuan, Mu | CapOne ▮▮▮2962 | 1/6/2020 | Deposit From Venmo Cashout | | $150.00 | |
| Webb, Nick31 | | 1/8/2020 | @Nick-Webb-42 | $940.00 | | Gucci shoe release |
| Yuan, Mu | CapOne ▮▮▮2962 | 1/9/2020 | Deposit From Venmo Cashout | | $940.00 | |
| appSmith, Connor | | 1/7/2020 | @connor-Smith-211 | $120.00 | | Dinner |
| Yuan, Mu | CapOne ▮▮▮2962 | 1/9/2020 | Deposit From Venmo Cashout | | $120.00 | |
| | | 1/10/2020 | @bengaliRashid | $22.00 | | (box emoji) |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | 1/10/2020 | @bengaliRashid | $1,065.00 | | Z |
| Yuan, Mu | CapOne ▮▮▮ 2962 | 1/13/2020 | Deposit From Venmo Cashout | | $1,087.00 | |
| Smith, Connor | | 1/11/2020 | @connor-Smith-211 | $1,020.00 | | NYE |
| Yuan, Mu | CapOne ▮▮▮ 2962 | 1/13/2020 | Deposit From Venmo Cashout | | $1,020.00 | |
| Perez, Emerico32 | | 1/13/2020 | @emericoperez | $275.00 | | Jacket |
| DiBenedetto, Justin33 | | 1/13/2020 | @Justin-DeBenedetto | $850.00 | | First Chunk |
| DiBenedetto, Justin | | 1/13/2020 | @Justin-DeBenedetto | $1,500.00 | | Finish of vacation |
| Yuan, Mu | CapOne ▮▮▮ 2962 | 1/14/2020 | Deposit From Venmo Cashout | | $2,525.00 | |
| | | 1/12/2020 | @photographymusic | $25.00 | | Rifat supposed to send oth… |
| Yuan, Mu | CapOne ▮▮▮ 2962 | 1/14/2020 | Deposit From Venmo Cashout | | $25.00 | |
| | | 1/14/2020 | @photographymusic | $140.00 | | Rifat needs to send the ot… |
| Yuan, Mu | CapOne ▮▮▮ 2962 | 1/14/2020 | Deposit From Venmo Cashout | | $140.00 | |
| Smith, Connor | | 1/15/2020 | @connor-Smith-211 | $1,000.00 | | Ski trip |
| Yuan, Mu | CapOne ▮▮▮ 2962 | 1/17/2020 | Deposit From Venmo Cashout | | $1,000.00 | |
| Perez, Emerico | | 1/16/2020 | @emericoperez | $250.00 | | Yeezys |
| Yuan, Mu | CapOne ▮▮▮ 2962 | 1/21/2020 | Deposit From Venmo Cashout | | $250.00 | |
| | | 1/29/2020 | @salilkanade | $1,200.00 | | Insanity |
| Yuan, Mu | CapOne ▮▮▮ 2962 | 1/30/2020 | Deposit From Venmo Cashout | | $1,200.00 | |
| | | 1/29/2020 | @JeanBee-Cisse34 | $30.00 | | U |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Yuan, Mu | CapOne ▮▮2962 | 1/30/2020 | Deposit From Venmo Cashout | | $30.00 | |

271.     In addition to the transactions above, Mu YUAN sent Ian WAGNER $1,000 on October 25, 2019, via Zelle. Law enforcement indices checks (LEIC) revealed an individual by the name of Ian Douglas WAGNER, who is associated with the 1240 Melbourne Ct., New Haven, Indiana 46774 address was convicted in 2008 of Possession of Marijuana Less than 30 grams in Dekalb County, Indiana.  In May of 2020, a parcel was sent from YUAN's address to the New Haven address. Agents searched the parcel and located $19,250 USD secreted within clear sandwich bags, sealed in multiple USPS envelopes and a USPS box. The currency was comprised of 101 $100 dollar bills, 457 $20 dollar bills, and two (2) $5 dollar bills. There were no notes, receipts, or instructions included with the money, indicating it was likely drug proceeds.

272.     Stephany DIAZ also maintained a Venmo account with the ID @s_mitchel, phone number 206-504-9307, and email stephanydiaz94@yahoo.es.

273.     On December 12, 2019, USPS records show Nicholas WEBB at 1006 W 11th Court, Panama City, FL sent an Express Mail parcel to Stephany DIAZ at 307 NE Thornton Place, Apt 235, Seattle, WA. This was YUAN and DIAZ' previous address. This parcel was intercepted by USPIS and found to contain thirty, one hundred-dollar bills, or $3,000.

274.     Venmo transaction records show that Stephany DIAZ had additional transactions with Venmo user @Nick-Webb-42 during this time period. On December 19, 2019, @Nick-Webb-42 sent Diaz $2,000 with the notation "Gucci shoes". On January 14, 2020, @Nick-Webb-42 sent Diaz $1,250 with a purse emoji. The IP address shown for this transaction was from Panama City, FL. After both transactions, DIAZ cashed out the Venmo account and send the funds to her Ally Bank account ***8475.

Affidavit of Inspector Stinson - 105
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

275.    Additionally, Yonghui CHEN's JPMorgan Chase account, number ██████9190, was reviewed for the period July of 2019 through April of 2020. This account was held in the name of Yonghui CHEN and Juana DENG.  Deposits during the review period totaled $132,591, with $19,740 of that amount consisting of cash and $56,540 consisting of incoming Zelle transfers. $51,810, or 92%, of the incoming transfers were from Mu YUAN. CHEN also received $22,955 wired in from Guoxuan XIAO. As reported earlier in this affidavit, YUAN refers to CHEN as "boss." If YUAN and CHEN had a true employee/employer relationship, I do not believe YUAN (the employee) would be paying CHEN (the employer) more than $51,000 via Zelle transactions during the period of July of 2019 through April of 2020 alone. Rather, I believe CHEN is a marijuana supplier for YUAN, which is why YUAN pays him.

276.    CHEN used $52,446 of the deposited funds to send to other individuals via Zelle, including $10,454 to Yinglin LIANG and $8,000 for Wade HSU. Public records show Yinglin LIANG is the owner of **2718 S Star Lake Road, Federal Way**; agents have seen Mu YUAN and Yonghui CHEN's vehicles at this address. According to King County Public Records, Yinglin LIANG and CHEN were married in October 2020. According to Puget Sound Energy (PSE), the account holder for 2718 S Star Lake Road, Federal Way is LIANG.  According to PSE, 2718 S Star Lake Road, Federal Way previously averaged approximately 10,701 kWH for every approximate 30-day billing cycle beginning on October 20, 2020.  This averaged power consumption was over 10.9 times the U.S. Energy Information Administration (EIA) monthly average of all other homes in the state of Washington. The highest power consumption at 2718 S Star Lake Road, Federal Way occurred from November 12, 2022, to December 13, 2022, where PSE reported 2718 S Star Lake Road, Federal Way utilized 18,445 kWH, approximately

Affidavit of Inspector Stinson - 106
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

18.8 times the 2023 Washington State average. The large power consumption at this residence appeared to cease in March 2023.

277.    The EIA published information that in 2023, the average residence in Washington utilizes approximately 977 kWh per month. I know based on my training and experience that indoor marijuana growing facilities include numerous systems that use large amounts of electricity, including specialized lighting, filtration, irrigation, transformers, timers, and fans. This equipment often operates around the clock, and often throughout large portions of residences used to grow marijuana. This equipment uses large amounts of electricity that exceeds the kWh of electricity used by an average household. As such, I know based on my training and experience that high kWh usage can be strong evidence that an otherwise ordinary residence is being used to cultivate marijuana.

278.    Public records show that Yonghui CHEN purchased **27640 21st Pl S, Federal Way** on or around August 31, 2019, for $475,000. CHEN obtained one loan for $427,500 from RMK Financial dba Majestic Home Loan at the time of purchase.

279.    On March 18, 2020, a $438.07 charge was made to CHEN's account from Uline*Ship Supplies. Uline sells boxes and packing materials commonly seen used to ship marijuana from Washington State to other locations.

280.    According to Washington State Employment Security records, the following wages were reported for Chen from 2017 through 2021:

| Reporting Year | Employer | Total Wages Reported |
|---|---|---|
| 2017 | Five Aces, LLC<br>Y&L Wu, LLC | $15,491.93<br>$15,000 |
| 2018 | Five Aces, LLC<br>Y&L Wu, LLC | $19,183.81<br>$45,000 |
| 2019 | One Way Group<br>Y&L Wu, LLC | $2,076.92<br>$28,800 |
| 2020 | None reported | |
| 2021 (Q1 & Q2) | None reported | |

*Vehicles*

281. Like YOUNG, YUAN has a pattern of buying and selling expensive luxury vehicles, often paid for with substantial amounts of cash. According to a Form 8300 filed by Roger Jobs Motors Inc. in Bellingham, WA, Mu YUAN and Ying DENG purchased a 2016 BMW X-5 (VIN ***22838) with $20,000 in cash on February 8, 2017. Yuan's address at that time was listed as 4615 NE 17th St, Renton WA.

282. On June 11, 2021, Mu YUAN and Ying DENG purchased a 2021 Mercedes G-Class for $199,900 ($223,567.05 after fees), financing $107,741 with JPMorgan Chase Bank. Mu YUAN withdrew $50,000 from his East West Bank account, number ***5828, to purchase a cashier's check to Jaguar Land Rover Bellevue. The same month, Ying DENG withdrew $60,000 from her joint JPMorgan Chase Bank account with Robin RAY, account number ***3506, to purchase a cashier's check to Jaguar Land Rover Bellevue. YUAN and DENG traded in a 2019 Land Rover Range Rover and received a $52,000 trade-in allowance. $46,173.95 remained on a loan for that vehicle.

283. Payments on the loan were made via Sutton Bank/Cash App, YUAN's Wells Fargo account, and cash. One of these payments is more than the monthly reported income for Mu Yuan.

| Date | Amount | Source |
|------|--------|--------|
| 1/23/2021 | $3,000 | Cash |
| 7/26/2021 | $3,000 | Cash App *9944[35] |
| 8/23/2021 | $3,000 | Cash |
| 8/24/2021 | $3,000 | Cash App *9944 |
| 9/22/2021 | $3,000 | Cash |
| 9/27/2021 | $3,000 | Wells Fargo *1949 |
| 10/1/2021 | $3,000 | Cash App *9944 |

---

[35] Although Chase listed some of these transactions as CashApp, Sutton Bank records show they all came from his Sutton Bank/Square account.461

Affidavit of Inspector Stinson - 108
USAO No. 2019R00799

| 10/22/2021 | $3,000 | Cash |
|---|---|---|
| 11/01/2021 | $3,000 | Sutton Bank *9944 |
| 11/10/2021 | $5,000 | Sutton Bank *9944 |
| 11/12/2021 | $5,000 | Sutton Bank *9944 |
| 12/2/2021 | $3,000 | Cash |
| 12/13/2021 | $3,000 | Sutton Bank *9944 |
| 12/24/2021 | $3,000 | Cash |
| 1/25/2022 | $3,000 | Cash |
| 2/18/2022 | $3,000 | Cash |
| 2/28/2022 | $3,000 | Sutton Bank *9944 |
| 3/23/2022 | $4,000 | Cash |
| 3/24/2022 | $1,000 | Sutton Bank *9944 |
| **Total** | **$60,000** | |

284.    As of February 7, 2023, the principal balance remaining on the loan was $11,113.54.

285.    In November or 2021, Agents identified a 2021 Lamborghini Huracan CP belonging to Mu YUAN. According to a form 8300 filed by Openroad Auto Group, Inc, on March 19, 2021, Orion MCREE purchased a 2021 Lamborghini Huracan for $237,000; $30,000 of this purchase was made with cash. The VIN listed on the form 8300 was ZHWUF5ZF9MLA16524, the same as the Lamborghini identified as owned by Mu YUAN.

286.    Currency Transaction Reports (CTRs) filed by Bank of America show that on September 14, 2021, MCREE deposited $92,926 in cash to his bank account ending in *8477. The next day, MCREE deposited $194,400 to his Bank of America account ending in *3434. Washington State Employment Security records show no wages reported for Orion MCREE during the fourth quarter of 2021.

Affidavit of Inspector Stinson - 109
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

287.    Records provided by Bank of America show that on March 18, 2021, MCREE opened a new loan for $98,585.72.  The date is consistent with the purchase of the 2021 Lamborghini Huracan.  Monthly payments in the amount of $1,576.65 were made until the loan was paid off on September 14, 2021; this is approximately the time that the title of the vehicle was transferred to Mu YUAN.  Agents have identified phone calls between YUAN and MCREE, with the first contact to MCREE on September 12, 2021.  The CTR filed by Bank of America, listed in the above paragraph, shows the loan payoff was made with cash.

288.    In addition to the CTR filed by Bank of America, there have been eleven additional CTRs filed by US Bank for cash transactions conducted by MCREE.  The most recent address listed for MCREE is in, Las Vegas, Nevada.

289.    In August of 2022, YUAN sold the Lamborghini to Illusso for $272,000.  A check for that amount was deposited to YUAN's Chase account ***1862 on August 22, 2022. YUAN used those funds and others to open a Chase Certificate of Deposit on January 17, 2023, for $550,000.

290.    According to the Washington Department of Licensing, YUAN was the registered owner of the 2021 Lamborghini until he sold it on August 19, 2022

291.    According to a Form 8300 filed by Auto Company XXI Inc, Mu YUAN purchased a 2023 Mercedes Benz C300 on December 12, 2022, using $41,200 in cash (**Target Vehicle 3**). The same day, bank records show YUAN wrote check number 101 for $15,000 from his Wells Fargo Bank checking account ████1949.  The check was payable to Ferrari of Seattle and had the memo "deposit". Based on my training, experience, and familiarity with this investigation I believe this deposit was made for **Target Vehicle 4**.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

***Shipping***

292.    Through USPS business data, Click-N-Ship account number ▮▮▮▮3689 was found to be registered to Mu YUAN in his name. The login name for this account is yhr950616. The associated address was listed as 307 NE Thornton Pl. Apt 235, Seattle, Washington. The listed telephone number for this account was (206) 271-9091 and the email is gannima950616@gmail.com. The account was registered on October 12, 2019.

293.    Through USPS data, Click-N-Ship account number ▮▮▮▮7170 was found to be registered to "Daniel Song." The login name for this account is danielsong950616. The associated address was listed as 243 SW 150th St., Burien, Washington. The listed telephone number for this account is (206) 271-9091 and the email is danielsong95@yahoo.com. The account was registered on January 29, 2020. Based on this investigation, I believe the name "Daniel SONG" is a fictitious name utilized by YUAN.

294.    Several parcels were shipped from Western Washington to 13324 Road 51, Antwerp, OH. Public property records show this property is owned by Donald R Kannable.

295.    Credit card number XXXXXXXXX2263 was used for both the Mu YUAN and Daniel SONG Click-N-Ship accounts. This credit card number is associated with JPMorgan Chase Bank. Bank records show that between May of 2019 and November of 2021, YUAN used this credit card at UPS and USPS locations on numerous occasions, including $3,447.26 at USPS and $10,384.63 at UPS locations.

296.    In all, YUAN has had at least five USPS Click-N-Ship accounts that I am aware of. All five accounts were originally registered with YUAN's telephone number (206) 271-9091. One of the five accounts appears to have been never used. Between the four remaining accounts, it appears the accounts were used to ship approximately 408

Affidavit of Inspector Stinson - 111
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

times between February 11, 2020, and September 19, 2024.  Over this approximate 56-month period, YUAN has shipped on average 7.28 parcels per month via known USPS Click-N-Ship accounts alone. In all, YUAN has paid $8,244.05 in total USPS shipping costs through his Click-N-Ship account alone.

***Safe Deposit Boxes***

297.    Access records for SDB account number ███████ 0677 show Robin Ray, Ying Deng, and Mu YUAN have all accessed the box.



298.    On January 15, 2021, a charge for $755 was made to Mu YUAN's Chase credit card at "yps*safedepositstorage".

01/15          YPS*SAFEDEPOSITSTORAGE 253-334-6455 WA                    755.00

299.    A Google search on the phone number listed did not return any relevant results that would further explain this charge.

300.    On or around May 20, 2020, YUAN rented a safe deposit box at Guardian Vault.  On May 21, 2020, Brandon.Sylvestal@guardianvault.com sent an email to YUAN stating:

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## Hello from Guardian Vault...

| | |
|---|---|
| From: | Brandon Sylvestal <brandonsylvestal@guardianvault.biz> |
| To: | gannima950616@gmail.com |
| Date: | Wed, 20 May 2020 14:12:16 -0700 |
| Attachments: | Mu Yuan Box 188.pdf (857.19 kB) |

Hi there,

Thank you so much for coming in and renting a safe deposit box here with us at Guardian Vault!

Your lease is attached below for your records and if you have any questions please feel free to contact us

Thanks once again and stay safe and healthy!
Brandon
–
*Brandon F. Sylvestal*
*Owner & Founder, Guardian Vault LLC*
*Giving you insurable protection and convenience for your most prized possessions since 2017...*
*SecurePlus Accredited | Insured Safe Deposit Boxes*

425-285-9530  |  www.GuardianVault.Biz  |  M-Sat 9-6
23515 NE Novelty Hill Road, Suite 215 Redmond, WA 98053

301.    On May 21, 2020, YUAN's Bank of America checking account, number ████ 8768, was charged $589 by Guardian Vault LLC.  According to the company website, Guardian Vault offers three box sizes, 3x10, 5x10, and 10x10 plus package delivery and mailbox service.

302.    According to the lease agreement sent with the welcome email, YUAN rented box #188, a 10x10 box for $400 annually (sale amount $320) with $100,000 of insurance; premiums of $269 due each year.

303.    On May 23, 2021, YUAN's Chase credit card was charged $699 at Guardian Vault, indicating YUAN renewed his box for another year.

304.    In addition to the above safe deposit boxes, Chase credit card records show YUAN had transactions at "safedepositstorage"; this company was detailed above as YOUNG also had a transaction there. YUAN made a $755 purchase on January 15, 2021, and a $630 purchase January 15, 2022, at this business. A Google search for Safe Deposit

Affidavit of Inspector Stinson - 113
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Center also revealed that Mu "Henry" YUAN left two reviews about the company in February of 2021, shortly after his first transaction:



305.    During surveillance on January 7, 2025, investigators followed DIAZ to a food truck/trailer located at 3002 NE Sunset Blvd, Renton, Washington from **Target Residence 14622** as she drove **Target Vehicle 3**. Research of the food trailer revealed DIAZ was a listed governing person of "Corazon Catracho" according to Department of Revenue (DOR) records. DIAZ was also listed as the co-registrant of the trailer according to Washington Department of Licensing (DOL). The mailing address according to both DOR and DOL is 14622 28th Ave. W, Lynnwood, Washington 98056, the home of YUAN and DIAZ and **Target Residence 14622**. According to DOL the trailer is a 2024,

Affidavit of Inspector Stinson - 114
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"QULTY" and has a value code of 83,688, which I believe to mean $83,688. Also, according to DOL $8921.99 in fees were paid to the State for the registration of the trailer.

306.    Further research of DOR records revealed DIAZ was also listed as the governing person in a business named Zaza Custom Homes LLC. According to the Washington Secretary of State website, YUAN is listed as the registered agent with a physical and mailing address of 14622 28th Ave W, Lynnwood, Washington 98056, again the residence of both YUAN and DIAZ and again **Target Residence 14622**. An internet search did not reveal and legitimate website or advertisement of this business.

307.    On February 19, 2025, investigators conducted surveillance of YUAN and DIAZ beginning at **Target Residence 14622**. Durind surveillance YUAN was followed from his residence as he drove **Target Vehicle 5** to 23420 28th Ave W., Brier, Washington. I reviewed information from the Snohomish County Assessor's website and learned 23420 28th Ave W., Brier, Washington appeared to be purchased in August 2023 by YUAN and DIAZ. A review of Google Maps images of this address dated November 2015, are vastly different than the structure that sits on the property now. The new structure appears to be a very modern, upscale, multilevel home.

308.    In conclusion, the financial investigation of YUAN, much like of YOUNG, establishes probable cause to believe YUAN is engaged in criminal activity.  He moves large sums of money through multiple bank accounts, many of which appear to have been established for no real economic reason.  The amounts deposited and transferred appear to be inconsistent with YUAN's reported "legitimate" income, and instead appear to come in the form of cash, P2P and other suspicious sources.

/ / /

Affidavit of Inspector Stinson - 115
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## AGENT'S SPECIALIZED KNOWLEDGE

309.    As a result of my training and experience, and my discussions with my law enforcement colleagues, I know the manufacture and distribution of marijuana is often a continuing criminal enterprise taking place often over months and years. Therefore, although the product, inventory and proceeds of a drug manufacturing and trafficking organization is likely to fluctuate over time, records and evidence associated with the manufacture and distribution of narcotics are frequently maintained, intentionally or unintentionally, over long periods of time. Investigators are seeking to search **The Target Residences**, **Target Vehicles,** and **Target Business** for any and all evidence of narcotics manufacturing, trafficking, and money laundering offenses, as described in Attachment B. I am seeking to search all areas of **Target Residences** and the **Target Business**, as specified in Attachments A.

310.    I know the following from my training, my experience, and my discussions with other investigators and analysts, about the manufacture of marijuana in indoor, clandestine grow operations in the Pacific Northwest; the transportation and distribution of that marijuana inside and outside the State of Washington, including the use of the mail and other shippers; the exchange of funds in payment for or in facilitation of these crimes; and the laundering of proceeds earned from the crimes.

311.    I know through my training and experience that the distribution of illegal narcotics is frequently a continuing activity lasting over months and years.  Persons involved in the trafficking of illegal controlled substances typically will obtain and distribute controlled substances on a regular basis, much as a distributor of a legal commodity would purchase stock for sale. Similarly, such drug traffickers will maintain an "inventory" which will fluctuate in size depending upon the demand for and the available supply of the product. Drug traffickers keep records of their illegal activities not

only during the period of their drug trafficking violations but also for a period of time extending beyond the time during which the trafficker actually possesses/controls illegal controlled substances. The records are kept in order to maintain contact with criminal associates for future transactions and so that the trafficker can have records of prior transactions for which the trafficker might still be owed money or might owe someone else money. In addition to documenting inventory, debts and profits, drug traffickers also often document assets, employees, invoices, customer lists, shipping records, bills, bank records including statements, checks, deposit slips, account information, loan documents, address books, photos and other records which allow them to keep track of illegitimate drug proceeds, expenditures and assets. Drug traffickers often keep these records in their homes and in vehicles that they own, use, or have access to. I am seeking to seize these items should they be found.

312.    I also know through my training and experience that it is common for drug traffickers to conceal large quantities of currency, foreign currency, financial instruments, precious metals, jewelry, and other items of value which are proceeds from drug trafficking in their residences. I know through my training and experience that drug traffickers often hide currency and items of monetary value in surreptitious locations, such as mattresses, inner walls, safes, basements, attics, and secret compartments. Evidence of excessive wealth beyond an individual's outward means is probative evidence of the distribution of controlled substances. Therefore, receipts showing the expenditure of large sums of money and/or the expensive assets are evidence of drug trafficking. Drug traffickers commonly keep the expensive assets themselves and/or documentation of the purchase of the asset (receipts, warranty cards, etc.) in their homes, places of business, on their persons or in carried cases and purses, and in vehicles that they own, use, or have access to. I am seeking to seize these items.

Affidavit of Inspector Stinson - 117
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

313.    I know through my training and experience that manufacturing and distributing marijuana is a crime aimed at financial benefit. I also know that individuals engaged in drug trafficking attempt to conceal and/or launder these funds in a number of ways including using straw purchasers and quit-claims to conceal property ownership, depositing funds in bank accounts associated with fictitious or inoperable businesses or LLCs, the purchase and negotiation of various money orders, which are easier to conceal within the U.S. Mails and more difficult for law enforcement to track, excessive and/or frequent gambling with large cash payouts designed to appear as casino winnings, as well as structured payments and out of state deposits and withdrawals. Any financial, sales, business and employment records, tax records, bank statements, receipts, checkbooks, credit card statements, accounting statements, insurance documents, import and export documents, shipping records and the like, which show financial information and transactions such as sources of funds, expenditures, investments and/or application of funds could be important evidence of marijuana manufacture, distribution and money laundering. I have learned that one method of showing financial gain and money laundering is to compare known sources of legitimate funds in a given time period to the application of funds for the same time period. The excess of the application of funds to the known sources of legitimate funds have likely come from the unlawful activity, in this case the cultivation and transportation and re-distribution of marijuana, including via the U.S. Mail and other shipping methods. I am aware that these records are often stored at a person's residence or vehicle, or on the person or in carried cases, at times away from the growing marijuana operation or other criminal activity, where they are secure, but still easily acceptable. Therefore, I am seeking to seize, photograph and/or otherwise document such records should they be found. I also request authorization to search for

Affidavit of Inspector Stinson - 118
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

these records in any such form or documents including printed, written, handwritten, faxed or typed, photocopies, original documents, and other photographic format.

314.    It is common for individuals engaged in manufacturing marijuana to use a variety of equipment including, but not limited to specialized lighting, transformers to re-route power, electrical equipment, nutrients, chemicals, fertilizers, ballasts, reflective hoods, pots, soil, fans, pumps, ventilation and piping materials, pruning equipment, vents, filters and other items needed for the manufacture of marijuana. This equipment can often be located at locations used to grow marijuana, even if there is no current grow in place.

315.    I also know through my training and experience that individuals engaged in shipping or otherwise transporting marijuana out of the state of Washington often maintain an inventory of supplies used for concealing and packaging marijuana (*i.e.*, scales, packaging, plastic and/or static shield bags, cardboard boxes, heat sealing devices, masking agents) on hand over a lengthy period of time, even when they do not have any controlled substances on hand. The aforementioned items are frequently maintained in the dealer's homes and/or in vehicles that they own, use, or have access to. Drug traffickers also often have some amount of inventory -- namely, illegal drugs -- stored in their homes and/or in vehicles that they own, use, or have access to. I am seeking to seize, photograph or otherwise document the existence of all these items should they be found.

316.    It is common for drug traffickers to possess firearms and ammunition to protect their drugs, assets, and persons from, rival traffickers, other criminals, and from law enforcement. Persons who purchase and possess firearms also tend to maintain the firearms and ammunition for lengthy periods of time. Firearms can be acquired both legally and unlawfully, without official/traceable documentation. Persons who acquire

Affidavit of Inspector Stinson - 119
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

firearms from Federal Firearms Licensees, through deliberate fraud and concealment, often will also acquire firearms from private parties and other sources unknown to ATF. Persons who, whether legally or illegally, purchase, possess, sell and/or transfer firearms or ammunition commonly maintain the firearms or ammunition on their person, at their residence or business, or in a motor vehicle which they own and/or operate. Firearms or ammunition are often secreted at other locations within their residential curtilage, and the identification of these firearms will assist in establishing their origin. Persons who purchase, possess, sell and/or trade firearms or ammunition commonly maintain documents and items that are related to the purchase, ownership, possession, sale and/or transfer of firearms, ammunition, and/or firearm parts, including but not limited to driver's licenses, telephone records, telephone bills, address and telephone books, canceled checks, receipts, bank records and other financial documentation on the owner's person, at the owner's residence or business, or in vehicles that they own, use, or have access to. Additionally, these individuals often maintain holsters, spare magazines or speed loaders and other instruments to facilitate the use of firearms in furtherance of criminal activity or acts of violence.

317.    It is common for members of drug trafficking organizations, in an attempt to disguise their identities and illegal activities, to use prepaid cellular telephones and prepaid long distance calling cards. Often the only way to connect a subject with a particular prepaid cellular telephone or calling card is to seize the phone or calling card from the trafficker or his residence. The aforementioned items are frequently maintained on the drug trafficker's person, in the drug trafficker's residence, place of business, or other areas they have access to. Drug traffickers regularly use cell phones, and other electronic communication devices to further their illegal activities. As a result, evidence of drug dealing can often be found in text messages, address books, call logs,

Affidavit of Inspector Stinson - 120
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

photographs, emails, text messaging or picture messaging applications, videos, and other data that is stored on cell phones, iPads, Blackberries, and other electronic communication devices. Additionally, the storage capacity of such devices allows them to be used for the electronic maintenance of ledgers, pay/owe logs, drug weights and amounts, customers contact information, not only during the period of their drug trafficking violations but also for a period of time extending beyond the time during which the trafficker actually possesses/controls illegal controlled substances. The records are kept in order to maintain contact with criminal associates for future transactions and so that the trafficker can have records of prior transactions for which the trafficker might still be owed money or might owe someone else money.

318.    As previously stated, I am aware through my training and experience that individuals engaged in narcotics trafficking frequently use cell phones, iPads, iPhones and other electronic communication devices as an easy way to document, store and share information related to their criminal activities with co-conspirators. This includes using the mobile phones to take and store photographs of items associated with the criminal activity. Therefore, I am seeking to search the **Target Residences, Target Vehicles, Target Business, Target Safe Deposit Boxes, Target Storage Unit** and **Target Persons** for cell phones, iPads, iPhones and other electronic communication devices, and to conduct a search of those items as specified in Attachment B for evidence of narcotics trafficking and money laundering, including the stored photographs within those phones.

319.    Drug traffickers often store many of the items described above where they are convenient and safe, such as in their homes, in their vehicles, and/or carry the items on their person or in purses, briefcases, backpacks or other carried containers. In particular, drug traffickers may carry with them drugs, drug proceeds, ledgers, firearms, cellular phones, shipping paperwork, receipts, invoices, currency, and other smaller-sized

Affidavit of Inspector Stinson - 121
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

items that are needed close by on a regular basis. Therefore, I am seeking to search the following persons, and carried cases, to seize these types of items should they be found: **Joshua YOUNG, Mu YUAN, Stephany DIAZ, and Brielle DEGEUS.**

## TECHNICAL TERMS

320.    Based on my training and experience, I use the following technical terms to convey the following meanings:

   a.    IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every digital device attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that digital device may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

   b.    Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c. Electronic Storage media: Electronic Storage media is any physical object upon which data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

321.   As described above and in Attachment B, this application seeks permission to search for evidence, fruits and/or instrumentalities that might be found at the SUBJECT PREMISES, in whatever form they are found. One form in which the evidence, fruits, and/or instrumentalities might be found is data stored on digital devices such as computer hard drives or other electronic storage media. Thus, the warrant applied for would authorize the seizure of digital devices or other electronic storage media or, potentially, the copying of electronically stored information from digital devices or other electronic storage media, all under Rule 41(e)(2)(B).

322.   Probable cause. Based upon my review of the evidence gathered in this investigation, my review of data and records, information received from other agents and computer forensics examiners, and my training and experience, I submit that if a digital device or other electronic storage media is found at the SUBJECT PREMISES, there is probable cause to believe that evidence, fruits, and/or instrumentalities of the crimes of Distribution and Manufacturing of Controlled Substances, in violation of 21 U.S.C. § 841(a) (1); Unlawful Use of a Communication Facility to Facilitate the Distribution of Controlled Substances, in violation of 21 U.S.C. § 843(b); conspiracy to commit these offenses in violation of 21 U.S.C. § 846; Money Laundering, in violation of 18 U.S.C. § 1956; and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. 924(c) will be stored on those digital devices or other electronic storage media. I believe digital devices or other electronic storage media are being used

Affidavit of Inspector Stinson - 123
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

to prepare and make shipping labels for shipments of marijuana, purchase firearms and firearm accessories, communicate with drug customers and coconspirators, to track packages mailed or otherwise shipped containing controlled substances or the proceeds of the sale of controlled substances, as well as hold photos and communications related to the suspected violations of federal law. There is, therefore, probable cause to believe that [evidence, fruits and/or instrumentalities] of the crimes of Distribution and Manufacturing of Controlled Substances, in violation of 21 U.S.C. § 841(a) (1); Unlawful Use of a Communication Facility to Facilitate the Distribution of Controlled Substances, in violation of 21 U.S.C. § 843(b); conspiracy to commit these offenses in violation of 21 U.S.C. § 846; Money Laundering, in violation of 18 U.S.C. § 1956; and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. 924(c) exists and will be found on digital devices or other electronic storage media at the Target Locations, for at least the following reasons:

> a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be preserved (and consequently also then recovered) for months or even years after they have been downloaded onto a storage medium, deleted, or accessed or viewed via the Internet. Electronic files downloaded to a digital device or other electronic storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a digital device or other electronic storage media, the data contained in the

file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the digital device or other electronic storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

323.  Based on actual inspection of financial records, I am aware that digital devices and other electronic storage media were used to generate, store, and print

Affidavit of Inspector Stinson - 125
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

documents used in the money laundering and drug trafficking scheme.  There is reason to believe that there is a computer system currently located at the Target Locations.

324.   *Forensic evidence*.  As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how digital devices or other electronic storage media were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any digital devices or other electronic storage media located at the SUBJECT PREMISES or in the SUBJECT VEHICLEs because:

a.     Stored data can provide evidence of a file that was once on the digital device or other electronic storage media but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the digital device or other electronic storage media that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the history of connections to other computers, the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the digital device or other electronic storage media was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.     As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling

Affidavit of Inspector Stinson - 126
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner and/or others with direct physical access to the computer. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files,

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.       A person with appropriate familiarity with how a digital device or other electronic storage media works can, after examining this forensic evidence in its proper context, draw conclusions about how the digital device or other electronic storage media were used, the purpose of their use, who used them, and when.

d.       The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a digital device or other electronic storage media that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, digital evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

Affidavit of Inspector Stinson - 128
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

e.      Further, in finding evidence of how a digital device or other electronic storage media was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present.  For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

## DIGITAL DEVICES AS INSTRUMENTALITIES OF THE CRIMES

325.    As set forth in this affidavit, digital devices were utilized to further the criminal scheme. As discussed with YUAN, he has utilized multiple USPS Click and Ship accounts to mail drugs throughout the U.S. As discussed with YOUNG, he has utilized digital communications to further his conspiracy as well as catalogue some of his events with photographs as seen through his social media. Additionally, investigators have identified a complex web of money laundering through multiple bank accounts, P2P transactions, the creation and maintenance of various business schemes, and so on. Additionally, USPS parcels related to YOUNG and YUAN have been tracked through USPS.com a website accessible through mobile telephones and other digital devices to include computers.

## PAST EFFORTS TO OBTAIN ELECTRONICALLY STORED INFORMATION

326.    Because of the nature of the evidence that I am attempting to obtain and the nature of the investigation, I have not made any prior efforts to obtain the evidence based on the consent of any party who may have authority to consent named in this investigation. I believe, based upon the nature of the investigation and the information I have received, that if the subjects of this investigation became aware of the investigation in advance of the execution of a search warrant, they may attempt to destroy any potential

evidence, whether digital or non-digital, thereby hindering law enforcement agents from the furtherance of the criminal investigation.

## REQUEST FOR AUTHORITY TO CONDUCT OFF-SITE SEARCH OF TARGET COMPUTERS

327.    Necessity of seizing or copying entire computers or storage media.  In most cases, a thorough search of premises for information that might be stored on digital devices or other electronic storage media often requires the seizure of the physical items and later off-site review consistent with the warrant.  In lieu of removing all of these items from the premises, it is sometimes possible to make an image copy of the data on the digital devices or other electronic storage media, onsite.  Generally speaking, imaging is the taking of a complete electronic picture of the device's data, including all hidden sectors and deleted files.  Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the item, and to prevent the loss of the data either from accidental or intentional destruction.  This is true because of the following:

a.    The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.  Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine the respective digital device and/or electronic storage media to obtain evidence.  Computer hard drives, digital devices and electronic storage media can store a large volume of information.  Reviewing that information for things

described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b.      Technical requirements.  Digital devices or other electronic storage media can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the premises.  However, taking the items off-site and reviewing them in a controlled environment will allow examination with the proper tools and knowledge.

c.      Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of electronic storage media formats and on a variety of digital devices that may require off-site reviewing with specialized forensic tools.

**SEARCH TECHNIQUES**

328.    Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrant I am applying for will permit seizing, imaging, or otherwise copying digital devices or other electronic storage media that reasonably appear capable of containing some or all of the data or items that fall within the scope of Attachment B to this Affidavit, and will specifically authorize a later review of the media or information consistent with the warrant.

329.    Because several people share the SUBJECT PREMISES as a residence, it is possible that the SUBJECT PREMISES will contain digital devices or other electronic storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime.  If agents conducting the search nonetheless reasonably determine

Affidavit of Inspector Stinson - 131
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that the things described in this warrant could be found on those devices, the applied-for warrant for would permit the seizure and review of those items as well.

330.    CLOUDZ VAPE ("the Company") is a functioning company that conducts business.  The seizure of the Company's computers may limit the Company's ability to conduct its business.  As with any search warrant, I expect that this warrant will be executed reasonably. Reasonable execution will likely involve conducting an investigation on the scene of what computers, or storage media, must be seized or copied, and what computers or storage media need not be seized or copied. Where appropriate, officers and agents will copy data, rather than physically seize computers, to reduce the extent of disruption. If employees of the Company so request, the agents will, to the extent practicable, attempt to provide the employees with copies of data that may be necessary or important to the continuing function of the Company's business. If, after inspecting the computers, it is determined that some or all of this equipment is no longer necessary to retrieve and preserve the evidence, the government will return it.

331.    Consistent with the above, I hereby request the Court's permission to seize and/or obtain a forensic image of digital devices or other electronic storage media that reasonably appear capable of containing data or items that fall within the scope of Attachment B to this Affidavit, and to conduct off-site searches of the digital devices or other electronic storage media and/or forensic images, using the following procedures:

332.    **Processing the Search Sites and Securing the Data.**

a.    Upon securing the physical search site, the search team will conduct an initial review of any digital devices or other electronic storage media located at the subject premises described in Attachment A that are capable of containing data or items that fall within the scope of Attachment B to this Affidavit, to determine if it is possible to secure the data contained on these devices onsite in a reasonable

amount of time and without jeopardizing the ability to accurately preserve the data.

b.       In order to examine the electronically stored information ("ESI") in a forensically sound manner, law enforcement personnel with appropriate expertise will attempt to produce a complete forensic image, if possible and appropriate, of any digital device or other electronic storage media that is capable of containing data or items that fall within the scope of Attachment B to this Affidavit.1

c.       A forensic image may be created of either a physical drive or a logical drive. A physical drive is the actual physical hard drive that may be found in a typical computer. When law enforcement creates a forensic image of a physical drive, the image will contain every bit and byte on the physical drive. A logical drive, also known as a partition, is a dedicated area on a physical drive that may have a drive letter assigned (for example the c: and d: drives on a computer that actually contains only one physical hard drive). Therefore, creating an image of a logical drive does not include every bit and byte on the physical drive. Law enforcement will only create an image of physical or logical drives physically present on or within the subject device. Creating an image of the devices located at the search locations described in Attachment A will not result in access to any data physically located elsewhere. However, digital devices or other electronic storage media at the search locations described in Attachment A that have previously connected to devices at other locations may contain data from those other locations.

d.       If based on their training and experience, and the resources available to them at the search site, the search team determines it is not practical to make an on-site image within a reasonable amount of time and without jeopardizing the

ability to accurately preserve the data, then the digital devices or other electronic storage media will be seized and transported to an appropriate law enforcement laboratory to be forensically imaged and reviewed.

333.    **Searching the Forensic Images.**

a.    Searching the forensic images for the items described in Attachment B may require a range of data analysis techniques.  In some cases, it is possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence.  In other cases, however, such techniques may not yield the evidence described in the warrant, and law enforcement may need to conduct more extensive searches to locate evidence that falls within the scope of the warrant.  The search techniques that will be used will be only those methodologies, techniques and protocols as may reasonably be expected to find, identify, segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to this affidavit.  Those techniques, however, may necessarily expose many or all parts of a hard drive to human inspection in order to determine whether it contains evidence described by the warrant.

## CONCLUSION

334.    Based on the facts set forth in this affidavit, I believe that there is probable cause to believe that the Target Residences, Target Vehicles, Target Business, Target Safe Deposit Boxes, Target Storage Unit, and Target Persons described in Attachment A, contain evidence that **Joshua YOUNG, Mu YUAN, Stephany DIAZ, and Chandler FLOTT** and others known and unknown have committed or are engaged in committing one or more of the following violations of federal law:  Distribution and Manufacturing of Controlled Substances, in violation of 21 U.S.C. § 841(a) (1); Unlawful Use of a

Affidavit of Inspector Stinson - 134
USAO No. 2019R00799

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Communication Facility to Facilitate the Distribution of Controlled Substances, in violation of 21 U.S.C. § 843(b); conspiracy to commit these offenses in violation of 21 U.S.C. § 846; Money Laundering, in violation of 18 U.S.C. § 1956; and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. 924(c).


Terry D. Stinson
U.S. Postal Inspector


The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on the 17th day of March 2025.


THE HON. S. KATE VAUGHAN
United States Magistrate Judge

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970